## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] | ) Case No. 23-23-10576 (TMH) |
|  | ) |
|  | ) Jointly Administered |
| Debtors | ) **Objection Deadline: TBD** |
|  | ) **Hearing: TBD** |

**MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING PROCEDURES TO DESIGNATE STALKING HORSE BIDDER(S), (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED RELIEF; AND (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of: (a) an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"): (i) approving bidding procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1** (the "Bidding Procedures"), to be used in connection with a sale ("Sale") of all or substantially all of the Debtors' assets (the "Assets") free and clear of all liens,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

1

claims, interests, and encumbrances; (ii) authorizing the Debtors to designate one or more Stalking Horse Bidders (as defined herein) for some or all of the Assets, and scheduling a hearing to consider approval of such Stalking Horse Bid(s); (iii) scheduling one or more auctions (each, an "Auction"), if necessary, and scheduling one or more hearings to approve a sale of the Debtors' Assets (a "Sale Hearing"); (iv) approving the form and manner of notice of the proposed Bidding Procedures, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "Sale Notice"); (v) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Contracts") in connection with any Sale (the "Assumption and Assignment Procedures"); (vi) approving the form and manner of notice to each relevant non-debtor counterparty to an Assigned Contract (each a "Counterparty"), of (A) the Debtors' calculation of the amount necessary to cure any default under the applicable Assigned Contract (the "Cure Amounts"); and (B) certain other information regarding the potential assumption and assignment of Assigned Contracts in connection with a Sale, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "Assumption and Assignment Notice"); and (vii) an orders of the Court: (i) authorizing the sale of the Debtors' Assets free and clear of all liens, claims, interests, and encumbrances, except as provided in the Sale Order; (ii) authorizing the assumption and assignment of certain Assigned Contracts in connection with the Sale; and (iii) granting related relief (the "Sale Order").[2] In further support of this Motion, the Debtors state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors are in default of its obligations to their post-petition lenders and are unable to cure the default. If the Debtors are able to shortly secure an acceptable initial or stalking

---

[2] A copy of the proposed form of Sale Order(s) will be filed in advance of the Sale Hearing.

horse bid, the Debtors believe that a sale of all or substantially all of their assets, as a going concern, will avoid the loss in value of the Debtors' assets and the substantial harm to the Debtors' creditors and numerous employees that would inevitably result from a forced liquidation of the Debtors' assets.

2.     Accordingly, by this Motion, the Debtors seek approval of the Bidding Procedures which allow the Debtors to engage a potential Stalking Horse Bidder (as defined below) that will set a guaranteed floor for the value of the Debtors' Assets and which provide notice and opportunity to interested parties to submit counteroffers.

## JURISDICTION AND VENUE

3.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Chapter 11 Cases, the Debtors and their estates, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.     Venue of these Chapter 11 Cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

6.     The statutory bases for the relief requested in this Motion are 105, 363, 365, 503, and 507 of title 11 of the Bankruptcy Code, Rules 2002, 6004, and 6006 of the Bankruptcy Rules, and Local Rule 6004-1.

## **BACKGROUND**

7.      On May 5, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors continue to operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On May 17, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") [Dkt. No. 100].

9.      The Debtors operate a chain of brick-and-mortar home goods retail stores that specializes in the sale of year-round seasonal goods at value pricing. The Debtors' stores offer a variety of products including home décor, bed and bath products, kitchen and dining products, furniture, food and seasonal products. As of the Petition Date, the Debtors operated 82 stores in 20 states.

10.     A description of the Debtors and their business, and the facts and circumstances surrounding the Chapter 11 Cases are set forth in greater detail in the *Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 12] and the *Supplemental Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 23].

11.     Upon motion by the Debtors, on June 5, 2023, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 229] (the "Final DIP Order")[3] which, among other things, authorized the Debtors to enter into and obtain credit under a certain Senior Secured, Super-Priority Debtor-In-Possession Revolving Credit Agreement dated as of May 10, 2023.

---

[3] Capitalized terms not defined in this Motion shall have the meanings ascribed to them in them in the Final DIP Order.

159244212v1

12.     The Final DIP Order provided, among other things, for the Debtors to meet certain Milestones as a condition of the continuation of the financing provided by the Final DIP Order. Those Milestones included the filing by the Debtors of a plan and disclosure statement acceptable to the DIP Lenders on or before June 7, 2023, approval of a disclosure statement on or before July 7, 2023, and confirmation of a plan on or before August 16, 2023.

13.     In accordance with an extension of the Milestone to file a plan granted by the DIP Lenders, on June 7, 2023, the Debtors filed a joint chapter 11 plan [Dkt. No. 242] (the "Plan"), a disclosure statement with respect to the Plan [Dkt. No. 243] (the "Disclosure Statement"), and a solicitation procedures motion [Dkt. No. 244]. The Plan provides for the continuation of the Debtors' business as a going concern and a restructuring of its obligations with funding from a plan sponsor to be identified. A hearing to consider approval of the Disclosure Statement was scheduled for July 7, 2023. On June 27, 2023, the Debtors filed the Notice of Adjournment of (I) Hearing to Consider Approval of Proposed Disclosure Statement with Respect to Joint Plan of Reorganization of Christmas Tree Shops, LLC, Handil, LLC, Handil Holdings, LLC, Salkovitz Family Trust 2, LLC, and Nantucket Distributing Co., LLC; and (II) Objection Deadline Related Thereto [Dkt. No. 303], which adjourned the deadline to object to the Disclosure Statement and the hearing on the same to a date to be determined.

14.     As provided for in the Final DIP Order, the Debtors retained SSG Capital Advisors, LLC ("SSG") on or about May 31, 2023 to provide investment-banking services in connection with the Debtors' reorganization efforts including identifying potential investors or buyers and entering into a plan funding agreement with a plan sponsor or an asset purchase agreement with a purchaser for all or substantially all of the Debtor's assets.

15.     Since SSG's retention three (3) weeks ago, SSG has conducted an extensive marketing process with potential strategic and financial buyers to solicit interest in the Debtors' business. SSG contacted and sent materials to approximately 350 potential acquirers (collectively, the "Interested

Parties"). Twenty-nine (29) Interested Parties executed non-disclosure agreements with others still in process and have requested and gained access to the Debtors' electronic data room. The Interested Parties canvassed by SSG included major retailers, private equity firms and other investors. Several Interested Parties have expressed an interest in acquiring substantially all of the Debtors' assets as a going concern pursuant to Sections 363 and 365 of the Bankruptcy Code.

16. On June 21, 2023, the DIP Agent delivered to the Debtors a Notice of Event of Default, DIP Termination Event and Carve Out Trigger Notice under the Final DIP Order (the "DIP Notice"). Due to the occurrence of a DIP Termination Event and pursuant to the DIP Notice, the DIP Secured Parties are relieved of any obligation to provide financial accommodations to the Debtors under the DIP Facility and the Debtors will be unable to access the funds in their accounts after June 28, 2023 unless the Debtors remedy those Events of Default.[4]

17. The Debtors do not dispute that one or more Events of Default has occurred and the Debtors have informed the DIP Lenders and the Committee that the Debtors are not able to remedy those defaults by June 28, 2023.

18. An expedited sale process is required under the circumstances. The Debtors and their professionals are actively marketing the Debtors' business and may possibly be able to identify a stalking horse bidder for the Assets (the "Stalking Horse Bidder") and to negotiate and enter into an acceptable asset purchase agreement with the Stalking Horse Bidder (the "Stalking Horse APA") the week of July 2, 2023, which Stalking Horse APA together with an acceptable deposit and such other usual and customary documents shall constitute an acceptable stalking horse bid for the Assets (collectively, the "Stalking Horse Bid").

19. The Debtors shall, on or before July 7, 2023, file a supplement to this Motion, either (i)

---

[4] Under the Final DIP Order, the Remedies Notice Period expires five (5) calendar days following delivery of the DIP Notice, or June 26, 2023. The DIP Lenders extended such period through June 28, 2023.

identifying the Stalking Horse Bidder, stating the amount and other material terms of the Stalking Horse Bid, providing a summary of the Assets to be purchased, and attaching the Stalking Horse APA or (ii) stating that no Stalking Horse Bid has been received.

20.     The Debtors believe that an Auction process culminating in a Sale, closing on or before July 30, 2023, will maximize the value of the Assets. Contemporaneously with filing of this Motion, the Debtors have filed a motion requesting a hearing to consider entry of the Bidding Procedures Order on July 7, 2023, one of the omnibus hearing dates in these cases.

21.     The Debtors will propose the following key dates and deadlines for the Sale process, certain of which dates and deadlines may be subject to extension in accordance with the Bidding Procedures:[5]

| DATE | DEADLINE/EVENT |
| --- | --- |
| On or before July 7, 2023 | Identify Stalking Horse Bidder and File Stalking Horse Supplement |
| July 7, 2023 at 10:00 a.m. (ET) | Bidding Procedures Hearing |
| One (1) business day after entry of the Bidding Procedures Order | Deadline to serve Notice of Sale |
| July 16, 2023 at 5:00 p.m. (ET) | Deadline for the submission of Qualified Bids (i.e., the Bid Deadline) |
| July 17, 2023 at 5:00 p.m. (ET) | Deadline for Debtors to designate Qualified Bid(s) |
| July 19, 2023 at 10:00 a.m. (ET) | Auction |

---

[5] The Debtors reserve the right to modify the proposed sale-related dates and deadlines.

7

| | |
|---|---|
| July 19, 2023 at 11:59 p.m. (ET) | Deadline to file and serve Notice of Winning Bid |
| July 20, 2023, at 11:59 p.m. (ET) | Deadline to file and serve an Assumption and Assignment Notice |
| July 20, 2023, at 4:00 p.m. (ET) | Deadline to file Sale Objection |
| July 21, 2023, at__:_____.m. (ET) | Sale Hearing |
| July 27, 2023, at 12:00 p.m. (ET) | Deadline to file Contract Objections (if applicable), with a post-Closing hearing (if necessary) |
| July 30, 2023 | Deadline for Winning Bidder to close the transaction contemplated by its Winning Bid |

**Bidding Procedures**

A.      **Overview**

22.     The Bidding Procedures are designed to promote a competitive and efficient Sale process that will maximize the value of the Debtors' estates. The Bidding Procedures will allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or otherwise best offer for the Assets, whether as a going concern or as part of a liquidation sale, on a schedule consistent with the Debtors' chapter 11 objectives.

*[Remainder of Page Intentionally Left Blank]*

159244212v1

23.　　As the Bidding Procedures are attached to the Bidding Procedures Order, they are not restated in their entirety herein. Pursuant to Local Rule 6004-1, certain of the key terms of the Bidding Procedures are highlighted in the chart below.[6]

| MATERIAL TERMS OF THE BIDDING PROCEDURES AND ORDER | |
|---|---|
| **Qualification of Bidders**<br>Local Rule 6004-1(c)((A) | _Section 2 of the Bidding Procedures_:<br><br>To become a Qualified Bidder, an Interested Party must submit to the Debtors and their advisors:<br><br>(a) documentation identifying the Interested Party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;<br><br>(b) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;<br><br>(c) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Interested Party has a _bona fide_ interest in consummating a sale transaction; and<br><br>(d) sufficient information, as determined by the Debtors and the DIP Lenders, to allow the Debtors and the DIP Lenders to determine that the Interested Party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a sale transaction, including, without limitation, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors and the DIP Lenders in their reasonable discretion); and (ii) can provide adequate assurance of future performance under Assigned Contracts to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale. |
| **Stalking Horse APA** | _Section 2 of the Bidding Procedures_:<br><br>The Debtors will file the Stalking Horse APA, which will include, among other things, a description of the Assets, representations, warranties, and covenants by and from the Debtors and the Stalking Horse Bidder, and certain conditions to closing and rights of termination related to the Sale. A copy of the Stalking Horse APA will be posted in the Data Room, and may also be obtained by Interested Parties upon request to the Debtors' advisors. |

---

[6] To the extent that there is any inconsistency between the terms of the Bidding Procedures and the summary of such terms in this Motion, the terms of the Bidding Procedures shall control. Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Bidding Procedures.

159244212v1

| | |
|---|---|
| **Qualified Bids** Local Rule 6004- 1(c)(i)(B) | *Section 7 of the Bidding Procedures*:<br><br>Other than in the case of a Stalking Horse Bid, which shall be considered a Qualified Bid, to be deemed a "Qualified Bid," a bid must be received from a Qualified Bidder on or the Bid Deadline and satisfy each of the following Bid Requirements:<br><br>(a) be in writing;<br><br>(b) fully disclose the identity of the Qualified Bidder (and to the extent that the Qualified Bidder is a newly formed acquisition entity or the like, the identity of the Qualified Bidder's parent company or sponsor), and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualified Bidder;<br><br>(c) set forth the Qualified Bidder's proposed purchase price;<br><br>(d) specify the Assets and assumed liabilities that are included in the bid;<br><br>(e) be accompanied by a Proposed APA, and a marked copy of the Proposed APA that reflects any variations from the Stalking Horse APA;<br><br>(f) state that such Qualified Bidder's offer is formal, binding, and unconditional, and is irrevocable until two (2) business days after the closing of the Sale;<br><br>(g) state that such Qualified Bidder is financially capable of consummating the transactions contemplated by the Proposed APA and provide written evidence in support thereof;<br><br>(h) contain such financial and other information to allow the Debtors and the DIP Lenders to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to close the transactions contemplated by the Proposed APA, including, without limitation, Adequate Assurance Information, which Adequate Assurance Information may be shared with the Committee and, upon request, Counterparties;<br><br>(i) identify with particularity any Assigned Contracts the assumption and assignment of which is a condition to close the transactions contemplated by the Proposed APA;<br><br>(j) include a commitment to close the transactions contemplated by the Proposed APA by no later than July 30, 2023;<br><br>(k) not request or entitle such Qualified Bidder to any break-up fee, termination fee, expense reimbursement, substantial contribution claim, or similar type of fee or payment;<br><br>(l) not contain any contingencies of any kind (other than closing |

conditions consistent with, and no less favorable to the Debtors than, the closing conditions set forth in the Stalking Horse APA), including, without limitation, contingencies related to financing, internal approval, or due diligence;

(m) contain a written acknowledgement and representation that the Qualified Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation, or inspection of any documents and other information in making its Qualified Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

(n) provide for the Qualified Bidder to serve as a Back-Up Bidder if the Qualified Bidder's bid is the next highest or otherwise best bid after the Winning Bid, in accordance with the terms of the Proposed APA as submitted or modified at the Auction;

(o) include written evidence of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Proposed APA;

(p) provide a Deposit in an amount equal to the Deposit set forth in Stalking Horse APA; and

(q) provide that in the event of the Qualified Bidder's breach of, or failure to perform under, the Proposed APA, the Qualified Bidder shall forfeit its Deposit to the Debtors, and the Debtors shall be entitled to pursue all available legal and equitable remedies, including, without limitation, additional damages and/or specific performance.

The Debtors reserve the right to work with any Qualified Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid. The Debtors, in consultation with the Notice Parties, may determine that separate bids for less than all of the Assets constitute a single Qualified Bid for all, substantially all, or any portion of the Assets; *provided* that such bids must satisfy the Bid Requirements.

Each Qualified Bidder submitting a bid shall be deemed to:
(a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

159244212v1

| MATERIAL TERMS OF THE BIDDING PROCEDURES AND ORDER | |
|---|---|
| **Provisions Providing Bid Protections to "Stalking Horse" or Initial Bidder** Local Rule 6004- 1(c)(i)(C) | <u>*Section 3 of the Bidding Procedures*</u>:<br>No bidder or any other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other bid protections in connection with the submission of a bid for any Assets, or for otherwise participating in the Auction or the sale process, unless otherwise agreed to by the Debtors and approved by an order of the Court. The DIP Lenders do not consent to the payment of a break-up fee prior to the payment in full in cash of the obligations due under the DIP Facility. The DIP Agent, on behalf of the DIP Lenders, reserves its rights to object to any Sale transaction and payment of any bid protections to the extent it constitutes a surcharge of its collateral. |
| **Modification of Bidding and Auction Procedures** Local Rule 6004- 1(c)(i)(D) | <u>*Section 17 of the Bidding Procedures*</u>:<br>The Debtors and their estates reserve the right, to modify the Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Qualified Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Qualified Bidders, adjourn or cancel an Auction at or prior to such Auction, and adjourn the Sale Hearing, without further order of the Court. |
| **Closing with Alternative Back-Up Bidders** Local Rule 6004- 1(c)(i)(E) | <u>*Section 14 of the Bidding Procedures*</u>:<br>In the event that a Winning Bidder fails to close a Sale on or before July 30, 2023, or such date as may be extended by the Debtors in consultation with the DIP Agent and the DIP Lenders, and a Back-Up Bidder has been previously identified, the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any other parties. |

## B. Noticing and Objection Procedures

24. The chart below sets forth the proposed noticing and objection procedures and requirements established by the Bidding Procedures (collectively, the "Sale Noticing and Objection Procedures"):

| SALE NOTICING AND OBJECTION PROCEDURES | |
|---|---|
| **Sale Notice** | Within one (1) business day of the entry of the Bidding Procedures Order, the Debtors shall to serve the Sale Notice, substantially in the form attached to the Bidding Procedures Order, on: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the United States Department of Justice; (d) the attorneys general for the 20 states in which the Debtors conduct business; (e) the Internal Revenue Service; (f) counsel for the DIP Agent; (g) counsel to Eclipse Business Capital LLC; (h) counsel to Pathlight Capital, LP; (i) counsel for Bed, Bath and Beyond, Inc.; (j) counsel for ReStore Capital (CTS), LLC; (k) those parties asserting liens or other security interests in certain delineated personal property of the Debtors based upon leases or sales of such property to the Debtor; (l) counsel to the Committee, (m) all entities reasonably known to have expressed an interest in a transaction with respect to any of the Assets during the past nine (9) months; (n) all state and local taxing authorities with an interest in the Assets; (o) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (p) all other parties known or reasonably believed to have asserted an interest in the Assets; (q) the counterparties to contract and leases; (r) the Debtors' insurance carriers; (s) all known creditors of the Debtors; (t) all known holders of equity interests in the Debtors; (u) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (v) to the extent not included above, all parties in interest listed on Debtors' creditor matrix. <br><br> The Debtors shall use best efforts to cause the Sale Notice to be published once in the national edition of USA today and Financial Times Worldwide Edition, with any modifications necessary for ease of publication. <br><br> The Debtors shall post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent. |
| **Notice of Qualified Bid(s)** | On or before July 17, 2023 at 5:00 p.m.: the Debtors shall notify all Bidders whether their bids have been determined to be a Qualified Bid. |

| Auction Results | On or before July 19, 2023 at 5:00 p.m.: the Debtors shall file a notice with the Court that sets forth: (i) the identity of the Winning Bidder(s) and any Back- Up Bidder(s); (ii) the amount of the Winning Bid and any Back-Up Bid; and (iii) whether the Winning Bidder or the Back-Up Bidder have any connections to the Debtors other than those arising from their respective bids |
|---|---|
| Sale Objections | Any objection solely with respect to the conduct of the Auction, the Auction results, the selection of the Winning Bid and/or Back-Up Bid, or the terms of any Sale to the Winning Bidder or the Back-Up Bidder shall be filed no later than July 20, 2023, at 4:00 p.m. (ET). |

25.     The Debtors submit that the Sale Noticing and Objection Procedures, coupled with the Bidding Procedures and Assumption and Assignment Procedures described below, constitute adequate and reasonable notice of the key dates and deadlines and other important information regarding the Sale process, including the objection deadlines, the Bid Deadline, and the time and location of the Auction and Sale Hearing. Accordingly, the Debtors request that the Court approve the form of Sale Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**, and find that the Sale Noticing and Objection Procedures comply with the requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.

C.     **Assumption and Assignment Procedures**

26.     In connection with a Sale transaction, the Debtors may seek to assume and assign to a Winning Bidder one or more Assigned Contracts. The Assumption and Assignment Procedures are designed to, among other things, govern the Debtors' provision of Adequate Assurance Information and notice of Cure Amounts to applicable Counterparties. The chart below sets forth the Assumption and Assignment Procedures:

| ASSUMPTION AND ASSIGNMENT PROCEDURES | |
|---|---|
| **Assumption and Assignment Notice** | On or before one (1) business day after the selection of a Winning Bid or a Back-Up Bid, the Debtors shall serve the Assumption and Assignment Notice, substantially in the form attached to the Bidding Procedures Order, via overnight delivery and, if possible, via electronic mail, on any Counterparty to an Assigned Contract that the relevant Winning Bidder or Back-Up Bidder desires to assume as part of its Winning Bid. The Assumption Notice shall include: (a) notice that such Counterparty's contract is an Assigned Contract as part of the relevant Winning Bid; (b) the Cure Amount if any, that the Debtors believe is required to be paid to the Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for such Assigned Contract; and (c) the Adequate Assurance Information of the relevant Winning Bidder and Back-Up Bidder. |
| **Contract Objections** | If a Counterparty objects to (a) the proposed assumption and assignment of its Assigned Contract (including, without limitation, including on the basis that the Winning Bidder cannot provide adequate assurance of future performance), or (b) the Cure Amount, the Counterparty must file a Contract Objection on or before July 27, at 12:00 p.m. (ET). |
| **Resolution of Contract Objections** | The Debtors, the relevant Winning Bidder, and the objecting Counterparty shall first confer in a good faith attempt to resolve the Contract Objection without Court intervention. If the parties are unable to consensually resolve the Contract Objection, the Debtors may request an emergency hearing for the Court to resolve the Contract Objection. <br><br> A Contract Objection may be resolved after the closing date of the applicable Sale, subject to the terms of the asset purchase agreement approved in connection with the Sale. |
| **Failure to Timely Object** | If no Contract Objection is timely received with respect to an Assigned Contract: (a) the Counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Winning Bidder of the Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Winning Bidder); (b) any and all defaults under the Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the applicable Cure Amount; and <br><br> (c) the Cure Amount for such Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assigned Contract against the Debtors and their estates or the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order. |

159244212v1

| Reservation of Rights | In the event a Contract Objection is resolved in a manner unfavorable to the Debtors and their estates, the Debtors may withdraw their request to assume and assign such Assigned Contract as part of any Winning Bid. |
| --- | --- |

## **RELIEF REQUESTED**

27.     By this Motion, pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1, the Debtors request entry of the following:

   (a)     the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, granting the following relief:

   i.     approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, to be used in connection with one or more Sales of the Debtors' Assets;

   ii.     scheduling (A) an Auction for the Assets for July 19, 2023; and (B) a Sale Hearing to consider approval of a proposed Sale on July 21, 2023, subject to the availability of the Court;

   iii.     approving the Sale Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**;

   iv.     approving the Assumption and Assignment Procedures;

   v.     approving the Assumption and Assignment Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3**; and

   vi.     granting related relief; and

   (b)     a Sale Order, granting the following relief:

   i.     authorizing the Sale of Assets free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances and assumed liabilities as determined by the Debtors and the Winning Bidder(s), with liens to attach to the proceeds of the applicable Sale;

   ii.     authorizing the assumption and assignment of Assigned Contracts in connection with a Sale; and

   iii.     granting related relief.

**BASIS FOR RELIEF**

A.     **The Bidding Procedures Are Fair, Appropriate, and In the Best Interests of the Debtors and Their Stakeholders**

28.     The Bidding Procedures are designed to maximize the value of the Assets under the circumstances. See Burtch v. Ganz (In re Mushroom Co.), 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor "had a fiduciary duty to protect and maximize the estate's assets"); In re Food Barn Stores, Inc., 107 F 3d 558, 564-65 (8th Cir. 1997) (recognizing that main goal of any proposed sale of property of a debtor's estate is to maximize value). Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate. See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.), 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that sale procedures "encourage bidding and . . . maximize the value of the debtor's assets").

29.     The Bidding Procedures provide for an orderly, uniform, and competitive process through which interested parties may submit offers or counteroffers to purchase the Assets.  Given the case timeline, the Bidding Procedures will allow the Debtors to conduct any Auction in a fair and transparent manner that will encourage participation by financial capable bidders with demonstrated ability to consummate a timely sale or sales.

30.     Accordingly, the Bidding Procedures should be approved because they are aligned with the circumstances of these Chapter 11 Cases and are reasonable, appropriate, and in the best interests of the Debtors, their estates, and all parties in interest.

**B.** **Approval of One or More Sales Is Warranted Under Section 363 of the Bankruptcy Code**

31. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing In re Schipper, 933 F.2d 513 (7th Cir. 1991)); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Stephen Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).

32. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. See In re Decora Indus., Inc., No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. at 656. At any Sale Hearing, the Debtors intend on showing that any sale satisfies the sound business judgment standard.

        **(i)**       **The Debtors Have Demonstrated a Sound Business Justification for the Sale(s) of Assets**

33.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. See, e.g., Cumberland Farms Dairy, Inc. v. Abbotts Dairies of Penn., Inc. (In re Abbotts Dairies of Penn., Inc.), 788 F.2d 143 (3d Cir. 1986); Lionel Corp., 722 F.2d at 1063; Food Barn Stores, 107 F.3d at 564-65 (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

34.     In light of the Debtors' financial condition, an orderly and expeditious sale or sales of the Assets is critical to maximizing the value of the Debtors' estates and recoveries for the Debtors' economic stakeholders. Moreover, the proposed Sale timeline is required under the DIP Facility, without which, the Debtors would not be able to fund the Sale process.

        **(ii)**     **The Sale Noticing and Objection Procedures Are Appropriate and Comply With Bankruptcy Rules 2002 and 6004**

35.     Bankruptcy Rules 2002 and 6004 require the Debtors to notify creditors of a proposed sale, provide a description of the assets being sold, and disclose the time and place of the Auction, the terms and conditions of any proposed Sale transaction and any objection deadlines. See Fed. R. Bankr. P. 2002(a), 2002(c), and 6004(a). The Sale Noticing and Objection Procedures set forth above are reasonably calculated to provide all of the Debtors' known creditors and other parties in interest with adequate and timely notice of all of the key dates, deadlines, and other material information related to the Sale process. Accordingly, the Debtors request that the Court approve the Sale Noticing and Objection Procedures, including the Sale Notice, substantially in the form attached to the Bidding Procedures as **Exhibit 2**, and find that no other or further notice of the Bidding Procedures, the Auction (excluding the Auction results), or the Sale Hearing is necessary or required.

       (iii)      **The Bidding Procedures Ensure that the Sale Process Is Conducted in Good Faith and that the Winning Bidder(s) Is Entitled to the Protections Afforded by Section 363(m) of the Bankruptcy Code**

36.      Section 363(m) of the Bankruptcy Code is designed to protect the sale of a debtor's assets to a good-faith purchaser. Specifically, section 363(m) provides the following:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) embodies "[the] policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." <u>Abbotts Dairies</u>, 788 F.2d 143, 147 (3d Cir. 1986)); <u>see also Reloeb Co. v. LTV Corp. (In re Chateaugay Corp.)</u>, No. 92 Civ. 7054 (PKL), 1993 U.S. Dist. LEXIS 6130, at *9 (S.D.N.Y. May 10, 1993); <u>Allstate Ins. Co. v. Hughes</u>, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

37.      While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" <u>Abbotts Dairies</u>, 788 F.2d at 147 (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders); <u>see also In re Bedford Springs Hotel, Inc.</u>, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); <u>In re Perona Bros., Inc.</u>, 186 B.R. 833, 839 (D.N.J. 1995).

38.      In other words, a party would have to show fraud or collusion between the Debtors and bidders to demonstrate a lack of good faith. <u>See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)</u>, 111 F .3d 269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that

would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

39.     Where the Debtors are in default of their post-petition financing obligations, the Debtors constructed the Bidding Procedures to close a sale by July 30, 2023 while providing a framework for the Debtors to review and compare bids, to engage with bidders and provide an opportunity for counteroffers, and to attempt to obtain a fair and reasonable purchase price representing the highest and best value for the Assets.

40.     The Debtors submit that, for any Stalking Horse Bidder that may be selected, the Debtors will seek a finding that such Stalking Horse Bidder is a "good faith purchaser" within the meaning of section 363(b) of the Bankruptcy Code. Further, each Auction Bidder must confirm that it has not engaged in any collusion with respect to the Bidding Procedures, the Auction, or any Sale. Any purchase agreement with a Winning Bidder executed by the Debtors will be negotiated at arm's length and in good faith. As such, the Debtors request a finding that any Winning Bidder is a good-faith purchaser and is entitled to the full protections afforded under section 363(m) of the Bankruptcy Code.

41.     Based on the foregoing, the Debtors submit that they have demonstrated that any proposed Sale is a sound exercise of the Debtors' business judgment and should be approved as a good faith transaction.

### C.  A Sale Free and Clear of Liens, Claims, Interests, and Encumbrances Is Appropriate Under Section 363(f) of the Bankruptcy Code

42.  In the interest of attracting the best offers, the Court should authorize the Debtors to sell the Assets free and clear of any and all liens, claims, interests, and other encumbrances (other than permitted encumbrances or assumed liabilities in any relevant purchase agreement), in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, and encumbrances attaching to the proceeds of the applicable Sale. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

   a.  applicable non-bankruptcy law permits sale of such property free and clear of such interest;

   b.  such entity consents;

   c.  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

   d.  such interest is in bona fide dispute; or

   e.  such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see also In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

43.  Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of

claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

44.     The Debtors anticipate that any Sale transaction they elect to pursue will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code to permit a "free and clear" sale of the applicable Assets. Here, the Assets are subject to the liens of the DIP Lenders and the Prepetition Secured Creditors, who the Debtors expect will consent to any Sale. Additionally, parties with junior liens on the assets can be compelled to accept a money satisfaction of their interests. The Bidding Procedures require the Debtors to send the Sale Notice to all purported lienholders. The Debtors request that, unless a party asserting a prepetition lien, claim, or encumbrance on any of the Assets timely objects to the proposed Sale, such party shall be deemed to have consented to any Sale approved at the Sale Hearing. See Hargave v. Twp. of Pemberton, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to a sale motion, a creditor is deemed to consent to the relief requested therein).

45.     Accordingly, the Debtors request that the Court authorize the sale of the Assets free and clear of any liens, claims, interests, and encumbrances, in accordance with section 363(f) of the Bankruptcy Code, subject to such liens, claims, interests, and encumbrances (other than permitted encumbrances or assumed liabilities in any relevant purchase agreement), to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

**D.     The Debtors' Possible Assumption and Assignment of Executed Contracts and Unexpired Leases Is Appropriate Under Section 365 of the Bankruptcy Code**

46.     The Winning Bidder shall be responsible for designating Assigned Contracts, paying the Cure Amounts associated with the assumption and assignment of the Assigned Contracts, and providing adequate assurance of future performance to Counterparties to Assigned Contracts. The Debtors request authority under section 365 of the Bankruptcy Code to assume and assign the designated Assigned Contracts to the Winning Bidder. Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory

contract or unexpired lease. See, e.g., In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989).

47. Assumption of any Assigned Contract is an exercise of the Debtors' sound business judgment because the transfer of such Assigned Contracts in connection with a Sale is necessary to the Debtors' ability to obtain the best value for the Assets. Given that consummation of the Sale is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the Debtors' assumption of Assigned Contracts is an exercise of sound business judgment and, therefore, should be approved.

48. The Debtors' assumption and assignment of an Assigned Contracts will be contingent upon payment of the Cure Amounts and effective only upon the closing of the applicable Sale. As set forth above, the Debtors propose to file with the Court and serve on each Counterparty to an Assigned Contract an Assumption Notice, which will set forth the Debtors' good faith calculations of Cure Amounts with respect any Assigned Contracts listed on such Assumption Notice, and the procedures by which such Counterparty may object to the assumption and assignment of its Assigned Contract at the Sale Hearing or at a separate hearing scheduled prior to closing.

49. Adequate of future performance under an unexpired lease or executory contract is dependent upon such agreement and the circumstances of the case, but should be determined based upon "practical, pragmatic construction." See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes,

Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); see also In re Natco  Indus.,  Inc., 54  B.R.  436,  440  (Bankr.  S.D.N.Y.  1985)  (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); In re Bon Ton  Rest.  &  Pastry Shop,  Inc., 53  B.R.  789,  803  (Bankr.  N.D.  Ill.  1985)  (finding  that,  "[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"). Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned. See In re  Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance  is  present  when  the  prospective  assignee  of  a  lease  has  financial  resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

50.    The Bidding Procedures expressly specify that any Qualifying Bid that includes the assumption and assignment of any Assigned Contracts must include with information regarding the bidder's ability to perform any Assigned Contracts that it wishes for the Debtors to assume and assign. The Assumption and Assignment Procedures require the Debtors to furnish all available Adequate Assurance Information to the relevant Counterparties to provide such Counterparties ample opportunity to review such information and object if they so choose. To the extent necessary, the Debtors will present facts at the Sale Hearing to show the financial wherewithal, willingness and ability of the Winning Bidder to perform under any Assigned Contracts that it wishes for the Debtors to assume and assign. In light of the foregoing, the Debtors' assumption and assignment of any Assigned Contracts in accordance with the Assumption and Assignment Procedures would satisfy the requirements of section 365 of the Bankruptcy Code and should be approved.

## **WAIVER OF BANKRUPTCY RULES 6004(A), 6004(H) AND 6006(D)**

51.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders

otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

52.     The Debtors believe that any Sale should be consummated as soon as practicable to preserve and maximize value. Accordingly, the Debtors request that any Sale Order  approving the sale of the Assets and the assumption and assignment of the Potential Purchased Contracts be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## NOTICE

53.     Notice of this Motion will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the United States Department of Justice; (d) the attorneys general for the 20 states in which the Debtors conduct business; (e) the Internal Revenue Service; (f) counsel for the DIP Agent; (g) counsel to Eclipse Business Capital LLC; (h) counsel to Pathlight Capital, LP; (i) counsel for Bed, Bath and Beyond, Inc.; (j) counsel for ReStore Capital (CTS), LLC; (k) those parties asserting liens or other security interests in certain delineated personal property of the Debtors based upon leases or sales of such property to the Debtor; (l) counsel to the Committee, (m) all parties who have requested notice per Bankruptcy Rule 2002, and (n) all persons known or reasonably believed to have asserted an interest in or claim to any of the Assets.

54.     The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice of this Motion is required.

<u>**No Previous Request**</u>

55.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter the Bidding Procedures Order, substantially in the form attached hereto as <u>**Exhibit A**</u>; (ii) after a Sale Hearing has taken place, enter a Sale Order; and (iii) grant such other and further relief as the Court may deem just and proper.

<table>
<tr>
<td>Dated: June 28, 2023<br>      Wilmington, Delaware</td>
<td>

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By:  */s/ Marcy J. McLaughlin Smith*
Evelyn J. Meltzer (Del. Bar No. 4581)
Marcy J. McLaughlin Smith (Del. Bar No. 6184)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Tel:  (302) 777-6500
Fax:  (302) 421-8390
Email: evelyn.meltzer@troutman.com
       marcy.smith@troutman.com

-and-

**MURPHY & KING, PROFESSIONAL CORPORATION**
Harold B. Murphy (*pro hac vice*)
Christopher M. Condon (*pro hac vice*)
28 State Street, Suite 3101
Boston, Massachusetts, 02109
Tel:  (617) 423-0400
Email: hmurphy@murphyking.com
       ccondon@murphyking.com

*Attorneys for Debtors*
*and Debtors in Possession*

</td>
</tr>
</table>