# Exhibit A

**Debtors' Revised Supplemental DIP Financing Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] | Case No. 23-10576 (TMH) |
| Debtors. | Jointly Administered |
| | Ref. Docket Nos. **22, 75, 82, 125, 229, 296, 299** |

**SUPPLEMENTAL ORDER TO THE FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") acknowledging that (a) one or more DIP Termination Events have occurred under the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 229] (the "Final DIP Order"), and (b) a Carve Out Trigger Notice was properly and timely issued by the DIP Agent in accordance with the Final DIP Order; and the Debtors, the Committee, and the DIP Secured

---

[1]   The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

[2]   Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Final DIP Order or the DIP Loan Documents (each defined below), as applicable.

Parties desiring to amend the Milestones, the Carve Out, and the use of Cash Collateral and/or limited funding under the DIP Facility solely on the terms set forth in this Order (this "Order") and the Revised Budget (as defined below) attached hereto; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and the Debtors consenting to entry of a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion, the proposed Order, and having heard the statements in support of the relief requested therein at a hearing before this Court on June 29, 2023; and after due deliberation and sufficient cause appearing thereof,

**IT IS HEREBY FOUND AND ORDERED THAT:**

1.   Relief Granted. The relief requested is GRANTED as set forth herein.

2.   Certain Findings.

   a.   One or more DIP Termination Events have occurred under the Final DIP Order, with the first DIP Termination Event having occurred on June 9, 2023.

   b.   Upon the occurrence of a DIP Termination Event, the DIP Secured Parties were, and continue to be, relieved of any obligation to provide financial accommodations to the Debtors.

   c.   An immediate and critical need exists for the Debtors to be granted continued access to funds constituting Cash Collateral and/or limited continued funding under the DIP Facility in accordance with the Revised Budget, to permit for the continued operations of the Debtors. Without access to Cash Collateral and/or such continued limited funding in

accordance with the Revised Budget, the Debtors will not be able to pay their expenses incurred in connection with continued operations through the period required for the commencement and operation of the Closing Sales (as defined in the Store Closing Order (as defined below)).

d.      The DIP Secured Parties and the Prepetition Term Loan Secured Parties have expressly relied upon the entry of this Order and the Final DIP Order in connection with their approval of the use of Cash Collateral and/or limited funding under the DIP Facility.

e.      Notice of the Motion and opportunity for a hearing on the proposed Order were appropriate under the circumstances—including, without limitation, that the proposed relief was sought during the Remedies Notice Period—that notice was provided in accordance with the *Order Shortening Notice and Objection Periods with Respect to the Debtors' Motion for Entry of a Supplemental Order to the Final Order Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing and Use Cash Collateral* [Docket No. 299], and no other notice need be provided.

f.      Good cause has been shown for the entry of this Order and the terms hereof are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. Among other things, entry of this Order will minimize disruption of the Debtors' operations, permit the Debtors to continue to operate through the commencement and operation of the Closing Sales.

3.      <u>Budget</u>.  The budget annexed to the Final DIP Order as <u>Exhibit B</u> is hereby amended and replaced with a budget that will be filed with the Court on or before July 7, 2023, which budget may be further amended subject to prior written consent of the DIP Agent (acting at the direction of the DIP Lenders) (each, acting in their sole discretion) (the "<u>Revised Budget</u>"). For clarity, the

159360995v1

Revised Budget shall constitute the in-effect Approved Budget.  The period set forth in the Revised Budget is referred to herein as the "Revised Budget Period".  An illustrative budget, which is not approved, is annexed hereto as Exhibit 1.

4.      Use of Cash Collateral.  Subject to the terms and conditions set forth in the Final DIP Order and this Order, the Debtors are permitted to use Cash Collateral during the Revised Budget Period solely in accordance with the Revised Budget without any permitted variance, absent prior written consent of the DIP Agent (acting at the direction of the DIP Lenders).

5.      Adequate Protection. The terms and conditions of the use of the Cash Collateral set forth in the Final DIP Order shall apply to the use of Cash Collateral authorized under this Order.

6.      Sweeping, Application of Collateral Proceeds. As set forth in Paragraph 1.5 of the Final DIP Order, during the Revised Budget Period, all prepetition practices and procedures for, *inter alia*, the sweeping of cash proceeds of the collection of the Debtors' accounts receivable shall continue without interruption; provided, however, that the DIP Agent shall not apply such proceeds to the outstanding balance of the DIP Loans until the earlier to occur of (a) a DIP Termination Event that occurs after the date hereof; or (b) the expiration of the Revised Budget Period. Until the time set forth in the proviso to the foregoing sentence, the DIP Agent shall hold such proceeds as Cash Collateral, provided, that to the extent that no further DIP Termination Event has occurred and prior to the expiration of the Revised Budget Period, the Debtors may request that the DIP Agent make available such proceeds for use by the Debtors solely in accordance with the Revised Budget (with a copy of any such request together with any related borrowing base certificate and other supporting materials to be delivered concurrently to the Prepetition Term Loan Agent).  To the extent that such Cash Collateral is insufficient to fund the expenses set forth in the Revised Budget, the DIP Lenders may, in their sole discretion, make additional funding available under the

DIP Facility, with all such funding subject to the terms of the Final DIP Order, this Order and DIP

Loan Documents. For clarity, the DIP Secured Parties (i) shall be under no obligation to fund or

accommodate any borrowing requests under the DIP Facility and (ii) shall not be liable for, or be

obligated to fund, any administrative expense or claim against any of the Debtors and their estates

(other than the Carve Out (as modified herein) and the Minimum Stub Rent Reserve in the amounts

set forth in the Approved Budget annexed to the Final DIP Order through the date of the first DIP

Termination Event).

7.    <u>New Case Milestones</u>.

a.    The Milestones set forth in the DIP Loan Agreement and annexed to the

Final DIP Order as <u>Exhibit C</u> are hereby amended and replaced with following Milestones:[3]

i.    On or before June 29, 2023:  The Debtors shall serve the Store Closing Notice (as defined below) to those parties required to be served under the Store Closing Order.

ii.    On or before July 5, 2023 at 12:00 p.m. (Eastern Time):  The Debtors shall provide a Revised Budget that is acceptable to the DIP Agent (acting at the direction of the DIP Lenders) (each, acting in their sole discretion).

iii.    On or before July 7, 2023:  Entry of an order, acceptable to the Required DIP Lenders, extending the period under Section 365(d)(4) of the Bankruptcy Code to, at least, 150 days from the Petition Date.

b.    Any failure to timely meet or satisfy any of the foregoing Milestones shall

constitute a DIP Termination Event.

8.    <u>Carve Out</u>.

a.    <u>Clauses (iii) and (iv)</u> of the definition of the Carve Out in the Final DIP

Order are hereby amended and replaced with the below:

(iii) to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise, subject to the professional fees and

---

[3]    [**NTD**:  Debtors should file procedures motion to streamline rejection procedures.]

disbursements reflected in the Approved Budget (set forth on Exhibit B to the Final DIP Order) on a line item basis (on a cumulative basis for Debtor Professionals (defined below) and on a cumulative basis for Committee Professionals (defined below)) for unpaid fees (excluding any success or transaction fees), costs, disbursements and expenses (the "<u>Allowed Professional Fees</u>") incurred or earned by professionals retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Committee pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") for the period from the Petition Date through and including June 30, 2023, in an amount not to exceed $1,340,000 for Debtor Professionals and in an amount not to exceed $756,000 for Committee Professionals;

(iv) Allowed Professional Fees of Debtor Professionals and Committee Professionals incurred or earned after June 30, 2023 (such date, the "<u>Trigger Date</u>") in amounts not to exceed (A) $250,000 for the Debtor Professionals (other than SSG Advisors, LLC ("<u>SSG</u>")); (B) $150,000 for SSG; and (C) $200,000 for Committee Professionals, to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise (the sum of the amounts set forth in this clause (iv)(A) and (B) being the "<u>Post-Carve Out Trigger Notice Cap</u>");

b.      On July 7, 2023, the Debtors shall deposit into the Professional Fee Reserve from Cash Collateral—and if Cash Collateral is insufficient, then the DIP Lenders shall provide a DIP Revolving Loan to the Debtors with the proceeds to be deposited into the Professional Fee Reserve—(A) the amounts set forth in amended <u>clauses (iii)</u> and <u>(iv)</u> of the definition of Carve Out, <u>less</u> (B) amounts already on deposit in the Professional Fee Reserve (the calculated amount, "<u>Professional Fee Funding Amount</u>"). Upon the deposit of the Professional Fee Funding Amount into the Professional Fee Reserve, the Carve Out Cap as to <u>clauses (iii)</u> and <u>(iv)</u> of the Carve Out has deemed satisfied; and the DIP Secured Parties shall be under no obligation to fund any additional amounts, and the Debtors may not use any Cash Collateral to pay or reserve, for Allowed Professional Fees of any Professional Person in these Chapter 11 Cases.

9.   <u>Minimum Stub Rent Reserve</u>.  The Debtors and the DIP Secured Parties shall have ceased funding and/or reserving for Stub Rent as of the week ending June 9, 2023 the date on which the first DIP Termination Event occurred.

10.   <u>Liquidation Sales</u>.[4]

a.   Absent the written consent of the DIP Secured Parties, the Debtors are authorized and directed to commence Closing Sales on or after July 6, 2023 at all of the Debtors' Stores pursuant to the terms of the Store Closing Order, with such sales to be conducted by Hilco Merchant Resources, LLC ("<u>Hilco</u>") pursuant to the terms of the Store Closing Agreement, the Store Closing Order, and this Order.

b.   By no later than the close of business on June 29, 2023, the Debtors shall serve notice to those parties required under Paragraph 37 of the Store Closing Order, including the Additional Store Landlords (the "<u>Store Closing Notice</u>"), in substantially the form attached hereto and approved hereby as <u>Exhibit 2</u>, listing all the Debtors' stores on an Additional Store List.  The deadline under Paragraph 38 of the Store Closing Order for Additional Store Landlords and interested parties to object to the application of the Store Closing Order to such additional location is **<u>July 6, 2023</u>** (the "<u>Total Liquidation Objection Deadline</u>").

c.   In accordance with the terms of the Store Closing Order, from and after the Total Liquidation Objection Deadline, if no objection is raised with respect to an Additional Store, the Store Closing Order shall apply to each such Additional Store, and Hilco shall be permitted to conduct the Closing Sales at the Additional Store and advertise

---

[4]   Capitalized terms used in this Paragraph and not otherwise defined herein shall have the meanings ascribed to them in the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 201] (the "<u>Store Closing Order</u>").

7

each Closing Sale at the Stores and the Additional Stores, with respect to which no objection has been raised, as a "Store Closing", "Everything Must Go", "Everything on Sale",  "Going out of Business," or similar themed sale.  The Debtors (i) shall provide assistance to Hilco as requested in connection with such Closing Sales, and (ii) without consent of the DIP Secured Parties and Hilco, shall not discount the sale price of any inventory or other assets or conduct any advertising, in each case, outside of the ordinary course of business.

11.    <u>Challenge Period Expiration</u>. Notwithstanding anything in <u>Paragraph 4.1</u> or otherwise of the Final DIP Order to the contrary:

a.    the Debtors' Stipulations shall be binding on all parties, persons and entities in all circumstances with respect to those Debtors' Stipulations concerning or relating in any way to (i) the Prepetition ABL Secured Parties, (ii) the Prepetition ABL Obligations—including the repayment of the Prepetition ABL Obligations under the DIP Loan Documents (including the Subject Prepetition ABL Obligations and the Roll-Up), and/or (iii) the Prepetition ABL Liens (the foregoing clauses (i) – (iii), the "<u>Prepetition ABL Matters</u>");

b.    the Challenge Period shall be, and hereby is, terminated for all purposes concerning or relating in any way to any of the Prepetition ABL Matters;

c.    In exchange for such termination, the Prepetition ABL Secured Parties, the Committee, and the DIP Secured Parties have agreed to the following:

i.  The early termination fee that the Prepetition ABL Secured Parties charged under the Prepetition ABL Loan Documents totaled $1,667,000 (the "<u>ETF</u>"), which amount was rolled up pursuant to the Final DIP Order and

is now a DIP Obligation.  The ETF shall be the last out portion of the DIP Obligations.  After payment in full in cash of all DIP Obligations other than the ETF amount and all obligations owing under the Consignment Agreement, the DIP Secured Parties shall remit to the Debtors' estates solely from cash the DIP Lenders receive for the repayment of the ETF portion of the DIP Obligations, 66% of any such cash received.  The Debtors shall hold such remitted amounts for distribution to administrative, priority and general unsecured claims;

ii.  The DIP Secured Parties shall release their liens and claims on any and all the following assets owned by the Debtors and their estates: (A) avoidance actions, (B) commercial tort claims, (C) prepetition intercompany claims, and (D) other causes of action (collectively, the "Causes of Action"), the pursuit of which Causes of Action shall be in the sole discretion of the Committee, with any proceeds from such Causes of Action available for distribution to claims  and expenses of the Debtors' estates;

iii.  The DIP Secured Parties release any claim they may have as to the funds in the bank account ending in x5241 held by Debtor Salkovitz Family Trust 2, LLC as of the Petition Date in the amount of $138,489.50, with such funds available for distribution to claims and expenses of the Debtors' estates amount.  Within ten (10) business days of entry of this Order, the DIP Secured Parties, Debtors and the Committee shall determine whether any portion of such funds were transferred postpetition into an account held by any other Debtor and subsequently swept by the DIP Secured Parties (such

swept amount, the "SFT2 Funds"). After the parties agree on the amount of SFT2 Funds, the DIP Secured Parties shall remit from Cash Collateral to the Debtors an amount equal to the amount of SFT2 Funds free and clear of the DIP Secured Parties' claims and liens, and such funds shall be available for distribution to administrative, priority and general unsecured claims;

iv. The Prepetition ABL Secured Parties and DIP Secured Parties waive any argument that they have a valid, perfected lien on the Debtors' motor vehicles or other rolling stock, and proceeds from the liquidation of such collateral will be available for distribution to claims and expenses of the Debtors' estates;

d. any provision of the Final DIP Order that was subject to or otherwise modified or limited by Paragraph 4.1 of the Final DIP Order shall no longer be subject to or otherwise modified or limited thereby; and

e. notwithstanding anything to the contrary herein, nothing herein shall affect, waive, or impair the Challenge Period with respect to all parties and matters other than Prepetition ABL Matters.

12. Treatment of ETF under Final DIP Order. Paragraph 5.27 of the Final DIP Order is hereby deleted.

13. Reservation of Rights of Secured Parties. Each of the DIP Secured Parties and the Prepetition Term Loan Secured Parties reserves all rights and defenses, including, without limitation, with respect to any further order or further relief pertaining to the use of Cash Collateral, the Prepetition ABL Collateral and/or the Prepetition Term Loan Collateral and/or under the

Prepetition Intercreditor Agreement. Except as expressly set forth herein, nothing herein amends or modifies the Final DIP Order, and the Final DIP Order shall remain in full force and effect.

14.      Estate Release. In consideration of, *inter alia*, the various financing arrangements extended by the DIP Secured Parties and their agreement in this Order as to the Carve Out and the continued consensual use of Cash Collateral and/or limited funding under the DIP Facility in accordance with the Revised Budget and this Order, each Debtor, on behalf of itself and anyone who may bring a claim on its behalf (including derivative claims), the Committee, and their respective successors and assigns (collectively, the "Estate Releasors") hereby forever releases, discharges and acquits the DIP Secured Parties (in any capacity) and each of their respective successors and assigns, and their respective present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees, consultants, advisors and other representatives in their respective capacities as such (collectively, the "Estate Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Estate Releasors (or any of them) had, have or hereafter can or may have against any Estate Releasee as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to any Debtor or any subsidiary thereof, the DIP Loan Documents, the Prepetition ABL Loan Documents, the Interim DIP Order, the Final DIP Order, this Order (except as to the agreements expressly and for the first time set forth herein), any other order of the Court and any other financial accommodations made by any DIP Secured Party and/or any other Estate Releasee to any Debtor, including any action or omission of an Estate Releasee in such person's capacity as an officer, director, employee, consultant or agent of, or advisor to, the Debtors or any

subsidiary thereof; <u>provided, however</u>, that the foregoing release shall not apply to any claim for fraud or intentional misconduct as determined by a final order or judgment of a court of competent jurisdiction.

15.    <u>Amendment to DIP Loan Agreement</u>.

a.    <u>Section 1.01</u> of the DIP Loan Agreement is amended to include the following definition:

> "<u>Supplemental Order</u>" means the *Supplemental Order to Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief.*

b.    The definition of "**<u>Order</u>**" in the DIP Loan Agreement is amended by deleting the definition set forth therein and replacing it with the following:

> "<u>Orders</u>" means (i) until entry of the Final Order, the Interim Order, (ii) after the entry of the Final Order, the Final Order, or (iii) the Supplemental Order, or the Interim Order, Final Order, and Supplemental Order as the "Orders".

16.    <u>Continued Effectiveness of Loan Documents</u>. The terms and conditions of the DIP Loan Documents, including the Final DIP Order, and the Prepetition Documents shall remain in full force and effect as modified by this Order. Without limiting the generality of the preceding sentence, during the Revised Budget Period, the Debtors shall continue to submit a weekly borrowing base certificate in accordance with the terms and conditions set forth in the DIP Loan Documents. In addition, in accordance with their existing obligations under the Final DIP Order and subject to the terms and conditions thereof, no later than three (3) business days after entry of this Order, the Debtors shall pay all accrued and unpaid: (A) professional fees and expenses of each of the DIP Secured Parties, (B) the Adequate Protection Professional Fees and Expenses, and (C) amounts owed to ReStore Capital (CTS) LLC under the Consignment Agreement.

17.     <u>Binding Effect</u>. All of the provisions of this Order, and any actions taken pursuant thereto, shall be effective and enforceable effective immediately upon entry of this Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure.

18.     <u>General Authorization</u>. The Debtors, the DIP Secured Parties and the Committee are authorized to take any and all actions necessary to effectuate the relief granted in this Order.

19.     <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.

159360995v1

## **Exhibit 1**

**Revised Budget**

| Weekly Cash Flow Forecast - $'000 | | |
|---|---|---|
| **Week Ending** | **2023-07-01** | **2023-07-08** |
| | **Forecast** | **Forecast** |
| | **1** | **2** |
| | | |
| Receipts (CTS) | 3,250 | 3,250 |
| Receipts (ReStore) | 2,250 | 2,250 |
| Total | 5,500 | 5,500 |
| Add'l Receipts | | |
| | | |
| Merchandise | (600) | (600) |
| Employee Costs | (200) | (2,850) |
| Occupancy Costs | - | (5,335) |
| Insurance | (231) | (181) |
| Financing (Interest) | (300) | - |
| ReStore Consignment Fees | (2,275) | (1,238) |
| Other | (200) | (400) |
| FA - Banker | - | (25) |
| Lender Professional Fees | - | (350) |
| Noticing Agent Fees | (30) | (30) |
| OCP Fees | (10) | (10) |
| UST Fees | (28) | (28) |
| Store Closing Expenses (previously closed) | (40) | (40) |
| Utilities | (100) | (50) |
| IT Expenses | - | (165) |
| Sales Tax | (198) | - |
| Total Disbursements | (4,212) | (11,301) |
| | | |
| **Net Operating Cashflow** | **1,288** | **(5,801)** |
| | | |
| **Cash balance, opening** | **(68)** | **(80)** |
| Receipts | 5,500 | 5,500 |
| Draws from revolver | 4,200 | 11,300 |
| Disbursements | (4,212) | (11,301) |
| Sweeps to revolver | (5,500) | (5,500) |
| **Cash balance, closing** | **(80)** | **(81)** |
| | | |
| **Revolver Balance, Opening** | **15,852** | **14,552** |
| Revolver Draws | 4,200 | 11,300 |
| Revolver Sweeps | (5,500) | (5,500) |
| **Revolver Balance, Closing** | **14,552** | **20,352** |
| | | |
| **Revolver Availability** | **(326)** | **(6,758)** |

## Exhibit 2

**Store Closing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] | Case No. 23-10576 (TMH) |
| Debtors. | Jointly Administered |

**NOTICE OF OCCURRENCE OF DIP TERMINATION EVENT AND OBJECTION
DEADLINE WITH RESPECT TO DEBTORS' AUTHORIZATION TO CONDUCT
LIQUIDATION SALES AT ALL OF THE DEBTORS' STORES**

**PLEASE TAKE NOTICE THAT** on May 5, 2023 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

**PLEASE TAKE FURTHER NOTICE THAT** on June 5, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* (Docket No. 229) (the "Final DIP Order"). A copy of the Final DIP Order was previously served on you and can be viewed at: https://www.kccllc.net/christmastreeshops/document/2310576230605000000000017.

---

[1]   The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

**PLEASE TAKE FURTHER NOTICE THAT** on May 31, 2023, the Court entered the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* (Docket No. 201) (the "<u>Final Store Closing Order</u>").  A copy of the Final Store Closing Order was previously served on you and can be viewed at: <u>https://www.kccllc.net/christmastreeshops/document/2310576230531000000000036</u>.

**PLEASE TAKE FURTHER NOTICE THAT** one or more DIP Termination Events (as defined in the Final DIP Order) have occurred under the Final DIP Order.

**PLEASE TAKE FURTHER NOTICE THAT** following the occurrence of such DIP Termination Events, on June 29, 2023, the Court entered the Supplemental Order to the Final DIP Order (Docket No. [ ]) (the "<u>Supplemental DIP Order</u>").[2]

**PLEASE TAKE FURTHER NOTICE THAT** in accordance with the terms of the Supplemental DIP Order and the Final Store Closing Order, the Debtors may begin going out of business sales at the additional stores set forth on **<u>Exhibit A</u>** hereto (the "<u>Additional Stores</u>"), with such sales to commence on or after July 6, 2023.

**PLEASE TAKE FURTHER NOTICE THAT** landlords with respect to the Additional Stores and any party-in-interest may object to the Debtors' conducting going out of business sales at any of the Additional Stores and the application of the Final Store Closing Order to such Additional Store(s) by filing a response in writing with the Court on or before **July 6, 2023, at 4:00 p.m. (Eastern Time)** (the "<u>Total Liquidation Objection Deadline</u>").

**PLEASE TAKE FURTHER NOTICE THAT** if no objections are filed with respect to the application of the Final Store Closing Order to an Additional Store on or before the Total

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Final DIP Order, the Final Store Closing Order, or the Supplemental DIP Order.

Liquidation Objection Deadline, the Debtors are authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, the Final DIP Order, the Supplemental DIP Order, and the Final Store Closing Order to proceed with conducting the Closing Sales at the Additional Store in accordance with the foregoing orders, the Sale Guidelines, and the Store Closing Agreement without further notice and a hearing.

**PLEASE TAKE FURTHER NOTICE THAT** if any objections are filed with respect to the application of the Final Store Closing Order to an Additional Store, and such objections are not resolved, the objections and the application of the Final Store Closing Order to the subject Additional Store will be considered by the Court on <u>**July 7, 2023 at 10:00 a.m. (Eastern Time)**</u>, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary. Any objections as to particular Additional Stores will not affect the Debtors' and Consultant's right to begin Closing Sales at non-objected Additional Stores.

Dated: June __, 2023
      Wilmington Delaware

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By:_____
Evelyn J. Meltzer (No. 4581)
Marcy J. McLaughlin Smith (No. 6184)
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, Delaware 19801
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: evelyn.meltzer@troutman.com
       marcy.smith@troutman.com

      -and-

**MURPHY & KING, PROFESSIONAL CORPORATION**

Harold B. Murphy (pro hac vice)

159360995v1

Christopher M. Condon (pro hac vice)
28 State Street, Suite 3101
Boston, Massachusetts, 02109
Tel: (617) 423-0400
Email: hmurphy@murphyking.com
       ccondon@murphyking.com

Attorneys for Debtors and Debtors in
Possession