# Exhibit B

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] | Case No. 23-10576 (TMH) |
| Debtors. | Jointly Administered |
| | Ref. Docket Nos. **22, 75, 82, 125, 229, 296, 299** |

### SUPPLEMENTAL ORDER TO THE FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") acknowledging that (a) one or more DIP Termination Events have occurred under the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 229] (the "Final DIP Order"), and (b) a Carve Out Trigger Notice was properly and timely issued by the DIP Agent in accordance with the Final DIP Order; and the Debtors, the Committee, and

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

[2]    Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Final DIP Order or the DIP Loan Documents (each defined below), as applicable.

the DIP Secured Parties desiring to amend the Milestones, the Carve Out, and the use of Cash Collateral and/or limited funding under the DIP Facility solely on the terms set forth in this Order (this "Order") and the Revised Budget (as defined below) attached hereto; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and the Debtors consenting to entry of a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion, the proposed Order, and having heard the statements in support of the relief requested therein at a hearing before this Court on June 29, 2023; and after due deliberation and sufficient cause appearing thereof,

**IT IS HEREBY FOUND AND ORDERED THAT:**

1.  <u>Relief Granted</u>. The relief requested is GRANTED as set forth herein.

2.  <u>Certain Findings</u>.

    a.  One or more DIP Termination Events have occurred under the Final DIP Order, with the first DIP Termination Event having occurred on June [—]9, 2023.

    b.  Upon the occurrence of a DIP Termination Event, the DIP Secured Parties were, and continue to be, relieved of any obligation to provide financial accommodations to the Debtors.

    c.  An immediate and critical need exists for the Debtors to be granted continued access to funds constituting Cash Collateral and/or limited continued funding under the DIP Facility in accordance with the Revised Budget, to permit for the continued operations of the Debtors in order to accomplish either a Going Concern Sale (as defined

below) or Closing Sales (as defined in the Store Closing Order (as defined below)).. Without

access to Cash Collateral and/or such continued limited funding in accordance with the

Revised Budget, the Debtors will not be able to pay their expenses incurred in connection

with continued operations through the period required for marketing and consummation of a

Going Concern Sale and/or the commencement and operation of the Closing Sales (as

defined in the Store Closing Order (as defined below)).

   d.  The DIP Secured Parties and the Prepetition Term Loan Secured Parties

have expressly relied upon the entry of this Order and the Final DIP Order in connection with

their approval of the use of Cash Collateral and/or limited funding under the DIP Facility.

   e.  Notice of the Motion and opportunity for a hearing on the proposed Order

were appropriate under the circumstances—including, without limitation, that the proposed

relief was sought during the Remedies Notice Period—that notice was provided in

accordance with the *Order Shortening Notice and Objection Periods with Respect to the*

*Debtors' Motion for Entry of a Supplemental Order to the Final Order Authorizing the*

*Debtors to Obtain Senior Secured Superpriority Postpetition Financing and Use Cash*

*Collateral* [Docket No. 299], and no other notice need be provided.

   f.  Good cause has been shown for the entry of this Order and the terms

hereof are fair and reasonable under the circumstances, reflect the Debtors' exercise of

prudent business judgment, and are supported by reasonably equivalent value and fair

consideration.  Among other things, entry of this Order will minimize disruption of the

Debtors' operations, permit the Debtors to continue to operate through the marketing process

for a Going Concern Sale or the commencement and operation of the Closing Sales.

3.      Budget.   The budget annexed to the Final DIP Order as Exhibit B is hereby amended and replaced with ~~the~~a budget ~~annexed hereto as Exhibit 1, which~~that will be filed with the Court on or before July 7, 2023, which budget may be further amended subject to prior written consent of the DIP Agent (acting at the direction of the DIP Lenders) (each, acting in their sole discretion) (the "Revised Budget"). For clarity, the Revised Budget shall constitute the in-effect Approved Budget.  The period set forth in the Revised Budget is referred to herein as the "Revised Budget Period".  An illustrative budget, which is not approved, is annexed hereto as Exhibit 1.

4.      Use of Cash Collateral.   Subject to the terms and conditions set forth in the Final DIP Order and this Order, the Debtors are permitted to use Cash Collateral during the Revised Budget Period solely in accordance with the Revised Budget~~,~~ without ~~a~~any permitted variance ~~of ten percent (10%) measured on a cumulative basis~~, absent prior written consent of the DIP Agent (acting at the direction of the DIP Lenders).

5.      Adequate Protection. The terms and conditions of the use of the Cash Collateral set forth in the Final DIP Order shall apply to the use of Cash Collateral authorized under this Order.

6.      Sweeping, Application of Collateral Proceeds. As set forth in Paragraph 1.5 of the Final DIP Order ~~and subject to Paragraph 12 of this Order~~, during the Revised Budget Period, all prepetition practices and procedures for, *inter alia*, the sweeping of cash proceeds of the collection of the Debtors' accounts receivable shall continue without interruption; provided, however, that the DIP Agent shall not apply such proceeds to the outstanding balance of the DIP Loans until the earlier to occur of (a) a DIP Termination Event that occurs after the date hereof; or (b) the expiration of the Revised Budget Period. Until the time set forth in the proviso to the

4

foregoing sentence, the DIP Agent shall hold such proceeds as Cash Collateral, provided, that to the extent that no further DIP Termination Event has occurred and prior to the expiration of the Revised Budget Period, the Debtors may request that the DIP Agent shall make available such proceeds for use by the Debtors solely in accordance with the Revised Budget (with a copy of any such request together with any related borrowing base certificate and other supporting materials to be delivered concurrently to the Prepetition Term Loan Agent). Any additional funds swept and held by the DIP Lenders pursuant to this paragraph, but not required in any given Revised Budget Week shall be released to the Debtors and used first, in the event of a Debtor request for use of fund beyond the amounts expressly budgeted for any subsequent week. To the extent that all such Cash Collateral is nevertheless insufficient to fund the expenses in any given week, as set forth in the Revised Budget, the DIP Lenders may, in their sole discretion, make additional funding available under the DIP Facility, with all such funding subject to the terms of the Final DIP Order, this Order and DIP Loan Documents. For clarity, the DIP LendersSecured Parties (i) shall be under no obligation to fund or accommodate any borrowing requests under the DIP Facility. and (ii) shall not be liable for, or be obligated to fund, any administrative expense or claim against any of the Debtors and their estates (other than the Carve Out (as modified herein) and the Minimum Stub Rent Reserve in the amounts set forth in the Approved Budget annexed to the Final DIP Order through the date of the first DIP Termination Event).

       7.    <u>New Case Milestones</u>.

       a.    The Milestones set forth in the DIP Loan Agreement and annexed to the Final DIP Order as <u>Exhibit C</u> are hereby amended and replaced with following Milestones:[3]

---

[3]    [**NTD**: The draft of this Order contemplates Debtors toshould file bid procedures motion before the hearing on this Order next week; and that the draft bid procedures motion include standaloneto streamline rejection

i.  On or before June ~~30~~29, 2023:_ The Debtors shall ~~post all certificates delivered under the DIP Loan Agreement (including any certificate required to be delivered on June 28, 2023) to the data room maintained by the Debtors in connection with the Going Concern Sale~~serve the Store Closing Notice (as defined below) ~~process~~to those parties required to be served under the Store Closing Order.

ii.  On or before July ~~7~~5, 2023~~: Designation of a stalking horse bidder for a Going Concern Sale, which bid (i) has been executed by and is fully binding on such bidder, (ii) contains no financing or diligence conditions precedent to closing and any other conditions are~~ at 12:00 p.m. (Eastern Time):  The Debtors shall provide a Revised Budget that is acceptable to the DIP Agent (acting at the direction of the DIP Lenders) (each, acting in their sole discretion)~~, and (iii) provides for the payment of all of the outstanding Obligations under the DIP Facility in full in cash~~.

iii.  ~~On or before July 7, 2023:  Receipt by Debtors of a non-refundable cash deposit (subject to the following sentence) from the designated stalking horse bidder in the amount of  $5 million (or such lesser amount approved by the DIP Agent and DIP Lenders, each in their sole discretion), which shall be held in escrow pending closing of the Going Concern Sale or, to the extent the Going Concern Sale does not close as a result of a breach by the stalking horse bidder in its Stalking Horse Contract and the Closing Sales commence at all of the Debtors' remaining retail store locations, shall first be used to repay any outstanding Obligations under the DIP Facility and thereafter such funds shall be available to the Debtors' estates.  The cash deposit shall be refundable to the stalking horse bidder:  (i) if an order approving bidding procedures is not entered by July 7, 2023 designating such bidder as the stalking horse for the Going Concern Sale, (ii) the stalking horse bidder is outbid at auction by a higher and better bidder, and the stalking horse bidder is either not the backup bidder, and/or the stalking horse bidder is the backup bidder but the Debtors close with the winning bidder, or (iii) in the event of the Debtors' breach of the stalking horse bidder's purchase agreement.~~

iv.  ~~On or before July 7, 2023:  Entry of an order, acceptable to the Required DIP Lenders, approving bidding procedures for a Going Concern Sale.~~

~~v~~iii.    On or before July 7, 2023:  Entry of an order, acceptable to the Required DIP Lenders, extending the period under Section 365(d)(4) of the Bankruptcy Code to, at least, 150 days from the Petition Date.

vi.  ~~On or before July 23, 2023:  Entry of an order, acceptable to the Required DIP Lenders, approving a sale of all or substantially all of~~

~~this Order next week; and that the draft bid procedures motion include standalone~~to streamline rejection procedures.]

6

~~the Debtors' assets pursuant to Sections 363 and 365 of the Bankruptcy Code in an amount sufficient to pay all of outstanding Obligations under the DIP Facility in full in cash (such sale, the "Going Concern Sale") on the closing date.~~

~~vii. On or before July 30, 2023: Closing date of the Going Concern Sale.~~

b.    Any failure to timely meet or satisfy any of the foregoing Milestones shall ~~(1)~~ constitute a DIP Termination Event~~, and (2) result in the commencement, on one business day's notice of such a Milestone default to the Debtors and the Committee, of Closing Sales at all of the Debtors' remaining retail store locations, such sales to be conducted by Hilco Merchant Resources, LLC ("Hilco") pursuant to the terms of the Store Closing Agreement and Store Closing Order as further set forth below~~.

8.    <u>Carve Out</u>.

~~a.    For purposes of clause (iii) of the definition of the Carve Out in the Final DIP Order, the applicable date for which to calculate the Pre-Trigger Carve Out Cap shall be June [28], 2023 (the "Pre-Trigger Carve Out Date"). For the purposes of this Supplemental Order, "Pre-Trigger Carve Out Amount" shall mean (i) the fees and expenses of the Professional Persons through the Pre-Trigger Carve Out Date set forth on a line-item basis in the Approved Budget attached to the Final Order as Exhibit B, less retainers, plus (ii) the accrued and unpaid Statutory Fees, plus (iii) the accrued and unpaid fees and expenses incurred or earned by Hilco Merchant Resources, LLC, as the Debtors' store closing agent under the terms of the Letter Agreement Governing Inventory Disposition as approved by the Court, all as of the Pre-Trigger Carve Out Date.~~

~~b~~<u>a</u>.    <u>Clauses <u>(iii) and</u> (iv) of the definition of the Carve Out in the Final DIP Order ~~is~~<u>are</u> hereby amended and replaced with the below:</u>

<u>(iii) to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise, subject to the professional fees and disbursements reflected in the Approved Budget (set forth on Exhibit B to</u>

the Final DIP Order) on a line item basis (on a cumulative basis for Debtor Professionals (defined below) and on a cumulative basis for Committee Professionals (defined below)) for unpaid fees (excluding any success or transaction fees), costs, disbursements and expenses (the "Allowed Professional Fees") incurred or earned by professionals retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") for the period from the Petition Date through and including June 30, 2023, in an amount not to exceed $1,340,000 for Debtor Professionals and in an amount not to exceed $756,000 for Committee Professionals;

(iv) ~~(A) Allowed Professional Fees in the amounts set forth for each Professional Person, on a line item basis, in the Revised Budget until the earlier to occur of (x) a DIP Termination Event that occurs after the date of this Supplemental Order; or (y) the expiration of the Revised Budget Period (such date the "Post-Trigger Carve Out Date"), plus (B)~~ Allowed Professional Fees of Debtor Professional~~s Persons in an aggregate amount not to exceed $75,000~~and Committee Professionals incurred ~~after the first day following delivery by DIP Agent of the Carve Out Trigger Notice~~or earned after June 30, 2023 (such date, the "Trigger Date") in amounts not to exceed (A) $250,000 for the Debtor Professionals (other than SSG Advisors, LLC ("SSG")); (B) $150,000 for SSG; and (C) $200,000 for Committee Professionals, to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise (the ~~term~~sum of the amounts set forth in this clause (iv)(A) and (B) being the "Post-Carve Out Trigger Notice Cap" ~~shall mean the sum of the amounts set forth in clauses 2.3(a)(i), (ii), (iv)(B) and (v) and the amounts budgeted with respect to clause (iv)(A) that are accrued, unpaid, and unfunded between the Pre-Trigger Carve Out Date and the Post-Trigger Carve Out Date).~~);

~~c.    For purposes of the amended clause (iv) of the definition of the Carve Out, reference to (x) "Supplemental Order" means this Order, and (z) the Trigger Date means the first day following delivery by a DIP Agent of a Carve Out Trigger Notice after the date of this Order.~~

b.    On July 7, 2023, the Debtors shall deposit into the Professional Fee Reserve from Cash Collateral—and if Cash Collateral is insufficient, then the DIP Lenders shall provide a DIP Revolving Loan to the Debtors with the proceeds to be deposited into the

Professional Fee Reserve—(A) the amounts set forth in amended clauses (iii)  and (iv) of the definition of Carve Out, less (B) amounts already on deposit in the Professional Fee Reserve (the calculated amount, "Professional Fee Funding Amount"). Upon the deposit of the Professional Fee Funding Amount into the Professional Fee Reserve, the Carve Out Cap as to clauses (iii) and (iv) of the Carve Out has deemed satisfied; and the DIP Secured Parties shall be under no obligation to fund any additional amounts, and the Debtors may not use any Cash Collateral to pay or reserve, for Allowed Professional Fees of any Professional Person in these Chapter 11 Cases.

9.     Minimum Stub Rent Reserve.  The Debtors and the DIP Secured Parties shall have ceased funding and/or reserving for Stub Rent as of the week ending June [___]9, 2023 the date on which the first DIP Termination Event occurred.

10.     Liquidation Sales.[4]

a.     If the Debtors fail to comply with the terms of this Order, including, without limitation, with respect to the Revised Budget and the achievement of any of the Milestones, or upon the occurrence of a DIP Termination Event occurring after the date of entry of this Order, the Debtors are authorized and directed to conduct Closing Sales at all of the Debtors' Stores pursuant to the terms of the Store Closing Order.

a.     Absent the written consent of the DIP Secured Parties, the Debtors are authorized and directed to commence Closing Sales on or after July 6, 2023 at all of the Debtors' Stores pursuant to the terms of the Store Closing Order, with such sales to be

---

[4]     Capitalized terms used in this Paragraph and not otherwise defined herein shall have the meanings ascribed to them in the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 201] (the "Store Closing Order").

conducted by Hilco Merchant Resources, LLC ("Hilco") pursuant to the terms of the Store Closing Agreement, the Store Closing Order, and this Order.

b.    ~~Within one (1)~~By no later than the close of business ~~day of entry of this Order,~~on June 29, 2023, the Debtors shall serve notice to those parties required under Paragraph 37 of the Store Closing Order, including the Additional Store Landlords (the "Store Closing Notice"), in substantially the form attached hereto and approved hereby as Exhibit 2, listing all the Debtors' stores on an Additional Store List.  The deadline under Paragraph 38 of the Store Closing Order for Additional Store Landlords and interested parties to object to the application of the Store Closing Order to such additional location~~, in the event of a violation of this order or a DIP Termination Event shall be seven (7) days after service of the Store Closing Notice~~ is **July 6, 2023** (the "Total Liquidation Objection Deadline").

c.    In accordance with the terms of the Store Closing Order, from and after the Total Liquidation Objection Deadline, if no objection is raised with respect to an Additional Store, the Store Closing Order shall apply to each such Additional Store, and Hilco shall be permitted to conduct the Closing Sales at the Additional Store and advertise each Closing Sale at the Stores and the Additional Stores, with respect to which no objection has been raised, as a "Store Closing", "Everything Must Go", "Everything on Sale",  "Going out of Business," or similar themed sale.  The Debtors (i) shall provide assistance to Hilco as requested in connection with such Closing Sales, and (ii) without consent of the DIP Secured Parties and Hilco, shall not discount the sale price of any inventory or other assets or conduct any advertising, in each case, outside of the ordinary course of business.

10

11.     [RESERVED]Challenge Period Expiration. Notwithstanding anything in Paragraph 4.1 or otherwise of the Final DIP Order to the contrary:

12.     Payment of Carve Out from Proceeds of Closing Sales and/or Going Concern Sale. Within one (1) business day of the consummation of a Going Concern Sale or seven (7) days after the commencement of Closing Sales, the Debtors shall fund, from any proceeds of such sales that are payable to the DIP Lenders, into a segregated account maintained by or on behalf of the Debtors in trust, or failing that remit to the clients' funds account of the Debtors' lead counsel, the Carve Out, including the Pre-Trigger Carve Out Amount and the amount of the Post-Trigger Carve Out Cap which is unpaid and unfunded as of the Post-Trigger Carve Out Date.

13.     Remittance to Secured Parties of Net Proceeds from Going Concern Sale. Upon the consummation of a Going Concern Sale and subject to Paragraph 12, the Debtors shall remit on the closing date of the Going Concern Sale all net proceeds of the Going Concern Sale (the "GC Sale Proceeds") to the DIP Agent. The DIP Agent shall further remit to the Prepetition Term Loan Agent that portion of the GC Sale Proceeds as the DIP Secured Parties and Prepetition Term Loan Agent have agreed pursuant to the terms of the Prepetition Intercreditor Agreement.

a.     the Debtors' Stipulations shall be binding on all parties, persons and entities in all circumstances with respect to those Debtors' Stipulations concerning or relating in any way to (i) the Prepetition ABL Secured Parties, (ii) the Prepetition ABL Obligations—including the repayment of the Prepetition ABL Obligations under the DIP Loan Documents (including the Subject Prepetition ABL Obligations and the Roll-Up),

and/or (iii) the Prepetition ABL Liens (the foregoing clauses (i) – (iii), the "Prepetition ABL Matters");

      b.      the Challenge Period shall be, and hereby is, terminated for all purposes concerning or relating in any way to any of the Prepetition ABL Matters;

      c.      In exchange for such termination, the Prepetition ABL Secured Parties, the Committee, and the DIP Secured Parties have agreed to the following:

      i. The early termination fee that the Prepetition ABL Secured Parties charged under the Prepetition ABL Loan Documents totaled $1,667,000 (the "ETF"), which amount was rolled up pursuant to the Final DIP Order and is now a DIP Obligation.  The ETF shall be the last out portion of the DIP Obligations.  After payment in full in cash of all DIP Obligations other than the ETF amount and all obligations owing under the Consignment Agreement, the DIP Secured Parties shall remit to the Debtors' estates solely from cash the DIP Lenders receive for the repayment of the ETF portion of the DIP Obligations, 66% of any such cash received.  The Debtors shall hold such remitted amounts for distribution to administrative, priority and general unsecured claims;

      ii.      The DIP Secured Parties shall release their liens and claims on any and all the following assets owned by the Debtors and their estates: (A) avoidance actions, (B) commercial tort claims, (C) prepetition intercompany claims, and (D) other causes of action (collectively, the "Causes of Action"), the pursuit of which Causes of Action shall be in the sole discretion of the Committee, with any proceeds from such Causes of

Action available for distribution to claims and expenses of the Debtors' estates;

iii.      The DIP Secured Parties release any claim they may have as to the funds in the bank account ending in x5241 held by Debtor Salkovitz Family Trust 2, LLC as of the Petition Date in the amount of $138,489.50, with such funds available for distribution to claims and expenses of the Debtors' estates amount.  Within ten (10) business days of entry of this Order, the DIP Secured Parties, Debtors and the Committee shall determine whether any portion of such funds were transferred postpetition into an account held by any other Debtor and subsequently swept by the DIP Secured Parties (such swept amount, the "SFT2 Funds").  After the parties agree on the amount of SFT2 Funds, the DIP Secured Parties shall remit from Cash Collateral to the Debtors an amount equal to the amount of SFT2 Funds free and clear of the DIP Secured Parties' claims and liens, and such funds shall be available for distribution to administrative, priority and general unsecured claims;

iv.      The Prepetition ABL Secured Parties and DIP Secured Parties waive any argument that they have a valid, perfected lien on the Debtors' motor vehicles or other rolling stock, and proceeds from the liquidation of such collateral will be available for distribution to claims and expenses of the Debtors' estates;

159345665v1159360995v1

> d.    any provision of the Final DIP Order that was subject to or otherwise modified or limited by Paragraph 4.1 of the Final DIP Order shall no longer be subject to or otherwise modified or limited thereby; and

> e.    notwithstanding anything to the contrary herein, nothing herein shall affect, waive, or impair the Challenge Period with respect to all parties and matters other than Prepetition ABL Matters.

12.    Treatment of ETF under Final DIP Order.  Paragraph 5.27 of the Final DIP Order is hereby deleted.

1413.   Reservation of Rights of Secured Parties. Each of the DIP Secured Parties and the Prepetition Term Loan Secured Parties reserves all rights and defenses, including, without limitation, with respect to any further order or further relief pertaining to the use of Cash Collateral, the Prepetition ABL Collateral and/or the Prepetition Term Loan Collateral and/or under the Prepetition Intercreditor Agreement. Except as expressly set forth herein, nothing herein amends or modifies the Final DIP Order, and the Final DIP Order shall remain in full force and effect.

15.   Debtor14.    Estate Release. In consideration of, *inter alia*, the various financing arrangements extended by the DIP Secured Parties and the Prepetition Term Loan Secured Parties and their agreement in this Order as to the Carve Out and the continued consensual use of Cash Collateral and/or limited funding under the DIP Facility in accordance with the Revised Budget and this Order, each Debtor, on behalf of itself and anyone who may bring a claim on its behalf (including derivative claims), the Committee, and their respective successors and assigns (collectively, the "Estate Releasors") hereby forever releases, discharges and acquits the DIP Secured Parties and the Prepetition Term Loan Secured Parties and(in any

capacity) and each of their respective successors and assigns, and their respective present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees, consultants, advisors and other representatives in their respective capacities as such (collectively, the "Estate Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that ~~Debtors~~Estate Releasors (or any of them) had, have or hereafter can or may have against any Estate Releasee as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to any Debtor or any subsidiary thereof, the DIP Loan Documents, the Prepetition ABL Loan Documents, the Interim DIP Order, the Final DIP Order, this Order (except as to the agreements expressly and for the first time set forth herein), any other order of the Court and any other financial accommodations made by any DIP Secured Party and ~~the Prepetition Term Loan Secured Party and~~/or any other Estate Releasee to any Debtor, including any action or omission of an Estate Releasee in such person's capacity as an officer, director, employee, consultant or agent of, or advisor to, the Debtors or any subsidiary thereof; provided, however, that the foregoing release shall not apply to any claim for fraud or intentional misconduct as determined by a final order or judgment of a court of competent jurisdiction. ~~For clarity, the releases provided in this paragraph are subject to the Challenge Rights set forth in Paragraph 4.1 of the Final DIP Order.~~

    ~~16~~15.    Amendment to DIP Loan Agreement.

      a.    Section 1.01 of the DIP Loan Agreement is amended to include the following definition:

        "Supplemental Order" means the *Supplemental Order to Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507*

*(I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief.*

b.   The definition of "**Order**" in the DIP Loan Agreement is amended by deleting the definition set forth therein and replacing it with the following:

"Orders" means (i) until entry of the Final Order, the Interim Order, (ii) after the entry of the Final Order, the Final Order, or (iii) the Supplemental Order, or the Interim Order, Final Order, and Supplemental Order as the "Orders".

~~17~~16.   Continued Effectiveness of Loan Documents. The terms and conditions of the DIP Loan Documents, including the Final DIP Order, and the Prepetition Documents shall remain in full force and effect as modified by this Order. Without limiting the generality of the preceding sentence, during the Revised Budget Period, the Debtors shall continue to submit a weekly borrowing base certificate in accordance with the terms and conditions set forth in the DIP Loan Documents. In addition, in accordance with their existing obligations under the Final DIP Order and subject to the terms and conditions thereof, no later than three (3) business days after entry of this Order, the Debtors shall pay all accrued and unpaid: (A) professional fees and expenses of each of the DIP Secured Parties, (B) the Adequate Protection Professional Fees and Expenses, and (C) amounts owed to ReStore Capital (CTS) LLC under the Consignment Agreement~~, each as set forth in the Revised Budget~~.

~~18~~17.   Binding Effect. All of the provisions of this Order, and any actions taken pursuant thereto, shall be effective and enforceable effective immediately upon entry of this Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure.

1918.   <u>General Authorization</u>. The Debtors, the DIP Secured Parties and the ~~Prepetition~~ ~~Secured Parties~~<u>Committee</u> are authorized to take any and all actions necessary to effectuate the relief granted in this Order.

2019.   <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.

**Exhibit 1**
**Revised Budget**

**Exhibit 2**
**Store Closing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] | Case No. 23-10576 (TMH) |
| Debtors. | Jointly Administered |

**NOTICE OF OCCURRENCE OF DIP TERMINATION EVENT AND OBJECTION
DEADLINE WITH RESPECT TO DEBTORS' AUTHORIZATION TO CONDUCT
LIQUIDATION SALES AT ALL OF THE DEBTORS' STORES**

**PLEASE TAKE NOTICE THAT** on May 5, 2023 (the "Petition Date"), the Debtors

each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code

(collectively, the "Chapter 11 Cases").

**PLEASE TAKE FURTHER NOTICE THAT** on June 5, 2023, the United States

Bankruptcy Court for the District of Delaware (the "Court") entered the *Final Order Pursuant to*

*11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior*

*Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority*

*Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders;*

*(III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting*

*Related Relief* (Docket No. 229) (the "Final DIP Order").  A copy of the Final DIP Order was

previously served on you and can be viewed at:

https://www.kccllc.net/christmastreeshops/document/2310576230605000000000017.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number
are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891),
Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the
Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

**PLEASE TAKE FURTHER NOTICE THAT** on May 31, 2023, the Court entered the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* (Docket No. 201) (the "Final Store Closing Order").  A copy of the Final Store Closing Order was previously served on you and can be viewed at: https://www.kccllc.net/christmastreeshops/document/2310576230531000000000036.

**PLEASE TAKE FURTHER NOTICE THAT** one or more DIP Termination Events (as defined in the Final DIP Order) have occurred under the Final DIP Order.

**PLEASE TAKE FURTHER NOTICE THAT** following the occurrence of such DIP Termination Events, on June [—]29, 2023, the Court entered the Supplemental Order to the Final DIP Order (Docket No. [__]) (the "Supplemental DIP Order").[2]

**PLEASE TAKE FURTHER NOTICE THAT** in accordance with the terms of the Supplemental DIP Order and the Final Store Closing Order, the Debtors may begin going out of business sales at the additional stores set forth on **Exhibit A** hereto (the "Additional Stores") in the event of, among other things, a violation of the Supplemental DIP Order or the occurrence of any further DIP Termination Events, with such sales to commence on or after July 6, 2023.

**PLEASE TAKE FURTHER NOTICE THAT** landlords with respect to the Additional Stores and any party-in-interest may object to the Debtors' conducting going out of business sales at any of the Additional Stores and the application of the Final Store Closing Order to such Additional Store(s) by filing a response in writing with the Court on or before **July [—]6, 2023, at 4:00 p.m. (Eastern Time)** (the "Total Liquidation Objection Deadline").

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Final DIP Order, the Final Store Closing Order, or the Supplemental DIP Order.

**PLEASE TAKE FURTHER NOTICE THAT** if no objections are filed with respect to the application of the Final Store Closing Order to an Additional Store on or before the Total Liquidation Objection Deadline, the Debtors are authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, the Final DIP Order, the Supplemental DIP Order, and the Final Store Closing Order to proceed with conducting the Closing Sales at the Additional Store in accordance with the foregoing orders, the Sale Guidelines, and the Store Closing Agreement without further notice and a hearing.

**PLEASE TAKE FURTHER NOTICE THAT** if any objections are filed with respect to the application of the Final Store Closing Order to an Additional Store, and such objections are not resolved, the objections and the application of the Final Store Closing Order to the subject Additional Store will be considered by the Court ~~at the next regularly scheduled omnibus hearing~~on July 7, 2023 at 10:00 a.m. (Eastern Time), subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary. Any objections as to particular Additional Stores will not affect the Debtors' and Consultant's right to begin Closing Sales at non-objected Additional Stores.

Dated: June __, 2023
          Wilmington Delaware

**TROUTMAN PEPPER HAMILTON
SANDERS LLP**

By:_____
Evelyn J. Meltzer (No. 4581)
Marcy J. McLaughlin Smith (No. 6184)
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, Delaware 19801
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: evelyn.meltzer@troutman.com
          marcy.smith@troutman.com

-and-

**MURPHY & KING, PROFESSIONAL
CORPORATION**

Harold B. Murphy (pro hac vice)
Christopher M. Condon (pro hac vice)
28 State Street, Suite 3101
Boston, Massachusetts, 02109
Tel: (617) 423-0400
Email: hmurphy@murphyking.com
          ccondon@murphyking.com

Attorneys for Debtors and Debtors in
Possession