# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Christmas Tree Shops, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10576 (TMH)<br><br>Jointly Administered<br><br>**Hearing Date: TBD**<br>**Objection Deadline: TBD** |

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. § 1112(b)

The Official Committee of Unsecured Creditors (the "Committee") of Christmas Tree Shops, LLC, *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this motion (the "Motion") on shortened notice, requesting entry of an order converting the Debtors' Chapter 11 Cases (as defined below) to cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, the Committee relies upon and incorporates by reference the *Declaration of Brian E. Ayers* ("Ayers Declaration"), and respectfully states as follows:

### PRELIMINARY STATEMENT/STATEMENT OF FACTS PERTINENT TO THE MOTION

1. The Debtors are out of formula on their borrowing base, in default of their DIP loan, and on June 21, 2023, received a default and trigger notice from the secured lenders.

2. These cases are administratively insolvent, as admitted by the Debtors, who are suffering a "continuing loss to or diminution to the estate" that is detrimental to creditors. *See* 11

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

7401958

U.S.C. § 1112(b)(4)(A). This is evidenced by the Debtors' budget to actual results, outlined in the Ayers Declaration, revealing repeated revenue misses throughout the post-petition period. These revenue misses and an inability to balance a budget between post-petition expenses and post-petition revenues, have led to the accruing and unpaid administrative expenses.

3. Motions to compel payment of administrative expenses made by trade vendors and by shippers, vital to the Debtors' operations, are both the result and further evidence of the administrative insolvency. Landlords have sought repeatedly to be properly protected for stub rent claims, all to no avail. This substantial and continuing administrative insolvency is grounds for conversion.

4. Restore Capital, LLC ("Restore") is a "last out" participant in the DIP Loan with an investment in the DIP of approximately $4.8 million.[2] Restore is an affiliate of Hilco, and Hilco is the selected GOB Liquidator. Ian Fredericks, whom the Committee deposed on May 30, 2023, serves as President of both companies.[3] This affiliation creates mixed motives for secured lender Restore, whose affiliate earns a dramatically better return from GOB Sales than Restore will on its $4.8 million last out DIP position. The Committee believes that this affiliation between the DIP Lender and Liquidator necessitates a higher level of scrutiny with respect to any wind down/GOB sale budget agreed to by the secured lenders, particularly one that will pay only those administrative expenses that support the GOB Sale process, but not remaining administration.

5. Specifically, a budget revised by the secured lenders and annexed to the Ayers Declaration as Exhibit "A", provides for the payment of go forward rent, utilities, and employee expenses for store employees who will work the GOB sales. All of these are direct expenses that

---

[2] Deposition of Ian Fredricks dated May 30, 2023 at pg 12, attached hereto as Exhibit "B".

[3] *See id.* at pg 4.

7401958

will further Hilco's profit taking. Meanwhile, post-petition trade vendors and shippers, stub rent claims of landlords, and Chapter 11 professional fees are either unbudgeted, or budgeted insufficiently. In this district, courts have ruled that a chapter 11 case may, in certain circumstances, be used primarily as a vehicle for a secured creditor to liquidate its collateral. However, in such cases, at a minimum, the secured lender must provide for the payment of administrative expenses (and not just those administrative expenses that directly benefit the lenders and their affiliates).

6. Thus, given the administrative insolvency, *i.e.*, the continuing loss to or diminution of the estate, coupled with the fact that administrative expenses remain unbudgeted by the liquidating secured lenders, including Hilco's affiliate, Restore, these cases ought to be converted to ensure a fair liquidation process for all creditors.

## JURISDICTION, VENUE & STATUTORY PREDICATE

7. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion is section 1112(b) of the Bankruptcy Code, as supplemented by Rules 1017 and 1019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

8. On May 5, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have been authorized to continue to operate their business and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On May 17, 2023, the Office of the United States Trustee for Region 3 appointed a seven person Committee consisting of: (i) Everstar Merchandise Co., Ltd.; (ii) Workday Inc.; (iii)

PLUS MARK LLC; (iv) Mainstream International Corp.; (v) Imperial Distributors, Inc.; (vi) REO FUNDIT 1 ASSET LLC; and (vii) BSREP II CYPRESS MT LLC.

10. On May 22, 2023, the Committee selected Porzio, Bromberg & Newman, P.C. and Womble Bond Dickinson (US) LLP as co-counsel to represent the Committee, and Rock Creek as financial advisor to the Committee.

11. On May 7, 2023, the Debtors filed the *Motion seeking Entry Of Orders (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing The Debtors To Use Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection To The Secured Lenders, (V) Modifying Automatic Stay, (VI) Scheduling A Final Hearing, And (VII) Granting Related Relief* [ECF No. 22] (the "DIP Motion"), and on May 9, 2023, the Court entered that certain *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF No. 82] (the "Interim DIP Order").

12. On May 7, 2023, the Debtors also filed the *Emergency Motion for Interim and Final Orders (I)(A) Confirming, on an Interim Basis, that the Store Closing Agreement is Operative and Effective and (B) Authorizing on a Final Basis the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [ECF No. 20] (the "Store Closing Motion"), seeking entry of an order which, *inter alia,* authorizes the Debtors to commence store closing sales in accordance with proposed sale guidelines (the "Sale Guidelines").

7401958

13. On May 31, 2023, the Court entered that certain *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [ECF No. 201] (the "Final Store Closing Order").

14. On June 21, 2023, the Secured DIP Lenders served on the Debtors a Default and Trigger Notice, thereby technically ending the Debtors' ability to borrow under the DIP, although upon information and belief, the DIP Lenders have continued to advance funds, for certain limited purposes the Lenders have allowed.

15. On June 27, 2023, the Debtors filed that certain motion for entry of a Supplemental Final DIP Order, which would set out a proposed agreement among parties in interest for an orderly liquidation within Chapter 11. *See* ECF No. 296. The proposed Supplemental Final DIP Order was not included with the motion, but was, however, submitted to the Court separately on June 28, 2023. *See Debtors' Notice of Proposed Supplemental Order to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [ECF No. 314].

16. On June 29, 2023, Judge Silverstein held a hearing to consider the Supplemental Final DIP Order, which was objected to by certain landlords, on account of the proposed order's failure to provide for the agreed upon Stub Rent reserve in the budget. Judge Silverstein ruled that she would approve the Supplemental Final DIP Order on an interim basis only, subject to the

7401958

payment of the $50,000 weekly stub rent amount for an interim period. However, to date, no "Interim Supplemental DIP Order" has been submitted or docketed by the Debtors or the Lender.

17. On July 6, 2023, the Debtors filed a *Notice of Occurrence of DIP Termination Event and Objection Deadline with Respect to Debtors' Authorization to Conduct Liquidation Sales at all of The Debtors' Stores* [ECF No. 322] (the "Notice of Liquidation").

18. According to the Notice of Liquidation, the Debtors intend to commence going out of business sales (the "GOB Sales") and seek to use the Sale Guidelines already approved by this Court pursuant to the Final Store Closing Order, to govern the conduct of such GOB Sales at the respective Premises. *See* Notice of Liquidation.

19. On July 7, 2023, a hearing was held before this Court, with the parties requesting that consideration of any Supplemental Final DIP Order, and particularly the Wind Down budget to be annexed thereto, be carried to July 12, 2023, at 1:00 p.m. At the July 7th hearing, the Committee also advised the Court that it would be seeking conversion on shortened notice, and requested the same hearing date of July 12, 2023 at 1:00 p.m.

## RELIEF REQUESTED

20. Pursuant to sections 105(a) and 1112(b)(1) of the Bankruptcy Code, the Committee respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit A**, converting the above-captioned chapter 11 cases (the "Chapter 11 Cases") to cases under chapter 7 of the Bankruptcy Code.

**BASIS FOR RELIEF**

A.      **Section 1112(b) Requires Conversion or Dismissal Upon a Showing of "Cause."**

21.     Section 1112(b) of the Bankruptcy Code provides that, on request of a party in interest,[4] and after notice and a hearing, the Court "*shall* convert a case . . . to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, [if the movant establishes] cause." *See* 11 U.S.C. § 1112(b)(1) (emphasis added).

22.     Section 1112(b)(2) establishes a narrow exception to the court's obligation to convert or dismiss upon a showing of cause where:

> the court finds and specifically identifies **unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, **and** the debtor or any other party in interest establishes that—
>
>> (A) . . . there is a reasonable likelihood that a **plan will be confirmed . . .** within a reasonable period of time; **and**
>>
>> (B) the grounds for converting or dismissing the case include an **act or omission of the debtor other than under paragraph (4)(A)**—
>>
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>>
>>> (ii) that will be cured within a reasonable period of time fixed by the court.

*Id.* § 1129(b)(2), (b)(2)(A) (emphasis added).[5]

23.     Accordingly, section 1112(b) establishes that conversion or dismissal is *mandatory* upon a finding of cause, unless, *at a minimum,* (i) "unusual circumstances" exist **and** (ii) a plan is

---

[4] The Committee is a party-in-interest in the Debtors' chapter 11 proceedings. *See* 11 U.S.C. § 1109(b); *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 214 n.21 (3d Cir. 2004) ("The [Bankruptcy] Code defines `party in interest' to include ... `a creditors' committee' ....").

[5] Section 1129(b)(2) establishes certain other exceptions to conversion or dismissal that are not applicable here. *See* 11 U.S.C. § 1129(b)(2).

7401958

reasonably likely to be timely confirmed. *See id.;*[6] *In re Riverbend Cmty.,* 2012 WL 1030340, at *3 n.6 (Bankr. D. Del. Mar. 23, 2012) ("Congressional intent that 'shall' really does mean 'must' in the convert or dismiss provision is readily apparent. In 2005, Congress removed the word 'may' from Section 1112(b) and substituted 'shall' if a moving party establishes 'cause.' Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause.'" (internal citations to BAPCPA omitted)); *In re Rsrvs. Resort, Spa & Country Club LLC,* Nos. 12-13316(KG), 12-13317(KG), 2013 WL 3523289, at *2 (Bankr. D. Del. July 12, 2013) ("The statute thus makes conversion mandatory once a court finds, as the Court has done here, any of the elements of 'cause.'").

**B.     Ample Cause Exists to Convert these Chapter 11 Cases to Chapter 7.**

24.     Section 1112(b)(4) of the Bankruptcy Code contains a non-exclusive list of grounds that constitute "cause" for conversion or dismissal under section 1112 of the Bankruptcy Code. 11 U.S.C. § 1112(b)(4). Among those bases for "cause" is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

25.     The Bankruptcy Code provides for conversion or dismissal of a chapter 11 case in such circumstances to prevent the debtor-in-possession "from gambling on the enterprises at the creditors' expense when there is no hope of rehabilitation." *In re The Rsrvs. Resort, Spa & Country Club LLC,* 2013 WL 3523289, at *2 (quoting *In re Lizeric Realty Corp.,* 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)).

---

[6] In addition, as noted, to defeat conversion upon a showing of "cause," the Court must also find that the grounds for converting the case include an act or omission of the Debtors, other than under section 1112(b)(4)(A), for which there is a reasonable justification and that will be timely cured. 11 U.S.C. 1112(b)(2)(B). The Committee submits that there is no basis for such finding here.

26. To determine whether there is a substantial or continuing loss or diminution, "the court first looks at whether a debtor has negative cash flow or declining asset values; if so, the court considers whether the debtor will be able to 'stop the bleeding' and return to solid financial footing within a reasonable amount of time." *In re Burgess*, 2013 WL 5874616, at *7 (Bankr. N.D.. W.Va. 2013) (citing 7 COLLIER ON BANKRUPTCY ¶ 1112 .04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

      i.      <u>The Estates' Growing Administrative Expenses Create a Substantial and Continuing Loss of Value.</u>

27. For purposes of a liquidating chapter 11 case, a negative cash flow exists so long as the estate continues to incur chapter 11 administrative expenses. *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515-516 (8th Cir. 2004) ("Under the interpretation of § 1112(b)(l) consistently used in bankruptcy courts, this negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate.'").

28. As noted by the Eighth Circuit, "any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors." *Loop Corp.,* 379 F.3d at 516; *accord In re FRGR Managing Member LLC,* 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) ("As to the first prong, it is apparent [debtor's] actions are causing a diminution to the estate. FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing a continuing loss to the estate."); *In re Brutsche,* 476 B.R. 298, 305 (Bankr. D. N.M. 2012) ("professional services come at a cost, obviously, which cost needs to be factored in the calculation of gains and losses for the estate. And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate in the position of continuing substantial losses").

29. As set forth in the Ayers Declaration, and specifically Exhibit A thereto, the Debtors are suffering excessive negative cash flow. Value diminishes, while professional fees and other administrative expenses accrue, unpaid.

30. By the Debtors' own account, the estates have "no available funds to satisfy [administrative] claim[s] at the present time" and no intent to pay any administrative claims in the near future. *See Objection to the Motion of Prestige Patio Co. Ltd. for an Order Compelling Payment of Administrative Expense* [ECF No. 333] at pg. 3.

> ii. <u>Given Impending GOB Sales of Substantially All Assets, and no projected resulting Revenues above the Fees of the Liquidator and Repayment of the DIP Loan, the Debtors Have No Likelihood of Rehabilitation.</u>

31. As for the second element of Section 1112(b)(4)(A), rehabilitation "contemplates the successful maintenance or re-establishment of the debtor's business operations." *In re Quail Farm, LLC,* 2010 WL 1849867, at *4 (Bankr. N.D.W. Va. 2010) (*quoting Canpartners Realty Holding Co. IV, L.L.C. v. Vallambrosa Holdings, L.L.C.* (*In re Vallambrosa Holdings, L.L.C.*), 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009), *adhered to on denial of reconsideration*, 419 B.R. 92 (Bankr. S.D. Ga. 2009)).

32. Rehabilitation and reorganization are related but distinct concepts. Rehabilitation in the context of Section 1112(b)(4)(A) "contemplates the successful maintenance or re-establishment of the debtor's business operations...." *Vallambrosa Holdings*, 419 B.R. at 88 (internal quotation marks omitted).

33. Thus, rehabilitation in a chapter 11 first begins with a confirmable plan and then requires, at minimum, the prospect of re-establishing a business*. See In re Quail Farm*, 2010 WL 1849867 at *4; *In re Vallambrosa Holdings*, 419 B.R. at 88-9; *Loop Corp.,* 379 F.3d at 518. 38;

*In re Landmark Atl. Hess Farm, LLC,* 448 B.R. 707, 714-15 (Bankr. D. Md. 2011) (stating determination is whether a debtor has "sufficient business prospects").

34. Here, the Debtors clearly have no business to reestablish as admitted in their proposed budget annexed to the Ayers Declaration as Exhibit "B." *See Loop Corp.,* 379 F.3d at 516.

35. Moreover, "a bankruptcy case cannot be run solely for the benefit of a secured creditor - the secured creditor that is availing itself of the protections of the Bankruptcy Code must 'pay the freight,' and the freight is... not necessarily a tip to the unsecureds, but the freight is certainly an administratively solvent estate." *See* Transcript of Hearing at 100:17-20*, In re: NEC Holdings Corp., et al.,* No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) (transcript of hearing before Hon. Christopher S. Sontchi)[7]; *see also*, Hearing Transcript at 23:14-24:22, *In re Townsends, Inc., et al.*, No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011)[8] (in response to the statement of debtors' counsel that section 503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going to run an administratively insolvent estate").

C. **The Debtors' Administrative Insolvency is a Separate and Independent Cause to Convert**

36. Because the examples of cause set forth in Section 1112(b)(4) of the Bankruptcy Code are illustrative and not exhaustive, courts have also found that the administrative insolvency of a debtor's estate constitutes separate and ***independent cause*** to convert a chapter 11 case to a case under chapter 7. *See In re Emerald Grande*, 2018 WL 2703071, at *3 (Bankr. N.D.W. Va. 2018) ("[A] debtor's administrative insolvency can demonstrate cause under [Section] 1112(b)(4)(A) or ***serve as independent cause for conversion***, although not explicitly listed in the

---

[7] Attached hereto as Exhibit "C".

[8] Attached hereto as Exhibit "D".

7401958

statute.") (emphasis added); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010) ("The Court further concludes that the Debtors administrative insolvency constitutes cause to convert these cases."); *In re Bartmann*, 310 B.R. 663 (B.A.P. 10th Cir. 2004) (affirming bankruptcy court's conversion order based, in part, on administrative insolvency of the debtor); *In re Desmond*, 331 B.R. 42, 44 (Bankr. D.N.H. 2005) (same).

**D.    Conversion Best Serves the Interests of all Creditors**

37.    Once cause is established, the Court must determine whether conversion or dismissal is in the best interests of creditors. *See In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir. 1994). In evaluating whether conversion or dismissal is in the best interests of creditors, the Bankruptcy Court must consider the interests of all creditors. *Id.* at 243.

38.    Courts have found conversion best served the interests of all creditors when conversion was expected to reduce administrative expenses and the chapter 7 trustee would be in a better position to exercise independent judgment concerning the debtor's claims. *In re Nelco Ltd.*, 210 B.R. 707, 709–10 (Bankr. E.D. Va. 1997). Courts have also converted cases when maintaining the case in chapter 11 would only result in further diminution of the estate. *In re Bartmann*, 310 B.R. at 663 (B.A.P. 10th Cir. 2004).

39.    The debtor may not enjoy the protection of chapter 11 indefinitely. "[I]t is not the purpose of Chapter 11 to allow a debtor a permanent cloak of protection while the estate's assets continue to diminish and the operational coherence unravels." *In re Galvin*, 49 B.R. 665, 669 (Bankr. D.N.D. 1985). "The function of Chapter 11 is rehabilitation—not disintegration." *Id.*

## **RESERVATION OF RIGHTS**

40. The Committee reserves all rights, remedies and obligations to, among other things, supplement, augment, and/or modify this Motion and to conduct any and all discovery as may be required or deemed necessary, and to assert such other grounds for relief as may become apparent.

## **NOTICE AND PRIOR REQUEST**

41. Notice of this Motion will be been given to: (a) the U.S. Trustee for the District of Delaware; (b) the Debtors; (c) counsel to the Debtors; (d) the secured lenders; and (e) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Committee submits that no other or further notice of hearing is required.

42. No previous request for the relief sought herein has been made to this Court or any other court.

7401958

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A,** converting these cases from chapter 11 to chapter 7 of the Bankruptcy Code and granting such further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      July 10, 2023                              **WOMBLE BOND DICKINSON (US) LLP**

                                               */s/ Morgan L. Patterson*
                                               Matthew P. Ward (DE Bar No. 4471)
                                               Ericka F. Johnson (DE Bar No. 5024)
                                               Morgan L. Patterson (DE Bar No. 5388)
                                               Lisa Bittle Tancredi (DE Bar No. 4657)
                                               1313 North Market Street, Suite 1200
                                               Wilmington, Delaware 19801
                                               Telephone: (302) 252-4320
                                               Facsimile: (302) 252-4330
                                               Email: matthew.ward@wbd-us.com
                                               Email: ericka.johnson@wbd-us.com
                                               Email: morgan.patterson@wbd-us.com
                                               Email: lisa.tancredi@wbd-us.com

                                               and

                                               PORZIO, BROMBERG & NEWMAN, P.C.
                                               Warren J. Martin Jr.
                                               Robert M. Schechter
                                               Rachel A. Parisi
                                               100 Southgate Parkway
                                               P.O. Box 1997
                                               Morristown, New Jersey 07962-1997
                                               Telephone: (973) 538-4006
                                               Facsimile: (973) 538-5146
                                               Email: wjmartin@pbnlaw.com
                                               Email: rmschechter@pbnlaw.com
                                               Email: raparisi@pbnlaw.com

                                               *Counsel to the Official Committee of Unsecured Creditors*