# **EXHIBIT B**



Transcript of the Testimony of

**IAN FREDERICKS**

May 30, 2023

**IN RE: CHRISTMAS TREE SHOPS, LLC, et al.**

Reliable Court Reporting

Phone – 215-563-3363

Fax – 215-563-8839

www.reliable-co.com

1  listen carefully enough to something you said, but

2  Jeff Lindstrom is with Eclipse?

3       A.    He's Eclipse's general counsel.

4       Q.    So your initial consideration that you

5  were to pay for the purchase of the participation

6  need only be funded upon a default, did I understand

7  you correctly?

8       A.    No, I don't remember what the triggers

9  were.  There were some triggers around when which we

10  would fund.  So we didn't get any economics.  The

11  only economics we would get, if the participation

12  was funded, was basically interest, whatever the

13  interest would be.  So we charged the company

14  essentially a six month fee -- and I can't

15  remember -- I want to say it was two hundred and

16  fifty thousand dollars, something like that, for

17  doing the participation.  That was essentially the

18  money that we would earn.  And I want to say -- I

19  think it was in six month increments.  I can't

20  remember exactly.  So you'll see in, I think, the

21  subsequent participation that there were was -- the

22  one that happened in February -- there was no --

23  there was no additional fee charged for that.  So we

24  didn't earn anything under that one because they had

IN RE: CHRISTMAS TREE SHOPS, LLC, et al.

1    already paid for it earlier in January.

2        Q.    Did you -- have you at any time funded the

3    participation?

4        A.    Yeah.  So before the company filed

5    bankruptcy, we had to -- Eclipse, you know, sign a

6    demand for us to fund participation.  So we funded

7    the participation.

8        Q.    Was it funded at the then outstanding

9    balance or based on what it was in existence

10   previously?

11       A.    No, it would have been funded, I believe,

12   at the then outstanding balance.

13       Q.    So if the balance was 24 million, it was

14   at 4.8 million?

15       A.    I don't remember exactly but that sounds

16   right.

17       Q.    In return for that 4.8 million if, for

18   example, the case were to fail and result in

19   22 million coming out to the agent, Eclipse, and out

20   of 24 million you were 4.8 and they were 19.2, you

21   would get -- they'd get the 19.2 and you would get

22   just a small piece?

23       A.    Yeah, I would lose the money over 22,

24   assuming all else was equal.

IN RE: CHRISTMAS TREE SHOPS, LLC, et al.

IAN FREDERICKS

Page 13

1      Q.    What is your understanding of the -- I

2   understand the priorities between Eclipse and you.

3   And where does Pathlight fall in that?

4      A.    So my understanding is that Pathlight

5   would then own the inventory assets, right, own the

6   inventory and accounts receivable.  So let me

7   describe it this way.  Eclipse has a first lien on

8   inventory and accounts receivable and cash, I would

9   imagine.

10     Q.    As of February 16?

11     A.    Yeah, because that's when they became

12  separated, yes.

13     Q.    It was Pathlight before then with the

14  inventory?

15     A.    Uh-huh.  So Eclipse has a first on the

16  inventory, the accounts receivable and let's say

17  cash.  Pathlight has a second on those assets.

18  Pathlight has a first on furniture, fixtures and

19  equipment and intellectual property.

20             THE COURT REPORTER:  I'm sorry, you

21      cut out.  This is what I have.

22             (Reporter read back.)

23             THE WITNESS:  The only thing that came

24      after that was a confirmation that Pathlight

IN RE: CHRISTMAS TREE SHOPS, LLC, et al.

IAN FREDERICKS

Page 45

1

2          C E R T I F I C A T E

3

4       I hereby certify that the proceedings and

5    evidence noted on May 30, 2023, contained fully and

6    accurately in the notes taken by me on the

7    deposition of the above matter, and that this is a

8    correct transcript of the same.

9

10       (The foregoing certification of this transcript

11   does not apply to any reproduction of the same by

12   any means, unless under the direct control and/or

13   supervision of the certifying reporter.)

14

15

16        *Gena M. Nardone*

17        GENA M. NARDONE

18        Registered Professional Reporter

19        Notary Public

20

21

22

23

24