# **EXHIBIT C**

```
                                                      Page 1
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3   Case No. 10-11890-PJW
 4   - - - - - - - - - - - - - - - - - - - - - -x
 5   In the Matter of:
 6
 7   NEC HOLDINGS CORP, ET AL.,
 8
 9            Debtors.
10
11   - - - - - - - - - - - - - - - - - - - - - -x
12
13               U.S. Bankruptcy Court
14               824 North Market Street
15               Wilmington, Delaware
16
17               July 13, 2010
18               9:32 AM
19
20   B E F O R E:
21   HON. PETER J. WALSH
22   HON. CHRISTOPHER S. SONTCHI
23   U.S. BANKRUPTCY JUDGES
24
25   ECR OPERATOR:  MICHAEL MILLER/LESLIE MURIN
```

1   is right, that is fair, and that is to provide some kind of DIP
2   financing that is fair and is cognizant of 503(b)(9) claims.
3              Much has been made with respect to the essential
4   vendor motion.  I do acknowledge its existence; we're all aware
5   of it, and it's been referenced several times, particularly
6   with respect to the cap that's been approved today by Judge
7   Walsh.  I do want to note at least a couple things for Your
8   Honor's consideration.  First, if I recall correctly -- and I
9   don't have a copy handy -- that essential vendor motion also
10  contemplated payments to shippers, non-503(b)(9) claimants.
11  And to the extent those payments have been made and fall within
12  the 7.5 million cap, it reduces the amount otherwise available
13  for 503(b)(9) claims.
14             Two, there are terms that go with those admin
15  claimants.  You have to agree to certain terms, whether it's
16  most favorable otherwise, and to the extent you default, that
17  triggers other events where we might be hailed back into court,
18  otherwise.  I don't remember the terms, but there's something
19  and it's typical, I think, of most essential vendor or critical
20  vendor programs.  Of course, those requirements are not
21  applicable to other admin claimants.  So I throw that out there
22  with respect to the 503(b)(9) admin claimants, specifically.
23             With that, Your Honor, again, I just want to
24  reiterate, Multi-Plastics is interested in seeing a business go
25  forward on a viable basis and not face liquidation.  But again,

Case 10-11890-BLS Doc 2272 Filed 07/10/12 Page 100 of 166
NEC HOLDINGS CORP, ET AL.

Page 100

1  that needs to be tempered with 503(b)(9) claimants being left
2  out in the lurch.
3            THE COURT: All right.
4            MR. PALACIO: Thank you, Your Honor.
5            THE COURT: Anyone else? I assume the Term B issues
6  have been resolved?
7            MR. ATHANAS: They have, Your Honor.
8            THE COURT: Okay. Just wanted to make sure.
9            Let me give you some thoughts, maybe, before you
10 reply.
11           MR. ATHANAS: Certainly, Your Honor.
12           THE COURT: 503(b)(9), the lender is not a guarantor
13 of the 503(b)(9) or any other admin claims, and neither is the
14 debtor. Mr. Palacio's right in that I generally have held in
15 the past that you can run a case for the benefit of a secured
16 creditor. It's the crime of having collateral that some people
17 seem to say that they can't. They've got to pay the freight,
18 and the freight is, at least -- the freight is not necessarily
19 a tip to the unsecureds, but the freight is certainly an
20 administratively solvent estate. And while there's not a
21 guarantee, there has to be something other than a wing and a
22 prayer on the payment of the admin claims. And counsel very
23 honestly and appropriately answered the question that at least
24 it's unclear, as we stand here, and it's quite unclear whether
25 503(b)(9) claims would be paid. It doesn't need to be in the

Case 10-11890-BLS Doc 272-2 Filed 07/19/10 Page 105 of 166
NEC HOLDINGS CORP, ET AL.

Page 101

1  DIP budget, necessarily, but there has to be something -- and
2  again, not a guarantee, but something, some evidence that
3  there's a possibility -- probability that they'll be paid.
4  Excuse me.  And I don't -- I really don't see that, as we stood
5  here today.  So I don't know how you address it, but that's a
6  thought.
7         Another thought is this is a position I inherited from
8  Judge Walsh years ago, and I agree with it, which is basically
9  you don't give a 506 waiver over an objection by the committee.
10 And if necessary, we'll have a substantial contribution
11 hearing -- not a substantial -- I'm sorry, but we'll have a
12 hearing on 506(c), and in twenty years, he's never had one.  So
13 I would not be inclined to give a 506(c) waiver.
14        I'm okay with the milestones, I think, for the reasons
15 I articulated with the committee, with Mr. Feinstein.  I don't
16 think I'm putting the case on a highway to a sale that's
17 inappropriate.  But Judge Walsh will decide that, and if the
18 secured creditor calls a default based on that, I'll look on it
19 at the merits.  I don't think it's inappropriate, frankly, to
20 give them the "leverage" at this time.  They are lending money.
21 It is their collateral at risk.  It is not inappropriate for
22 them to agree to fund a case based on certain conditions,
23 provided they're reasonable and within the confines of the law.
24 So as we sit here today, I'm okay with sale milestones.
25        The rollup, I really would like to hear more from the

```
                                                    Page 116
 1
 2               C E R T I F I C A T I O N
 3
 4    I, Dena Page, certify that the foregoing transcript is a true
 5    and accurate record of the proceedings.
 6
 7
 8    _____
 9    Dena Page
10
11    Veritext
12    200 Old Country Road
13    Suite 580
14    Mineola, NY 11501
15
16    Date:  July 16, 2010
17
18
19
20
21
22
23
24
25
```