UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                              .  Chapter 11
                                    .
CHRISTMAS TREE SHOPS, LLC,   .  Case No. 23-10576 (TMH)
*et al.,*                             .
                                    .  (Jointly Administered)
                                    .
                                    .
                                    .  Courtroom No. 3
                                    .  824 Market Street
                                    .  Wilmington, Delaware 19801
                    Debtor.     .
                                    .  Friday, July 7, 2023
. . . . . . . . . . . . . . .  100:30 a.m.

                    TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE THOMAS M. HORAN
               UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:          Evelyn J. Meltzer, Esquire
                         TROUTMAN PEPPER HAMILTON
                           SANDERS, LLP
                         Hercules Plaza
                         1313 Market Street
                         Suite 5100
                         Wilmington, Delaware 19801




(APPEARANCES CONTINUED)

Audio Operator:          Nolley Rainey, ECRO

Transcription Company:   Reliable
                         The Nemours Building
                         1007 N. Orange Street, Suite 110
                         Wilmington, Delaware 19801
                         Telephone: (302)654-8080
                         Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (CONTINUED):

For the Debtors:              Harold B. Murphy, Esquire
                             MURPHY & KING, PROFESSIONAL
                               CORPORATION
                             28 State Street
                             Suite 3101
                             Boston, Massachusetts 02109

For Sandwater
Dartmouth LLC:                Laurel Roglen, Esquire
                             BALLARD SPAHR LLP
                             919 North Market Street
                             11th Floor
                             Wilmington, Delaware 19801

For Prestige Patio:           Marc Phillips, Esquire
                             MONTGOMERY MCCRACKEN WALKER
                               & RHOADS LLP
                             1105 North Market Street
                             15th Floor
                             Wilmington, Delaware 19801

For Hilco Merchant
Resources, LLC; Restore
Capital (CTS), LLC; and
Restore Capital, LLC:         Gregg M. Galardi, Esquire
                             ROPES & GRAY, LLP
                             1211 Avenue of the Americas
                             New York, New York 10036

For the Official
Committee of
Unsecured Creditors:          Warren J. Martin Jr., Esquire
                             PORZIO, BROMBERG & NEWMAN, P.C.
                             100 Southgate Parkway
                             Morristown, New Jersey 07962

                             Matthew Ward, Esquire
                             WOMBLE BOND DICKINSON (US) LLP
                             1313 North Market Street
                             Suite 1200
                             Wilmington, Delaware 19801

INDEX

MOTIONS:                                                                PAGE

Agenda
Item 7: Motion of Soundwater Dartmouth, LLC for                         9
        Relief from the Automatic Stay with
        Respect to Terminated Lease
        (Filed 6/6/23; Docket No. 236)

Agenda
Item 6: Debtors' Emergency Motion for an Order                          10
        Under 11 U.S.C. §§ 105(a) and 366 (I)
        Prohibiting Utility Companies from
        Altering or Discontinuing Service on
        Account of Prepetition Invoices, (II)
        Approving Deposit Account as Adequate
        Assurance of Payment, and (III)
        Establishing Procedures for Resolving
        Requests by Utility Companies for
        Additional Assurance of Payment
        (Filed 5/5/23; Docket No. 10)

        Court's Ruling:                                                 11

Agenda
Item 8: Debtors' Motion Pursuant to 11 U.S.C. §                         11
        365(d)(4) for Entry of an Order Extending
        the Time to Assume or Reject Unexpired
        Leases of Nonresidential Real Property
        (Filed 6/15/23; Docket No. 281)

Agenda
Item 9: Motion for Entry of an Order (I)                                11
        Authorizing the Debtors to Reject Certain
        Unexpired Leases of Nonresidential Real
        Property and (II) Granting Related Relief
        (Filed 6/16/23; Docket No. 284)

        Court's Ruling:                                                 12

INDEX

MOTIONS:                                                           PAGE

Agenda
Item 10: Motion of Prestige Patio Co. Ltd. for         12
          an Order Compelling Payment of
          Administrative Expense
          (Filed 6/23/23; Docket No. 289)

          Court's Ruling:                               16

Agenda
Item 11: Motion by Debtors for Entry of a              17
          Supplemental Order to the Final Order
          Pursuant to 11 U.S.C. §§ 105, 361, 362,
          363, 364, 503 and 507 (I) Authorizing
          the Debtors to Obtain Senior Secured
          Superpriority Post-Petition Financing;
          (II) Granting (A) Liens and Superpriority
          Administrative Expense Claims and (B)
          Adequate Protection to Certain Prepetition
          Lenders; (III) Authorizing Use of Cash
          Collateral; (IV) Modifying the Automatic
          Stay; and (V) Granting Related Relief
          (Filed 6/26/23; Docket No. 296)

          Court's Ruling:                               33

(Proceedings commenced at 10:33 a.m.)

(Call to Order of the Court)

THE COURT:  Please be seated.  Good morning, all.

MS. MELTZER:  Good morning, Your Honor.  Evelyn Meltzer of Troutman Pepper on behalf of the debtors.

Your Honor, thank you for giving us a little extra time this morning.  As you can see from the agenda, there is a lot going on in this case and so we just wanted to thank you for giving us a couple extra minutes.

I think at this point what we would like to do is I want to turn it over to Mr. Murphy to kind of tell Your Honor what has been going on in the case and then we can, kind of, decide from there how we will address the agenda.

THE COURT:  Yeah, I would appreciate that.  Thank you.

MS. MELTZER:  Thank you, Your Honor.

THE COURT:  Good morning, Mr. Murphy, its good to see you.

MR. MURPHY:  Good morning, Your Honor.  Its good to see you as well.

Let me give you some perspective, Your Honor.  Two months ago, we were here with the objective stated to save the business, and to reorganize, and keep it open.  We set forth an aggressive timeline to do so.  We were able to get the plan disclosure statement on file in the prescribed time.

The company performed well in the initial three to four weeks of the case.  It looked like we were on plan.

At that point, in June, we ran into some problems. The company breached some provisions of the DIP loan that ultimately lead to a trigger notification that resulted in their lenders being relieved of the obligation to continue to fund the debtor's estate.  Since that time, we have been continuing to operate and the lenders have continued to fund the necessary expenses.

One important item included payroll that was necessary to be paid this week, but as well as we informed the lenders of (inaudible) -- excuse me, they answered to us they aren't necessary to pay the July rents which have not yet been paid, but will be paid today based upon the funding or the use of funding provided by it.

As things went along, in the course of June, SSG -- Your Honor, just to remind you, SSG was retained by the end of May for purposes of assisting in finding either a plan sponsor, which we needed to go forward with a plan, and/or a buyer.  They hit the ground running and have worked, and continue to work, very hard to try to find a buyer or plan funder.

Right now, and, indeed, last evening -- and I think there is a representative of the putative buyer in the courtroom who would like to address the Court, I suspect,

about their interests in the assets.  My understanding is the DIP lenders do not support the offer and have instructed the debtor to proceed with their going out of business ales commencing today.

Your Honor, I am not certain that we live by the good graces of our DIP lenders under these circumstances. The case has been difficult. The sales did drop precipitously in June.  There is no question that we are in default.  There is no question that the stub-rent, under the arrangement that had been made earlier, ceased.

There was a hearing last week, with Judge Silverstein, on these issues and there was a $50,000 payment made until we got back in front of Your Honor.  The DIP lenders will address that.  Needless to say, there has been a lot of work done by the committee, the landlords, the DIP lenders in our office, counsel's office trying to get a deal done here and proceed on some sort of orderly fashion.

I think that there is a general agreement in principal to try to move the hearing out next week while we finalize a budget going forward.  We received a budget for the GOB sale evening at approximately 7 o'clock. It doesn't reconcile with our budget. I don't think it reconciles with the committee's budget of what needs to be paid during the GOB process.  The thinking is that we can have a hearing sometime next week subject to Your Honor's availability to

try to work out the details of the GOB budget.

That being said, we, the debtors, I think the committee, and others are concerned about what happens between now and that continued hearing.  The suggestion that I think the DIP lenders would support, but I haven't had a chance to talk to the committee, would be for us to try to nail it down and make sure that the obligations that are being incurred today, payroll and other expenses that get approved between now and our next hearing, will continue to be paid and authorized to be paid.  That is what we have heard from the DIP lenders, but there is some scheduled terminations of employees they would like us to enact right now and we want to work out the details of who is essential to this effort going forward.

In the meantime, Your Honor, Ms. Meltzer noted there are a number of items on the agenda.  My suggestion, subject to Your Honor hearing from others, would be to go through those items that we can go through on the list to try to reduce the other party's time and effort on this matter, then try to come back, at Your Honor's convenience, sometime maybe in an hour, Your Honor, to try to finalize and confirm what is happening between now and the continued date.

THE COURT:  Yeah, that sounds fine.  What matters would you like to go forward on right now?

MR. MURPHY:  Your Honor, I think my records show

that we start with number seven, Your Honor, on the list, Page 6 of the agenda that Ms. Meltzer's office filed.  There is a second amended notice of agenda, Your Honor.

At the bottom the motion of Soundwater Dartmouth. There is an agreement, I believe a proposed order, that has been circulated among the parties. I am not aware that there are any issues on that except I don't have final signoff.  My colleague, Mr. Carman, has been handling that. I am not sure whether counsel for Soundwater is on the phone, but my suggestion is that we continue that to the next hearing date with the expectation that that motion will come off because we have an agreement with respect to that landlord, Your Honor.

THE COURT:  Ms. Roglen.

(No verbal response)

THE COURT:  Sorry, counsel for Soundwater.

MS. ROGLEN:  Laurel Roglen of Ballard Spahr, Your Honor, on behalf of Soundwater Dartmouth LLC.

That is all correct. We do have an agreement in principal and we're working on an agreed form of order. I think there is just maybe one point of dispute on that that we are going to continue to work out.  We hope to submit that order under certification of counsel obviating that need for a further hearing, but we're happy to carry the matter and hopefully taking it off the calendar before the next hearing.

Thank you, Your Honor.

THE COURT:  Sounds good.

MR. MURPHY:  Thank you.  Your Honor, I may have to go back to number 6, Mr. Carman reminds me.  With respect to the utility challenge there has been a number of discussions as well with that challenge by the holders of 27 utility claims.

I believe, again, there is an agreement in principal to address them, to the procedures set forth and there would be a separate agreement not requiring a Court order, but an agreement.  It is an agreement that has been circulated among our office.  I don't know if the committee has seen it yet.  I believe the DIP lenders have preliminarily approved it.

We would expect again, as with the previous motion, that we would be able to resolve that prior to the next scheduled hearing in that motion with an agreed order, with a signed letter agreement that would result in that objection being withdrawn.

I believe if the utilities counsel is present maybe they can confirm.

THE COURT:  Is counsel for the utilities in the courtroom or on Zoom?

(No verbal response)

THE COURT:  Okay.  I hear no response.

MR. MURPHY:  Would Your Honor please reschedule -- continue that hearing to the next scheduled date that the Court has.

THE COURT:  That sounds fine.

MR. MURPHY:  Thank you, Your Honor.  I believe that brings us to matter number eight which is the motion to extend the time to assume or reject leases, Your Honor. There has been one objection filed with that.  After consultation with the DIP lenders, they have no objection that we would carve that objecting landlord out of the order extending the time to assume or reject leases; otherwise, we would submit a form to that effect.

THE COURT:  Okay.  That sounds fine to me.

MR. MURPHY:  Thank you, Your Honor.  The next, number nine, Your Honor, is the motion for entry to be able to authorize the debtor to reject certain unexpired leases of nonresidential real property.  Your Honor will recall that that was with respect to the store locations and the one corporate office that the debtor had.  We included our business at those locations and we want to reject those leases.

We received one response, Your Honor, to that by SVMP to the effect that there is personal property remaining at the premises.  I believe the personal property, I'm informed, is shelving in the stores.  That is the personal

property.  That is what my information is.  And through the store closing order that was previously entered by Your Honor, it authorized us to abandon personal property that was at the locations.  In the proposed order authorizing rejections similarly provides for that relief, Your Honor.

I am not certain whether counsel for the SVMP is on the phone or present.

THE COURT:  Would anybody like to be heard for SVMP?

(No verbal response)

THE COURT:  I hear no response.  I am going to go ahead and grant the motion.

MR. MURPHY:  Thank you, Your Honor.

THE COURT:  To be clear, I'm overruling the objection.

MR. MURPHY:  Thank you.  Item 10, Your Honor, is the motion of Prestige Patio compelling payment of administrative expense claim in the amount of approximately $178,000.  Unfortunately, we don't -- the debtors don't disagree.  We don't dispute that obligation.

These were goods, Your Honor, that were audited several months prior to the filing of the petition.  They were on the water.  I believe they came in shortly after the filing.  They weren't in the budget, if you will, to be paid because we just didn't anticipate that they would be coming

in when they did.

The simple matter is, Your Honor, there was no funds in the estate available to pay that.  As I said earlier, the debtor is getting limited funding from the DIP lenders or authorization to use cash collateral solely for the purposes of, if you will, of preserving the status quo and not going back to cover expenses that are approved prior to the default.

Its one of the items that we are going to be talking about with respect to the overall GOB budget of how to deal with these issues, but at the present time it doesn't appear that we certainly can't pay it.  We certainly have no allowance to the claim, just an order compelling it, Your Honor.  The debtor doesn't have the funds.

THE COURT:  Let me be clear, and I'm going to want to hear from Prestige Patio because it's their motion, but when you say you don't contest it, in your response to the motion you express that you believe its an unsecured claim. Are you agreeing that it is an administrative expense just that you can't pay it.

MR. MURPHY:  It is an unsecured claim, Your Honor, but I believe it is an administrative claim because the cases that we have reviewed the goods were physically received by the debtor after the filing.

THE COURT:  Okay.

MR. MURPHY:  Now when the goods hit the water in China or wherever from Asia they came, for the goods, but the case law that we have reviewed in this district indicates that the Courts consider physical possession as a dispositive matter with respect to allowance of the claim.  Now there is no controlling precedent through the Third Circuit that I understand on that issue, but certainly that seems to be the prevailing view from this Court.

THE COURT:  Okay. It looks like Mr. Galardi would like to be heard.  Good morning, Mr. Galardi.  Welcome.

MR. GALARDI:  Good morning, Your Honor.  I will have more to say, but just on this issue, and I think it is an important issue, and I am not saying -- I think its premature to allow it as an administrative expense.  We didn't file an objection, so if Your Honor doesn't want to hear me, I understand it.

I will just say two things.  One, there is controlling precedent in the Third Circuit that if it was received possession prior to bankruptcy, it's a 503(b)(9). There is an open issue when you order things, title passes on executive contract and its delivered post-petition.  I understand the estate may get a benefit.  It may just be a prepetition unsecured claim and I don't think any Court in the Third Circuit has ruled on that issue.

Unfortunately, we learned the hard way in Sears

that they took a different position that it was a prepetition unsecured claim.  So, though we didn't file an objection I just wanted to point out to the Court, and it may all become, as you will hear later on, there's a lot of administrative claims that accrue prior to July 1st that it may make no difference, but I think it would be premature, based on this record to find it as an allowed administrative claim at this point.

I don't know if the committee has gotten a chance to look at it.  They may not have a view, but I did want to bring the Court to the attention that this is an open issue. I didn't know whether its worth fighting, but I just wanted Your Honor to know.

THE COURT:  Thank you, Mr. Galardi.

Mr. Phillips, would you like to be heard on your motion?

MR. PHILLIPS:  Good morning, Your Honor.  Marc Phillips, Montgomery McCracken, for Prestige Patio.

The facts have, essentially, been addressed already.  But we do believe Judge Walrath's Bluestem Brands opinion is right on point in that case.  The goods were ordered prepetition, they were shipped prepetition.  They were received post-petition and Judge Walrath ruled that in the Bluestem case at 2021 Westlaw 3174911, on July 27th, 2021, that the correct standard for determination of

administrative claim is simply whether the vendor provided a benefit to the estate post-petition. It doesn't require that there be a post-petition contract.  She went onto hold that the vendors goods were physically received by the debtor post-petition, that were beneficial and necessary to preserving the estate as those goods were resold and the proceeds were used.

This situation has already arisen in this case with the Riba Textiles matter which Your Honor signed an order on June 12th bringing an administrative claim under the exact same circumstances and granting a payment plan.  So, we don't think that this is a unique situation. It's already been dealt with in this very same case and it's already been dealt with in this Court.

So, we think that an administrative claim should be ordered and immediate payment should be made or, at least, a payment plan so that we are not in any different situation then an administrative creditor in the exact same facts already in this case.

THE COURT:  Would anybody else like to be heard?

(No verbal response)

THE COURT:  Okay.  I hear no response.  I am going to grant the motion in so far as it requests allowance of the administrative expense, but I am not going to order payment at this time.  That can be dealt with along with all the

other administrative expenses that are accruing in the case.

MR. PHILLIPS:  Thank you, Your Honor.  I will revise and circulate an order and upload it.

THE COURT:  Thank you.

MR. MURPHY:  Your Honor, I think at this point we would like to go to Item 11.  It is the DIP issue, Your Honor.  It might be helpful if we take an adjournment for the committee and the debtors just to make sure that we're on the same page as to what is going to be happening now between the next scheduled hearing.  Perhaps (inaudible) can indicate their availability, Your Honor.  Our office will be available whenever Your Honor pleasures.

I think people were talking to meet next week, but I will defer to Mr. Galardi on that point and perhaps he can be heard, Your Honor.

THE COURT:  Mr. Galardi.

MR. GALARDI:  Your Honor, I am going to make this a little bit longer, but I will start with we would love if Your Honor has time on Wednesday or if it were a Thursday other then I think I have a hearing here in town at 10 a.m. But preferably Wednesday would give us enough time. I think it is a matter of significant urgency.  I just don't think we can get it done by Monday or Tuesday.  That is the question on the hearing.

I did want to make a couple of comments because I

do think it is rather important.  First, and this is going to go to Mr. Murphy and I'm not trying to escalate, the case was filed on May 5th and I think even at the first day we said the budget was thin.  We said that we would support, unlike many lenders who would have said let's liquidate this business first day, we wanted to give the company an opportunity to see if we could do a plan.  We wanted to give the company time to hire SSG and see if there could be a sale.

I think we came back May 31st.  So, while Mr. Murphy says, well, the company performed really well that was a very short period because by May 31st we were here on the final DIP hearing.  At the final DIP hearing we said we have liquidity.  And you will remember, Your Honor, I think you have seen the record in our pleadings, that we thought they weren't even going to make liquidity numbers for the next two weeks.

So, you know, I do want to say this is not completely unexpected and it was everybody's concern, including our own concern, and the people who we have negotiated understood it was our concern at that point.  So, that was the first thing.

The second is if we adjourn, I want it to be very clear, and we're happy to allow it to be a concern, there is no new DIP supplemental order.

We are under the final order and the debtors have no authority at this point in time to use cash collateral, and they have no money.  Now what we have agreed with Mr. Murphy as well as with the professionals is we would let the professional fees run to June 30th and we will fund post-July 1st, what we believe were the essential collateral expenses and have actually done that.  So that included payroll.  That included the July rent that.  That will be funded today.  We had actually thought it was funded earlier in the week, but we -- we'd do that.

Your Honor heard a utility motion.  That utility motion, though, you may not need to see the agreement, that utility motion does two things.  One, it will pay a couple outstanding post-petition utility bills.  It will not pay anything prepetition.  It will pay, instead of doing the reserves that are set forth, it will take the reserve out and they're going to just get advanced payments because we're in the store-closing motion.

THE COURT:  Uh-huh.

MR. GALARDI:  And I think it's also important to understand that we are in the store-closing motion and notice has been given all to the landlords and those store closings are starting today, July 7th, with the various signage. There's a couple limited objections.

So while Mr. Murphy described it as the DIP

lenders instructed the debtors to withdraw the bidding procedures, we don't have any such authority to instruct. We simply do not support it. We think it is important to, in fact, start the store closings.

And I know you probably read the record, but I think some people may not have gotten to read the record from the hearing before Judge Silverstein, the reason that the July 7th date is a critical date is there is inventory in these stores. I've heard numbers, between consignment and other, 35, 36 million, maybe 25 of non-consignment inventory.

As Your Honor has done many retail cases, it takes a certain time to get through that inventory and monthly rent is $5 million. So when we talked to the Committee and, actually, when we talked to the landlords, it was absolutely critical to start the dates today because, while we may never get to pay the stub rent, and that's obviously an issue, the last thing that anybody wanted to do, including the lender, is -- was to say, Ha, we're in September. We can't pay that $5 million of September rent.

So, we have pasted on July 7th so that we can actually be done by August 31st and that's proceeding. So if the debtors decide to go forward with a sale motion today, we will obviously oppose it. There's a term sheet. It's got all sorts of things to work out. And the problem is we've simply run out of time, because I think it puts all of the

constituencies at greater risk to delay the store closings, which have already been approved under the store-closing motion.  Notices have gone out, so I wanted Your Honor to understand that.

As to the employees, we're going to talk about that, but it is a very limited cash collateral budget.  I also will come back and give Your Honor -- I was going to give Your Honor a little more information of what -- because, you know, people throw out the word "conversion" and I understand that may go to your (indiscernible), but hey, we're not paying administrative expenses pre-July 1st. That's probably going to happen unless there's great sales.

What we are going to do and try to do by that July 7th day is either come to an agreement substantially in the form you've seen in the DIP supplemental motion, plus or minus a little bit of stuff here and there and see if we can get a budget that works to get that and honor those agreements, which would benefit the Committee.  As you see, we've given up certain rights.

Or we'll have a budget to compare that to is, what does a conversion really mean, because, again, the lenders are fairly agnostic.  It's not like the lenders are saying, We want to run the Chapter 11.  We also don't want the Chapter 7 Trustee expenses.

So, I think, for Your Honor, if you think about

what we're asking for, for a Wednesday hearing or a Thursday hearing -- preferably Wednesday -- is to say we'll come back on a DIP.  If we can have it consensually and everybody agrees to the budget, we're good, and if not, we may be converting that day because the budget just doesn't allow us to do the deals that we thought we would do.

THE COURT:  Okay.  I appreciate those comments, Mr. Galardi.

Mr. Martin, would you like to be heard?

MR. MARTIN:  Thank you, Your Honor.  Warren Martin.  I'm co-counsel with Mr. Ward for the Committee.

I'm going to double-down on what Mr. Galardi said and say that the Committee, in fact, might be here next Wednesday -- I think that's the date that works for Your Honor -- recommending a conversion.  The agreement that the Committee reached, which was embodied in Judge Silverstein's interim order has --

THE COURT:  Well, there has been no interim order, correct?

MR. MARTIN:  The order that Judge Silverstein entered.

UNIDENTIFIED SPEAKER:  There is no interim order. We never got it.

MR. MARTIN:  Okay.  It never got signed, okay.

THE COURT:  Well, it was never submitted.

UNIDENTIFIED SPEAKER:  It was never submitted.

THE COURT:  There was nothing before the Court.

MR. MARTIN:  Okay.  It was -- I guess a draft was submitted prior to the hearing.  There was a motion that attached to the draft.

THE COURT:  My -- look, I reviewed the record of the hearing last week and the expectation at the end of the hearing was that there would be an interim order submitted under certification of counsel.  We have not seen an order. We have not seen an interim order, so --

MR. MARTIN:  Yeah, well, I don't want to talk about it, then, if it's not.  I -- my recollection was, at least the terms of the agreement, in connection with the motion that the debtors filed, were laid out in a proposed interim order.  Yes?

UNIDENTIFIED SPEAKER:  There was a (indiscernible).

MR. MARTIN:  Okay.  So it's on the record.  I didn't want to talk about something if it was negotiations, Your Honor.  But in the motion, laid out what would have been the interim order and it included an agreement with the Committee that was hard-fought and had elements of consideration for unsecured creditors.

Between last week and today, it came to the Committee's attention that we have -- "overlooked" is

probably the wrong word -- but the lenders and the Committee coming to that proposed agreement had overlooked dealing with stub rent. And the Committee made significant concessions to bring an agreement together with the landlords to be able to present a consensual approach today.

Last night, we received the proposed budget with significant changes that walks back sort of where we were and if we're not able to -- the initial budget showed that what we had hoped would be an orderly liquidation that everybody was signed on to in this proposed form of supplemental DIP order, in fact, was, at least what the debtor presented initially was an upside-down, administratively insolvent estate.

And, obviously, there's -- we shouldn't be doing that Chapter 11, so we hope that between now and Wednesday, we're all able to negotiate an agreement; if not, I think kind of uncharacteristically, you might see the Committee and the lenders standing together here next Wednesday. I just wanted to preview that supporting the conversion.

THE COURT: Okay. Thank you, Mr. Martin.

Would anybody else like to be heard?

Ms. Roglen?

MS. ROGLEN: Good morning, Your Honor. Laurel Roglen, again, for certain of the debtors' landlords with a total of 10 locations.

I largely agree with everything you heard from Mr. Galardi and Mr. Martin.  We put a lot of work in, in the last week trying to reach a resolution with respect to the stub rent issues, which we raised at last week's hearing before Judge Silverstein.  And we thought we had made a lot of progress and then once the actual budget came in, it appeared that maybe we didn't make as much progress as we had hoped.

And at that point in time -- and those negotiations were with respect to the stub rent -- that was the administrative claim that we were seeking to ensure was adequately protected or otherwise provided for in some way in any further DIP order that would be entered by this Court. Since that time and since the new budget had been circulated and the discussion has kind of pivoted, we then became concerned about 365(d)(3) rent for the month of July, which we're sitting here on July 7th, has not yet been paid, as well as for the month of August, as we proceed into store liquidation sales being conducted in our stores and the rent has not yet been paid.

I am comforted by the representations from the lenders and from the debtors and the Committee that everybody has agreed to fund and to permit the payment of July rent to go out and that, frankly, is one of the conditions that I had put forward to allow the DIP to be kicked to next week and

not deal with it today.  We didn't want to let this get into the middle of July without any provision being made for the payment of (d)(3) rent for July at our stores.

So we are happy to continue working with all of the parties and are also hopeful that we can reach some kind of resolution by next week's hearing, but we also have significant concerns about the administrative insolvency of these cases.  And if the cases are going to continue to proceed and continue to utilize our stores on a post-petition, go-forward basis to liquidate the inventory belonging to Restore and the lenders and the consignors and the debtors, there has to be a provision and assurance that that's going to be paid for going forward.  So we're happy to continue to work with the parties to get there, but we'll see what happens before next week.

Thank you, Your Honor.

THE COURT:  Thank you, Ms. Roglen.

Would anybody else like to be heard?

(No verbal response)

THE COURT:  Okay.  I hear no response.

Mr. Murphy?

MR. MURPHY:  Yes, Your Honor?

THE COURT:  Is Wednesday at 1:00 p.m. convenient for you?

MR. MURPHY:  We're, as I said, we'll make it

convenient.

THE COURT:  And for the other key parties, the Committee, Mr. Galardi?

MR. GALARDI:  Yes, Your Honor.

THE COURT:  Okay.  We will schedule this for Wednesday, July 12th at 1:00 p.m.

MR. GALARDI:  Yes, Your Honor.

MR. MURPHY:  Your Honor, I just want to have -- perhaps come back in, I view, hopefully, it would be in a half hour.  We just have to have a record.

Because we don't have an order, I need to have on the record that the obligations that are accruing between now and the next hearing, the people -- the landlords today that, I have no doubt that Mr. Galardi is prepared to say that on the record -- I just want to clarify.  As I said to you, the detail here that we need to just work out is, there is -- the only question is certain layoffs are scheduled to occur.  We want to make certain that the debtor has the requisite personnel available to do what it has to do between now -- so we need a few minutes on that.

MR. GALARDI:  It's not a few minutes.  It's likely 30 minutes and then I think every lawyer should double what every other lawyer says, so I'd say it's at least an hour.

THE COURT:  Okay.

MR. GALARDI:  That's just my gut reaction.  I

don't know if 12:00 is good for you or if you want to do it after lunch.  But I've learned long ago this is not going to take only a few minutes or a half hour.

THE COURT:  Okay.  Why don't we come back at 1:00?

MR. GALARDI:  That would be great.  Thank you, Your Honor.

THE COURT:  Is that okay?

COUNSEL:  Thank you, Your Honor.

THE COURT:  Okay.  Is there --

MR. GALARDI:  Your Honor, the one other thing, and I don't -- again, we can talk about it at the break.  They still have this pending bid procedures motion and I don't know if that's been resolved or whether -- what they're intending (indiscernible).

MR. MURPHY:  Your Honor, the debtors are not going forward on that motion.  Thank you, Your Honor.

THE COURT:  Okay.  Is there anybody else who would like to be heard?

(No verbal response)

THE COURT:  Okay.  I hear no response.

We will come back at 1:00 p.m. this afternoon; until then, we are in recess.

(Recess taken at 11:06 a.m.)

(Proceedings resumed at 1:04 p.m.)

THE COURT:  Good afternoon, Mr. Murphy.

MR. MURPHY:  Good afternoon, Your Honor.  Thank you for the recess.  I think we've made some progress regarding the funding of the debtors' operations through the next scheduled hearing on Wednesday.

If Mr. Galardi could approach, Your Honor, I think he would like to set forth the agreement.

THE COURT:  Very good.

MR. GALARDI:  Good afternoon, Your Honor, and, again, thank you.  I'm not going to go through all of the expenses, but I want to give you the concepts and then play to what I would call the special interests.

First, with Your Honor scheduling the hearing, I think it's next Wednesday, we're focused only on those expenses that have to get paid for next Wednesday to operate. Those expenses include the utility settlements, as I said before, the leases are going to be paid today, subject to something I'm going to say, but it's not bad to the landlord, so I don't have to worry about that yet.

Store employees, their payroll -- their actual work week ends on Saturday, July 15th, so we're going to pay all of the wages and expenses.  So even if we come back, I want them to understand that, frankly, we fund payroll on Wednesday nights anyway.  Even if we come back and we don't agree about a budget, they're going to be paid through the end of business on Saturday.  So that is getting paid.

And then what we did was we've gone through a series of things that related to the stores:  insurance, software.  So those things are going to be paid.  The way the mechanics that we anticipate doing this is as follows.  Every day, instead of having actually a cash collateral budget, because we've had not a whole lot of success with budgets and want to work through budgets, every day they're going to tell us what they're going to pay.  We will approve it.  It is going to be focused solely on what has to be paid between now and July 12th, I believe it is, and it will be what's necessary to get the goods to the stores or whatever it is that has to be done that we can get value post-July 1st.

That, unfortunately, if we were to pay, which we essentially did, or give them the funding to pay, they don't generate because the beginning of the month, because of employee payroll, and because of the leases, they don't generate sufficient cash to make this really a fully cash collateral.  So we're going to get less in than what we have to pay; for example, that $5 million in rent.

So as part of this, we've also agreed, and I think it's important, and I know the landlords will not want to delay the rent payments until next week, because we are going to pay the rent payments today, we're going to make an overadvance for the payments so that they can get paid their rent today.  So the only thing we would ask Your Honor to do

is, yes, under the final DIP order, they could use cash collateral.  We're doing cash collateral.

Second, because cash collateral is inadequate, there's going to have to be an overadvance by the lenders and we would ask Your Honor, because we don't want to go back to the final DIP order, that Your Honor authorize and order the record that we be authorized to make those cash collateral payments and the overadvance and be protected by the terms of the final DIP order.  So, I guess, get the protections that we have in that DIP order, but we don't -- again, legal fees being what they are, spending another three days drafting another order, if it doesn't get in on certification of counsel, just doesn't make sense to us.

THE COURT:  Right.

MR. GALARDI:  And the intention, I think we had a very productive conversation on the intentions and what gets paid and what doesn't get paid.  And we're happy to give the Committee or anybody else as we get through this, what we've done each day and so Your Honor will have that information next Wednesday.

THE COURT:  Okay.  Would anybody else like to be heard?

Mr. Ward, good afternoon.

MR. WARD:  Good afternoon to you, Your Honor.

I'm here, Your Honor, instead of Mr. Martin.  My

understanding is that Mr. Martin is probably back at the office drafting a conversion motion, as we alluded to earlier.

The Committee is not happy about the situation. I understand nobody in the room is probably happy about the situation, so I think that's probably one thing that everybody can agree on.

We don't oppose what Mr. Galardi has stated in terms of between now and Wednesday, but having said that, Your Honor, and to give Your Honor perspective, at least from how I see it, what is proposing to be paid, if you I don't care at it is employees and go-forward rent for July and utilities and insurance and everything that they need to do to run the GOB stores, which is for their benefit, but not things like the stub rent or the admin creditor that stood up here and said, I shipped them goods and I haven't been paid. I didn't hear anything about professionals, so things that aren't necessarily for their benefit.

And so, you know, it's -- they are not acting altruistically and in light of the recent developments over the case, we do think we're going to be moving forward with a conversion request to be filed early next week and would request Your Honor to hear that concurrent with the other proposals on Wednesday's hearing of next week.

THE COURT: Okay. I understand.

Thank you, Mr. Ward.

Anybody else like to be heard?

MR. GALARDI:  Your Honor, I'll just say it.  We're happy to have that motion on Wednesday, as I sort of -- as I said before, were you know, we're not acting altruistically. So I didn't think anybody thought that we were, but we are trying to pay.  I think, frankly, the people in the room will be harmed by the conversion, but that's for another day, but we have no objection to it being heard at the same time after we come through the transaction.

And hopefully we'll have a consensual resolution. If we don't, we'll have the conversion motion.

THE COURT:  Okay.

MR. GALARDI:  If Your Honor is prepared to, obviously, put it on for that day.

THE COURT:  Okay.  Well, with the conversion motion, I'll look for a motion, along with the motion to shorten and we'll decide at that point whether we can hear it on Wednesday.

MR. GALARDI:  That's all for me, Your Honor.

THE COURT:  Okay.  Does anybody else want to be heard regarding Mr. Galardi's request to have those lender protections under the final DIP order remain in place until Wednesday?

(No verbal response)

THE COURT:  Okay.  I am granting Mr. Galardi's request.

MR. GALARDI:  Thank you, Your Honor.

THE COURT:  Thank you.

MR. MURPHY:  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Murphy.

Do we have anything else for today?

MR. MURPHY:  I don't believe so, Your Honor.

THE COURT:  Okay.  Well, then, we will be back on Wednesday, July 12th at 1:00 p.m.

I wish everybody a good weekend and we are adjourned.

COUNSEL:  Thank you, Your Honor.

(Proceedings concluded at 1:10 p.m.)

CERTIFICATION

We certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of our knowledge and ability.

/s/ William J. Garling                    July 11, 2023

William J. Garling, CET-543

Certified Court Transcriptionist

For Reliable


/s/ Mary Zajaczkowski                    July 11, 2023

Mary Zajaczkowski, CET-531

Certified Court Transcriptionist

For Reliable