# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] | Case No. 23-10576 (TMH) |
| Debtors. | Jointly Administered |
| | Ref. Docket Nos. **22, 75, 82, 125, 229, 296, 299, 300, 312, 314, 316, 319, 321, 339, 340, 344, 345, 429** |

**FINAL SUPPLEMENTAL ORDER TO THE FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") acknowledging that (a) one or more DIP Termination Events have occurred under the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 229] (the "Final DIP Order"), and (b) a Carve Out Trigger Notice was properly and timely issued by the DIP Agent in accordance with the Final DIP Order; and the Debtors, the Committee, and the DIP Secured

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Final DIP Order or the DIP Loan Documents (each defined below), as applicable.

*ACTIVE 688626125v12*

Parties desiring to amend the Milestones and the Carve Out, and to provide for the continued use of Cash Collateral and/or limited funding under the DIP Facility solely on the terms set forth in this Order (this "Final Supplemental Order") and the Revised Budget (as defined below) attached hereto; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and the Debtors consenting to entry of a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion, the proposed Final Supplemental Order, and having heard the statements in support of the relief requested therein at hearings before this Court on June 29, 2023 (the "June Hearing") and on July 7 and July 12, 2023 (collectively, the "July Hearings", together with the June Hearing, the "Hearings"); and this Court having granted relief at the July 7, 2023 Hearing; and upon the record made by the Debtors at the Hearings; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and sufficient cause appearing thereof,

**IT IS HEREBY FOUND AND ORDERED THAT:**

1.    Relief Granted. The relief requested is GRANTED as set forth herein on a final basis. The interim relief granted at the June Hearing shall be superseded in all respects by the terms of this Final Supplemental Order.

2.    Certain Findings.

   a.    One or more DIP Termination Events have occurred under the Final DIP Order, with the first DIP Termination Event having occurred on June 9, 2023.

b. Pursuant to the Final DIP Order, upon the occurrence of a DIP Termination Event, the DIP Secured Parties were, and continue to be, relieved of any obligation to provide financial accommodations to the Debtors.

c. An immediate and critical need exists for the Debtors to be granted continued access to funds constituting Cash Collateral and/or limited continued funding under the DIP Facility in accordance with the Revised Budget, to permit for the continued operations of the Debtors, including the conduct of the Closing Sales (as defined in the Store Closing Order (as defined below)). Without access to Cash Collateral and/or such continued limited funding in accordance with the Revised Budget, the Debtors will not be able to pay their expenses incurred in connection with continued operations through the period required for the commencement and operation of the Closing Sales.

d. The DIP Secured Parties and the Prepetition Term Loan Secured Parties have expressly relied upon the entry of this Final Supplemental Order and the Final DIP Order in connection with their approval of the use of Cash Collateral and/or limited funding under the DIP Facility, following the occurrence of the DIP Termination Events.

e. Notice of the Motion, the Hearings, and opportunity for a hearing on the proposed Final Supplemental Order were appropriate under the circumstances—including, without limitation, that the proposed relief was sought during the Remedies Notice Period—that notice was provided in accordance with the *Order Shortening Notice and Objection Periods with Respect to the Debtors' Motion for Entry of a Supplemental Order to the Final Order Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing and Use Cash Collateral* [Docket No. 299], and no other notice need be provided.

f.  Good cause has been shown for the entry of this Final Supplemental Order and the terms hereof are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Among other things, entry of this Final Supplemental Order will minimize disruption of the Debtors' operations, permit the Debtors to continue to operate through the commencement and operation of the Closing Sales.

3.  <u>Final DIP Order</u>. Except as expressly set forth herein, nothing herein amends or modifies the Final DIP Order, and the Final DIP Order shall remain in full force and effect.

4.  <u>Budget</u>.  The budget annexed to the Final DIP Order as <u>Exhibit B</u> is hereby amended and replaced with the budget annexed hereto as <u>Exhibit 1</u> (the "<u>Revised Budget</u>"), which Revised Budget may be further amended subject to prior written consent of the DIP Agent (acting at the direction of the DIP Lenders); <u>provided</u>, <u>however</u>, any amendment to the Revised Budget shall provide for payment of August 2023 rent in those Stores in which the Debtors continue to conduct Closing Sales.  For clarity, the Revised Budget shall constitute the in-effect Approved Budget under the DIP Loan Agreement.  The period set forth in the Revised Budget is referred to herein as the "<u>Revised Budget Period</u>".

5.  <u>Use of Cash Collateral</u>.

a.  Subject to the terms and conditions set forth in the Final DIP Order and this Final Supplemental Order, the Debtors are permitted to use Cash Collateral during the Revised Budget Period solely in accordance with the Revised Budget without any permitted variance, absent prior written consent of the DIP Agent (acting at the direction of the DIP Lenders).

b.  The Prepetition Term Loan Secured Parties have consented to the use of Cash Collateral in accordance with the Revised Budget.  After (A) payment in full in cash of

all DIP Obligations and termination of the DIP Revolving Commitments; (B) the conclusion of the Closing Sales at all Stores; and (C) payment of all fees and expenses of Hilco Merchant Resources, LLC under the Store Closing Agreement and the Store Closing Order, any further use of Cash Collateral shall require the consent of the Prepetition Term Loan Agent or pursuant to an order of the Court entered on not fewer than three (3) Business Days' notice to the Prepetition Term Loan Secured Parties; provided, that absent the prior written consent of the Prepetition Term Loan Agent or pursuant to an order of the Court entered on not fewer than three (3) Business Days' notice to the Prepetition Term Loan Secured Parties, the Debtors shall not be permitted to use Cash Collateral constituting the proceeds of the Prepetition Term Loan Priority Collateral (as set forth in the Prepetition Intercreditor Agreement); provided, further, that the foregoing proviso notwithstanding, the Debtors are authorized to use Cash Collateral constituting the proceeds of the Prepetition Term Loan Priority Collateral solely to satisfy the Prepetition Term Loan Secured Parties' Carve Out contribution commitment amount (in an amount to be agreed upon).

6.  No Obligation for Administrative Expenses and Funding under the DIP Facility. Other than the funding of the Professional Fee Funding Amount (as defined below) pursuant to Paragraph 8(b) of this Final Supplemental Order, the DIP Agent and DIP Lenders shall have no further obligation to advance funds, by readvance of receipts constituting Cash Collateral or otherwise, which would increase the balance of the DIP Revolving Loans in excess of the outstanding balance thereof as of July 13, 2023. The DIP Secured Parties may, but are not obligated, to advance any additional funding increasing the balance of the DIP Obligations in their sole and absolute discretion, with any such funding having the protections set forth in the Final Order and this Final Supplemental Order in favor of the DIP Secured Parties. The DIP Secured

5

Parties shall not be liable for, or be obligated to fund, any administrative expense or claim against any of the Debtors and their estates.

7. <u>Good Faith Pursuant to Section 364(e)</u>  Any credit extended, loans made, and other financial accommodations provided to the Debtors by the DIP Secured Parties, including, without limitation, pursuant to this Final Supplemental Order, have been extended, issued, made, or provided, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facility, the DIP Liens and the DIP Superpriority Claim (defined below) shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final Supplemental Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

8. <u>Carve Out</u>.

    a. <u>Clauses (iii) and (iv)</u> of the definition of the Carve Out in the Final DIP Order are hereby amended by replacing such paragraphs with the below:

> (iii) to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise, the unpaid fees (excluding any success or transaction fees), costs, disbursements and expenses (the "<u>Allowed Professional Fees</u>") incurred or earned by professionals retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Committee pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") for the period from the Petition Date through and including June 30, 2023, in an amount not to exceed $1,340,000 for Debtor Professionals and in an amount not to exceed $756,000 for Committee Professionals;
>
> (iv) Allowed Professional Fees of Debtor Professionals and Committee Professionals incurred or earned after June 30, 2023 (such date, the "<u>Trigger Date</u>") in amounts not to exceed (A) $250,000 for the Debtor Professionals (other than SSG Advisors, LLC ("<u>SSG</u>")); (B) $150,000 for SSG; and (C) $200,000 for Committee Professionals, to the extent allowed at any time, whether by final order, interim order, procedural order, or otherwise

6

(the sum of the amounts set forth in this clause (iv)(A) and (B) being the "Post-Carve Out Trigger Notice Cap");

b. On July 21, 2023, the Debtors shall deposit into the Professional Fee Reserve from Cash Collateral—and if Cash Collateral is insufficient, then the DIP Lenders shall provide a DIP Revolving Loan to the Debtors with the proceeds to be deposited into the Professional Fee Reserve—(A) the amounts set forth in amended clauses (iii) and (iv) of the definition of Carve Out, less (B) amounts already on deposit in the Professional Fee Reserve, less (C) amounts previously received by Professional Persons or held on retainer (the calculated amount, "Professional Fee Funding Amount"). Upon the deposit of the Professional Fee Funding Amount into the Professional Fee Reserve, the portion of the Carve Out Cap included in clauses (iii) and (iv) of the Carve Out is deemed satisfied, and the DIP Secured Parties shall be under no obligation to fund any additional amounts, and the Debtors may not use any Cash Collateral to pay, or reserve for, Allowed Professional Fees of any Professional Person.

c. On the earlier of (x) September 1, 2023 or (y) the payment in full of all DIP Obligations in cash and termination of the DIP Revolving Commitments, the Debtors shall deposit into the Professional Fee Reserve from Cash Collateral: the sum of (1) $251,000 for the accrued and unpaid U.S. Trustee fees; (2) $732,000 for the accrued and unpaid fees of the Clerk of the Court less amounts already funded in the Professional Fee Reserve for, and/or received by, the Clerk[3]; and (3) $25,000 for the Chapter 7 Trustee Carve Out (the sum of clauses (1) – (3), the "Additional Carve Out Funding Amount"). Upon the deposit of the Additional Carve Out Funding Amount into the Professional Fee Reserve, the Carve Out Cap

---

[3] For purposes of the Carve Out, the Clerk of the Court includes Kurtzman Carson Consultants LLC as the Court-appointed claims and noticing agent [Docket No. 76].

as to <u>clauses (i)</u> and <u>(ii)</u> of the Carve Out shall be deemed satisfied; and the DIP Secured Parties shall be under no obligation to fund any additional amounts, and the Debtors may not use any Cash Collateral to pay, or reserve for, any such fees and expenses.

9. <u>Minimum Stub Rent Reserve</u>. The total amount of Stub Rent which needs to be deposited into the Minimum Stub Rent Reserve for purposes of <u>Paragraph 5.29</u> of the Final DIP Order shall be $200,000, which amount has already been funded. For clarity, the interim relief provided at the June Hearing for the additional funding of and/or reserving for the Minimum Stub Rent Reserve through the week ending July 8, 2023 is null and void.

10. <u>Liquidation Sales</u>. The Debtors commenced Closing Sales at all of the Debtors' remaining Stores on or about July 6, 2023, pursuant to the terms of the Store Closing Order. The Debtors are authorized and directed to continue such Closing Sales, with such sales to be conducted by Hilco Merchant Resources, LLC pursuant to the terms of the Store Closing Agreement and the Store Closing Order.[4]

11. <u>Resolution of Landlord Objections</u>. In settlement of all objections raised by parties to the relief sought in the Motion, including those raised by the Objecting Landlords,[5] the parties agree to the following:

---

[4] Capitalized terms used in this Paragraph and not otherwise defined herein shall have the meanings ascribed to them in the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 201] (the "<u>Store Closing Order</u>").

[5] For purposes of this Final Supplemental Order, the term "<u>Objecting Landlords</u>" shall mean: (i) Acadia Realty Limited Partnership; (ii) ARG CRHAGMD001, LLC; (iii) ARG TCFLOKY001, LLC; (iv) Brixmor Operating Partnership L.P.; (v) Federal Realty Investment Trust; (vi) KRE Colonie Owner LLC; (vii) Soundwater Properties, Inc.; (viii) Brookfield Properties Retail, Inc.; (ix) Blumenfeld Development Group, Ltd.; (x) Kite Realty Group, L.P.; (xi) North Conway Plaza, LLC; and (xii) Vickerry Realty Co. Trust.

a. The early termination fee that the Prepetition ABL Secured Parties charged under the Prepetition ABL Loan Documents totaled $1,667,000 (the "ETF"), which amount was rolled up pursuant to the Final DIP Order and is now a DIP Obligation.

b. Without modifying any intercreditor agreements among the DIP Secured Parties, as between the DIP Secured Parties and the Debtors and their estates, the ETF shall be the last out portion of the DIP Obligations.

c. After payment in full in cash of all DIP Obligations (other than the ETF) and all obligations owing under the Consignment Agreement, the DIP Secured Parties shall remit to the Debtors, to hold in trust for the Objecting Landlords solely from cash the DIP Lenders receive on account of repayment of the ETF, 66% of any such cash received (the "Remitted Amount") up to $1 million (the "Remittance Cap").

d. Pursuant to the Final DIP Order, the Debtors shall remit the funds in the Minimum Stub Rent Reserve to all landlords on or before August 4, 2023.

e. On the 15th day of each calendar month (or if not a Business Day, the next Business Day thereafter) commencing on August 15, 2023, the Debtors (or a subsequently appointed trustee or similar fiduciary) shall pay to the Objecting Landlords on a *pro rata* basis (calculated based upon the respective Stub Rent claims owing to each Objecting Landlord) the Remitted Amount received as of such payment date until the earlier of (Y) the total Remitted Amount paid to the Objecting Landlords in the aggregate equals the Remittance Cap, or (Z) the Objecting Landlords' Stub Rent claims are paid in full.

f. The Objecting Landlords shall apply (i) first, any funds they received from the Debtors from the Minimum Stub Rent Reserve and (ii) second, the Remitted Amount, in each case to be applied solely on account of the Objecting Landlords' Stub Rent claims

9

*pro rata* among the Objecting Landlords based upon the respective Stub Rent claims owing to each Objecting Landlord.

   g. If, after payment in full of all amounts owing to the Objecting Landlords for Stub Rent, the Debtors hold any remaining Remitted Amount (the "Remaining Funds"), such Remaining Funds shall be held by the Debtors' estates for distribution to administrative, priority and general unsecured claims pursuant to Paragraph 12.c.ii. below.

   h. Landlords, including the Objecting Landlords, may not seek any additional adequate protection in these cases with respect to Stub Rent while any portion of the DIP Obligations remains outstanding.

12. Challenge Period Expiration. Notwithstanding anything in Paragraph 4.1 or otherwise of the Final DIP Order to the contrary:

   a. the Debtors' Stipulations shall be binding on all parties, persons and entities in all circumstances with respect to those Debtors' Stipulations concerning or relating in any way to (i) the Prepetition ABL Secured Parties, (ii) the Prepetition ABL Obligations—including the repayment of the Prepetition ABL Obligations under the DIP Loan Documents (including the Subject Prepetition ABL Obligations and the Roll-Up), and/or (iii) the Prepetition ABL Liens (the foregoing clauses (i) – (iii), the "Prepetition ABL Matters");

   b. the Challenge Period shall be, and hereby is, terminated for all purposes concerning or relating in any way to any of the Prepetition ABL Matters;

   c. In exchange for such termination and for resolution of all objections to entry of this Final Supplemental Order, the Prepetition ABL Secured Parties, the Committee, and the DIP Secured Parties have agreed to the following:

    i. The condition set forth in <u>Paragraph 5.27</u> of the Final DIP Order was not satisfied as the Committee did not irrevocably waive its rights to assert a Challenge before June 30, 2023 against all of the Prepetition Secured Parties, Prepetition Liens and Prepetition Obligations;

    ii. After (A) payment in full in cash of all DIP Obligations (other than the ETF) and all obligations owing under the Consignment Agreement, and (B) the DIP Secured Parties remit the Remitted Amount (if any) up to the Remittance Cap pursuant to <u>Paragraph 11.c</u> of this Final Supplemental Order, the DIP Secured Parties shall remit to the Debtors' estates solely from cash the DIP Lenders receive on account of repayment of the ETF in excess of the Remittance Cap, 66% of any such cash received. The Debtors shall hold such amounts (<u>plus</u> the Remaining Funds (if any)), for distribution to administrative, priority and general unsecured claims;

    iii. The DIP Secured Parties shall release their liens and claims on any and all the following assets owned by the Debtors and their estates: (A) avoidance actions, (B) commercial tort claims, (C) prepetition intercompany claims, and (D) other causes of action (collectively, the "<u>Causes of Action</u>"), the pursuit of which Causes of Action shall be in the sole discretion of the Committee, with any proceeds from such Causes of Action available for distribution to claims and expenses of the Debtors' estates;

    iv. The DIP Secured Parties release any claim they may have as to the funds in the bank account ending in x5241 held by Debtor Salkovitz Family Trust 2, LLC as of the Petition Date in the amount of $138,489.50, with such funds

available for distribution to claims and expenses of the Debtors' estates amount. Within ten (10) Business Days of entry of this Final Supplemental Order, the DIP Secured Parties, Debtors and the Committee shall determine whether any portion of such funds were transferred postpetition into an account held by any other Debtor and subsequently swept by the DIP Secured Parties (such swept amount, the "SFT2 Funds"). After the parties agree on the amount of SFT2 Funds, the DIP Secured Parties shall remit from Cash Collateral to the Debtors an amount equal to the amount of SFT2 Funds free and clear of the DIP Secured Parties' claims and liens, and such funds shall be available for distribution to administrative, priority and general unsecured claims;

v. The Prepetition ABL Secured Parties and DIP Secured Parties waive any argument that they have a valid, perfected lien on the Debtors' motor vehicles or other rolling stock, and proceeds from the liquidation of such collateral will be available for distribution to claims and expenses of the Debtors' estates;

d. any provision of the Final DIP Order that was subject to or otherwise modified or limited by Paragraph 4.1 of the Final DIP Order shall no longer be subject to or otherwise modified or limited thereby; and

e. notwithstanding anything to the contrary herein, nothing herein shall affect, waive, or impair the Challenge Period with respect to all parties and matters other than Prepetition ABL Matters.

13.     Reservation of Rights of Secured Parties. Each of the DIP Secured Parties and the

Prepetition Term Loan Secured Parties reserves all rights and defenses, including, without

limitation, with respect to any further order or further relief pertaining to the use of Cash Collateral,

the Prepetition ABL Collateral and/or the Prepetition Term Loan Collateral and/or under the

Prepetition Intercreditor Agreement.

14.     Estate Release. In consideration of, *inter alia*, the various financing arrangements

extended by the DIP Secured Parties and their agreements in this Final Supplemental Order as to

the Carve Out and the continued consensual use of Cash Collateral and/or limited funding under

the DIP Facility in accordance with the Revised Budget and this Final Supplemental Order, each

Debtor, on behalf of itself and anyone who may bring a claim on its behalf (including derivative

claims), the Committee, and their respective successors and assigns (collectively, the "Estate

Releasors") hereby forever releases, discharges and acquits the DIP Secured Parties (in any

capacity) and each of their respective successors and assigns, and their respective present and

former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners,

members, managers, attorneys, employees, consultants, advisors and other representatives in their

respective capacities as such (collectively, the "Estate Releasees") of and from any and all claims,

demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and

obligations, of every kind, nature and description, including, without limitation, any so-called

"lender liability" claims or defenses, that Estate Releasors (or any of them) had, have or hereafter

can or may have against any Estate Releasee as of the date hereof, in respect of events that occurred

on or prior to the date hereof with respect to any Debtor or any subsidiary thereof, the DIP Loan

Documents, the Prepetition ABL Loan Documents, the Interim DIP Order, the Final DIP Order,

this Final Supplemental Order (except as to the agreements expressly and for the first time set forth

herein), any other order of the Court and any other financial accommodations made by any DIP Secured Party and/or any other Estate Releasee to any Debtor, including any action or omission of an Estate Releasee in such person's capacity as an officer, director, employee, consultant or agent of, or advisor to, the Debtors or any subsidiary thereof.

15. Amendment to DIP Loan Agreement.

a. Section 1.01 of the DIP Loan Agreement is amended to include the following definition:

> "Supplemental Order" means the *Final Supplemental Order to Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief*.

b. The definition of "**Order**" in the DIP Loan Agreement is amended by deleting the definition set forth therein and replacing it with the following:

> "Orders" means (i) until entry of the Final Order, the Interim Order, (ii) after the entry of the Final Order, the Final Order, or (iii) the Supplemental Order, or the Interim Order, Final Order, and Supplemental Order as the "Orders".

16. Continued Effectiveness of Loan Documents. The terms and conditions of the DIP Loan Documents, including the Final DIP Order, and the Prepetition Documents shall remain in full force and effect as modified by this Final Supplemental Order. Without limiting the generality of the preceding sentence, during the Revised Budget Period, the Debtors shall continue to submit a weekly borrowing base certificate in accordance with the terms and conditions set forth in the DIP Loan Documents. In addition, in accordance with their existing obligations under the Final DIP Order and subject to the terms and conditions thereof, no later than three (3) Business Days after entry of this Final Supplemental Order, the Debtors shall pay all accrued and unpaid: (A) professional fees and expenses of each of the DIP Secured Parties, (B) the Adequate Protection

Professional Fees and Expenses, and (C) amounts owed to ReStore Capital (CTS) LLC under the Consignment Agreement.

17. <u>Consignment Agreement</u>. Notwithstanding anything to the contrary in the Consignment Agreement, (i) for each week, ReStore CTS may deliver an invoice under the Consignment Agreement for amounts due on account of the prior week (which, for the avoidance of doubt, shall be for 92.5% of all Proceeds from the sale of Consigned Inventory (each as defined in the Consignment Assumption Motion))[6] as early as the first Monday thereafter, and (ii) the Debtors shall pay each such invoice within one (1) Business Day after the Debtors' receipt thereof (or as otherwise agreed by ReStore CTS in writing). To the extent all such invoices are timely paid, ReStore CTS shall (i) defer payment of the invoice for the week ending August 19, 2023 until the week ending September 2, 2023 and (ii) provide a $500,000.00 credit to the Debtors to be applied to such invoice.

18. <u>Binding Effect</u>. All of the provisions of this Final Supplemental Order, and any actions taken pursuant thereto, shall be effective and enforceable effective immediately upon entry of this Final Supplemental Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure.

19. <u>General Authorization</u>. The Debtors, the DIP Secured Parties and the Committee are authorized to take any and all actions necessary to effectuate the relief granted in this Final Supplemental Order.

---

[6] "<u>Consignment Assumption Motion</u>" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Assumption of Consignment Agreement, as Amended, (II) Fixing Cure Amount in Connection Therewith, (III) Finding that the Arrangement Under the Consignment Agreement Is a True Consignment or, in the Alternative, Granting Restore a Senior Postpetition Lien and (IV) Granting Related Relief* [Docket No. 24].

20. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Supplemental Order.

**Dated: July 13th, 2023**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**