**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Christmas Tree Shops, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10576 (TMH)<br><br>Jointly Administered<br><br>**Objection Deadline: TBD**<br>**Hearing Date: TBD** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE PURSUANT TO 11 U.S.C. § 1112(b); (II) APPROVING THE CONVERSION PROCEDURES; (III) AUTHORIZING THE TRANSFER OF THE PROFESSIONAL FEE FUNDING AMOUNT INTO A SEGREGATED ATTORNEY TRUST ACCOUNT MAINTAINED BY DEBTORS' COUNSEL; (IV) LIMITING NOTICE OF THE MOTION AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by and through undersigned counsel, hereby move the Court (the "**Motion**"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to sections 105(a), 331 and 1112 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 1017, 1019, 2016, 9006 and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"): (i) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (ii) approving the Conversion Procedures (defined below) including setting a date that is at least thirty (30) days after the Conversion Date (defined below) as the date by which all chapter 11 professionals retained in these cases ("**Professionals**") must file final fee applications

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

161306053v5

(collectively, the "**Final Fee Applications**") and establishing a date for a hearing on such Final Fee Applications; (iii) authorizing the transfer of the Professional Fee Funding Amount (defined below) into a segregated attorney trust account maintained by Debtors' counsel; (iv) liming notice of this Motion to only those parties requesting notice pursuant to Bankruptcy Rule 2002 and (v) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The Debtors commenced these cases with the goal of restructuring their obligations to their creditors through a plan of reorganization.  When the Debtors realized that this path was not feasible, the Debtors quickly pivoted to locating a going concern buyer.  In June, the Debtors defaulted under the Final DIP Order, which prompted a transition to an orderly liquidation via going out of business sales at the Debtors' stores starting on July 6, 2023, which Closing Sales will be completed on August 12, 2023.

2.     On August 9, 2023, the DIP Agent delivered to the Debtors a Notice of Event of Default, DIP Termination Event and Carve Out Trigger Notice under the Final DIP Order (the "**August Default Letter**").  The Debtors dispute that they are in default and are in discussions with the DIP Lenders regarding the August Default Letter including whether pursuant to the August Default Letter the Debtors are no longer permitted to access to cash collateral to fund the continued administration of these cases.  There are budgeted obligations that have been incurred during the Closing Sales, including payroll and sales tax, that are budgeted to be paid next week and it is critical that these amounts be paid.

3.     With no ongoing business operations as of August 12, 2023 and with uncertainty regarding the Debtors' ability to use cash collateral to fund the continued administration of these cases, the Debtors have no choice but to seek conversion of these cases.  While the Debtors are

disappointed in this outcome, they believe that there is no better alternative and that under these circumstances, conversion of these chapter 11 cases to chapter 7 is in the best interests of their estates and creditors.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicate for the relief sought herein are sections 105(a), 331 and 1112 of title 11 of the Bankruptcy Code as supplemented by Bankruptcy Rules 1017, 1019, 2016, 9006, and 9013 and Local Rule 2002-1(f).

6. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

7. On May 5, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankrupt-cy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

8. On May 17, 2023, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "**Committee**") [Dkt. No. 100].

9. The Debtors operate a chain of brick-and-mortar home goods retail stores that specializes in the sale of year-round seasonal goods at value pricing. The Debtors' stores offer

3

a variety of products including home décor, bed and bath products, kitchen and dining products, furniture, food and seasonal products. As of the Petition Date, the Debtors operated 82 stores in 20 states.

10. A description of the Debtors and their business, and the facts and circumstances sur-rounding the Chapter 11 Cases are set forth in greater detail in the *Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 12] and the *Supplemental Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 23].

11. On May 31, 2023, the Court entered the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving closing Sales Free and Clear of all Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Dkt No. 201] (the "**Store Closing Order**"). Among other things, pursuant to the Store Closing Order, the Debtors retained Hilco Merchant Resources, LLC ("**HMR**") as a consultant to assist the Debtors wind down an initial ten (10) underperforming stores, conduct going-out-of-business sales of the inventory at those stores, and institute certain store closing procedures related thereto. The Store Closing Order also authorized the Debtors to begin going-out-of-business sales at additional store locations, including initiating sales at all of the Debtors' remaining stores, upon notice required by the Store Closing Order. *See Store Closing Order*, ¶¶ 6, 37, 38.

12. On June 5, 2023, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing*

*Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 229] (the "**Final DIP Order**").

13. The first DIP Termination Event (as defined in the Final DIP Order) occurred on June 9, 2023. On June 21, 2023, the DIP Agent (as defined in the Final DIP Order) delivered to the Debtors a Notice of Event of Default, DIP Termination Event and Carve Out Trigger Notice under the Final DIP Order (the "**June DIP Notice**").

14. Subsequent to the June DIP Notice, the Debtors, the DIP lenders, and the Committee worked together to resolve issues related to a budget to allow the Debtors to remain in their Chapter 11 Cases to maximize value for their estates and creditors. The parties' agreement, as approved by the Court, was memorialized in the *Final Supplemental Order to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Super-priority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 431] (the "**Supplemental DIP Order**").

15. Among other things, pursuant to the Supplemental DIP Order, the Debtors are authorized to pay certain expenses strictly in accordance with the approved budget attached to the Supplemental DIP Order (as attached as Exhibit 1 to the Supplemental DIP Order, the "**DIP Budget**"). Furthermore, the Supplemental DIP Order amended the definition of "Carve Out" from the Final DIP Order and provided for an Additional Carve Out Funding Amount.

16. Pursuant to the Final DIP Order and Supplemental DIP Order, the Debtors have funded the amounts set forth in the DIP Budget for payment of the allowed chapter 11 fees and expenses of professionals retained by the Debtors and the Committee pursuant to sections 327,

328, 363, or 1103 of the Bankruptcy Code(the "**Professional Fee Funding Amount**") into the Professional Fee Reserve (as defined in the Supplemental DIP Order), which is a segregated account maintained by the Debtors.

17. Concurrent with the DIP Notice and the Debtors' request for approval of the Supplemental DIP Order, on June 29, 2023, the Debtors filed the *Notice of Occurrence of DIP Termination Event and Objection Deadline with Respect to Debtors' Authorization to Conduct Liquidation Sales at all of the Debtors' Stores* [Dkt. No. 322] (the "**Supplemental Store Closing Notice**"). Pursuant to the Supplemental Store Closing Notice, the Debtors informed parties that, in accordance with the terms of the Store Closing Order, the Debtors were going to conduct going-out-of-business sales (the "**Closing Sales**") at all of its remaining store locations (collectively, the "**Closing Stores**"), beginning on July 6, 2023. *See Supplemental Store Closing Notice*, Exhibit A (identification of Closing Store locations).

18. The Debtors' Closing Sales are scheduled to conclude at the final remaining locations on or before August 12, 2023. This final day of Closing Sales has been widely publicized both on the Debtors' website and in the news. *See* [Christmas Tree Shops announces 'Last Day' of business before all stores close - CBS Boston (cbsnews.com)](#) (last accessed August 7, 2023); . [Christmas Tree Shops: All locations set to close. Here's when (usatoday.com)](#) (last accessed August 7, 2023).

19. On August 9, 2023, the DIP Agent delivered to the Debtors the August DIP Notice. The Debtors dispute that they are in default and are in discussion with the DIP Lenders regarding the August Default Letter including whether pursuant to the August Default Letter the Debtors are no longer permitted to access to cash collateral to fund the continued administration of these cases. There are budgeted obligations that have accrued during the Closing Sales,

including payroll and sales tax, that are supposed to be paid next week and it is critical that these amounts be paid. With no ongoing business operations as of August 12, 2023 and with uncertainty regarding the Debtors' ability to use cash collateral to fund the continued administration of these cases, the Debtors have no option but to convert these Chapter 11 Cases to cases under chapter 7.

## RELIEF REQUESTED

20. By this Motion, the Debtors seek entry of the Proposed Order, pursuant to sections 105(a), 331 and 1112 of the Bankruptcy Code, Bankruptcy Rules 1017, 1019, 2016, 9006 and 9013, and Local Rule 2002-1(f) (i) converting their Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; (ii) authorizing the transfer of the Professional Fee Funding Amount into a segregated attorney trust account maintained by Debtors' counsel and (iii) liming notice of this Motion to only those parties requesting notice pursuant to Bankruptcy Rule 2002.

21. In addition, the Debtors respectfully request that the Court approve the following procedures in connection with the conversion of these Chapter 11 Cases to chapter 7 of the Bankruptcy Code (the "**Conversion Procedures**"):

(a) **Professional Fees.** Professionals shall submit Final Fee Applications in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders of this Court by no later than thirty (30) days after the Conversion Date (the "**Final Fee Application Deadline**"). Objections, if any, to the Final Fee Applications shall be filed and served by no later than twenty-one (21) days after the Final Fee Application Deadline. A hearing to consider all timely filed Final Fee Applications should be held on a date convenient to the Court that is at least sixty-five (65) days after the Conversion Date.

(b) **Books and Records.** As soon as reasonably practicable, but in no event more than fourteen (14) days after the appointment of the chapter 7 trustee, the Debtors shall turn over or provide access to the chapter 7 trustee the books and records of the Debtors in the Debtors' possession and control, as required by Bankruptcy Rule 1019(4). For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the chapter 7 trustee, or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

    (c)    **Schedule of Unpaid Debts.** Within fourteen (14) days of the Conversion Date, the Debtors shall file a schedule of unpaid debts incurred after commencement of the Debtors' Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(5)(A) (as modified herein).

    (d)    **Final Report**. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the chapter 7 trustee a final report and account in accordance with Bankruptcy Rule 1019(5)(A).

    (e)    **Claims**. Within fourteen (14) days of the Conversion Date, Kurtzman Carson Consultants LLC ("**KCC**") shall (i) forward to the Clerk of this Court an electronic version of all imaged claims; (ii) upload the consolidated creditor mailing list into CM/ECF and, notwithstanding Local Rule 2002-1(f)(x), file the consolidated matrix in each jointly administered case in lieu of a separate matrix for each Debtor; and (iii) docket a final claims register in the Debtors' Chapter 11 Cases.

## BASIS FOR RELIEF REQUESTED

**A.**    **Conversion of Debtors' Chapter 11 Cases to Chapter 7 of the Bankruptcy Code is a Matter of Right.**

22.    Section 1112(a) of the Bankruptcy Code governs the conversion of chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Specifically, section 1112(a) provides that:

> (a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—
> (1) the debtor is not a debtor in possession;
> (2) the case originally was commenced as an involuntary case under this chapter; or
> (3) the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C. § 1112(a). Because subdivisions (1), (2) and (3) of section 1112(a) of the Bankruptcy Code are inapplicable here, the Debtors may convert these cases to cases under chapter 7 of the Bankruptcy Code as a matter of right. *See In re Dieckhaus Stationers of King of Prussia Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) ("[Section 1112(a)] by its terms gives the debtor an absolute right to convert, unless the case is governed by one of the enumerated exceptions."); *In re Schuler*, 119 B.R. 191, 192 (Bankr. W.D. Mo. 1990) (same).

161306053v5

23. In addition to their absolute legal right to convert these Chapter 11 Cases to chapter 7, the Debtors believe that converting these cases is in the best interest of the Debtors' estates and creditors. The Closing Sales, and thus the Debtors' going concern business, will be concluded by August 12, 2023. Moreover, while the Debtors dispute that they are in default, there is uncertainty regarding the effect of the August Default Letter including whether pursuant to the August Default Letter the Debtors are no longer permitted to access to cash collateral to fund the continued administration of these cases. Accordingly, the Debtors believe there is no reasonable likelihood that the Debtors could confirm and consummate a chapter 11 plan, and respectfully submit that a chapter 7 trustee will be able to more efficiently and effectively bring these cases to their conclusion.

**B.     The Conversion Procedures and Other Related Relief Should be Approved.**

24. Pursuant to Local Rule 2002-1(f)(xi), "[u]pon conversion of a chapter 11 case to a chapter 7 case, if there are more than 200 creditors, the claims agent appointed in the chapter 11 case shall . . . submit a termination order." *See* DEL. BANKR. L.R. 2002-1(f)(xi). The Debtors respectfully request that any Order approving this Motion also provide for the termination of KCC's services as claims and noticing agent in these Chapter 11 Cases.

25. The Debtors also believe that the Conversion Procedures are appropriate under the facts of these Chapter 11 Cases, consistent with the requirements of the Bankruptcy and Local Rules and should be approved.

**C.     The Debtors' Should Be Authorized to Transfer the Professional Fee Funding Amount to a segregated attorney trust account maintained by Debtors' Counsel**

26. Pursuant to the Final DIP Order and Supplemental DIP Order, the Debtors have funded the Professional Fee Funding Amount into the Professional Fee Reserve, which is a segregated account maintained by the Debtors. While the Debtors maintain that the language of

the Final DIP Order and Supplemental DIP Order are clear that these funds have been carved out to pay the fees and expenses of Professional Persons accrued in these cases, the Debtors are requesting that any order approving the Motion authorize the Debtors to transfer the Professional Fee Funding Amount to a segregated attorney trust account maintained by Debtors' counsel and that Debtors' counsel be authorized and directed to retain the Professional Fee Funding Amount for distribution to Professional Persons pursuant to the interim compensation order (Docket No. 258) and any orders approving the Final Fee Applications. The Debtors further request that the conversion date (the "**Conversion Date**") be one business day after the Professional Fee Funding Amount has been transferred to a segregated bank account maintained by Debtors' counsel. The Debtors shall file on the docket of these Chapter 11 Cases a notice of Conversion Date within one business day of the Conversion Date.

**D.     Notice of this Motion Should be Limited to Parties on the 2002 List.**

27.     While Bankruptcy Rule 2002(a)(4) requires that 21 days' notice of a hearing on the dismissal or conversion of a chapter 11 case be provided to, among others, all creditors by mail, FED. R. BANKR. P. 2002(a)(4) (emphasis added); *see also* DEL. BANKR. L.R. 2002-1(b), the Debtors request that any order approving this Motion limited notice of the Motion to the parties requesting notice pursuant to Bankruptcy Rule 2002. There is ample cause for limiting notice.

28.     First, as set forth above, the Debtors have the right, under the Bankruptcy Code, to convert their Chapter 11 Cases to cases under chapter 7. Therefore, it is the Debtors' position that, even if a creditor wanted to object to the conversion, it would have no basis to successfully challenge the relief sought by this Motion.

29.     Second, given the publicity to date in these cases, it is highly likely that creditors beyond those who are on the Bankruptcy Rule 2002 notice list will learn of the relief sought in this

Motion. Additionally, the Debtors will post a copy of this Motion the website maintained by the Debtors' Claims and Noticing Agent, KCC, at www.kccllc.net/christmastreeshops.

30. Finally, the Debtors simply do not have the funds necessary to serve the entire creditor matrix, which contains approximately 29,000 parties, with notice of this Motion. It would cost the Debtors' estates approximately $35,000 to serve notice of this Motion upon the entire creditor matrix, in contrast to approximately $600 to serve notice of this Motion upon parties requesting notice pursuant to Bankruptcy Rule 2002.

31. The Debtors respectfully assert that, with insufficient funds to serve notice of this Motion on the creditor matrix, coupled with the Debtors' right to convert these cases to chapter 7 and the broad publicity surrounding the filing of these cases and the Store Closing Sales, the Court should grant the request to limit notice of this Motion to only those parties requesting notice pursuant to Bankruptcy Rule 2002.

## **NOTICE**

32. A copy of this Motion (and any order approving the same) will be served upon: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the DIP Agent; (c) counsel to Eclipse Business Capital LLC; (d) counsel to Pathlight Capital, LP; (e) counsel for Bed, Bath and Beyond, Inc.; (f) counsel for ReStore Capital (CTS), LLC; (g) counsel for the Committee; and (h) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no other or further notice is necessary including providing notice of this Motion (and any order approving the same) on the creditor matrix.

33. A copy of this Motion is available on (a) the Court's website, at www.deb.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, KCC, at www.kccllc.net/christmastreeshops .

**WHEREFORE**, the Debtors respectfully request that this Court enter the proposed order, substantially in the form attached hereto as **Exhibit A,** and granting such further relief as the Court deems just and proper.

Dated: August 10, 2023
      Wilmington, Delaware

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

By: */s/ Evelyn J. Meltzer*
Evelyn J. Meltzer (Del. Bar No. 4581)
Marcy J. McLaughlin Smith (Del. Bar No. 6184)
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, Delaware 19801
Tel: (302) 777-6500
Fax: (302) 421-8390
Email: evelyn.meltzer@troutman.com
      marcy.smith@troutman.com

-and-

**MURPHY & KING, PROFESSIONAL CORPORATION**
Harold B. Murphy (admitted *pro hac vice*)
Christopher M. Condon (admitted *pro hac vice*)
28 State Street, Suite 3101
Boston, Massachusetts 02109
Tel: (617) 423-0400
Email: hmurphy@murphyking.com
      ccondon@murphyking.com

*Attorneys for Debtors and Debtors in Possession*

161306053v5