# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHRISTMAS TREE SHOPS, LLC, *et al.*,[1]<br><br>Debtors | Chapter 7<br><br>Case No. 23-10576 (TMH)<br><br>Jointly Administered<br><br>**Proposed Objection Deadline: At the Hearing**<br>**Proposed Hearing Date: August 31, 2023 at 11:00 a.m. (ET)** |

## CHAPTER 7 TRUSTEE'S OMNIBUS MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY; AND (II) GRANTING RELATED RELIEF

George L. Miller, chapter 7 trustee (the "Trustee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby files this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") under sections 105(a) and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code") and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing the Trustee to reject the remaining unexpired leases of nonresidential property identified on Schedule 1 to the Proposed Order (each a "Lease" and collectively, the "Leases") as of the Rejection Date (as defined herein), and (ii) granting related relief. In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Pursuant to Local Rule 9013-1(f), the Trustee

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640).

1

consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The basis for relief requested herein are sections 105(a) and 365 of the Bankruptcy Code as supplemented by Bankruptcy Rules 6006 and 6007.

## BACKGROUND

3. On May 5, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4. On May 17, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") [Dkt. No. 100].

5. On August 16, 2023, the Chapter 11 Cases were converted to Chapter 7 pursuant to the *Order (I) Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. 1112(b); (II) Approving the Conversion Procedures; (III) Authorizing the Transfer of the Professional Fee Funding Amounts Into a Segregated Attorney Trust Account Maintained by Debtors' Counsel; (IV) Limiting Notice of the Motion and (V) Granting Related Relief* [Docket No. 23-10576] (the "Conversion Order"). George L. Miller was appointed as the chapter 7 trustee by the U.S. Trustee.

6. The Debtors operated a chain of brick-and-mortar home goods retail stores that specializes in the sale of year-round seasonal goods at value pricing. The Debtors' stores offered a variety of products including home décor, bed and bath products, kitchen and dining products,

2

DOCS_DE:244375.4 57097/001

furniture, food and seasonal products. As of the Petition Date, the Debtors operated 82 stores in 20 states.

7. A description of the Debtors and their business, and the facts and circumstances surrounding the Chapter 11 Cases are set forth in greater detail in the *Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 12] and the *Supplemental Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 23].

8. On the Petition Date, Christmas Tree Shops, LLC ("CTS") held leasehold interests as a tenant or subtenant under approximately 84 leases, of varying terms and lengths, including leases of CTS store locations.

9. CTS's leases included eleven (11) subleases with BBBy for store locations leased by Bed Bath & Beyond, Inc., CTS's former owner ("BBBy"), from third-party landlords (the "BBBy Subleases"). BBBy is a debtor in a jointly administered chapter 11 case in the United States Bankruptcy Court for the District of New Jersey (Case No. 23-13359-VFP) and filed a motion to reject, among others, the master leases for properties which are subleased or assigned to, or by other agreement occupied by, CTS pursuant to the BBBy Subleases. On May 17, 2023, the Bankruptcy Court for the District of New Jersey entered an order in that case providing that any master lease relating to a BBBy Sublease would not be deemed rejected until the date that CTS has vacated the premises of the property subject to the BBBy Sublease. Six (6) of the Closing Stores subject to this Motion are leased from BBBy pursuant to BBBy Subleases.

10. On May 31, 2023, the Court entered the *Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving closing Sales Free and Clear of all Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Dkt No. 201] (the "Store Closing Order"). Among other things, pursuant to the Store Closing

3

Order, the Debtors retained Hilco Merchant Resources, LLC as a consultant to assist the Debtors wind down an initial ten (10) underperforming stores, conduct going-out-of-business sales of the inventory at those stores, and institute certain store closing procedures related thereto. The Store Closing Order also authorized the Debtors to begin going-out-of-business sales at additional store locations, including initiating sales at all of the Debtors' remaining stores, upon notice required by the Store Closing Order. *See Store Closing Order*, ¶¶ 6, 37, 38.

11. On June 5, 2023, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 229] (the "Final DIP Order").

12. Following entry of the Final DIP Order, one or more DIP Termination Events (as defined in the Final DIP Order) occurred under the Final DIP Order, with the first DIP Termination Event having occurred on June 9, 2023.

13. On June 21, 2023, the DIP Agent (as defined in the Final DIP Order) delivered to the Debtors a *Notice of Event of Default, DIP Termination Event and Carve Out Trigger Notice under the Final DIP Order* (the "DIP Notice").

14. Subsequent to the DIP Notice, the Debtors, the DIP lenders, and the Committee worked together to resolve issues related to a budget to allow the Debtors to remain in their chapter 11 bankruptcy cases to maximize value for their estates and creditors. The parties' agreement, as approved by the Court, was memorialized in the *Final Supplemental Order to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to*

4

*Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 431] (the "Supplemental DIP Order").

15. Concurrent with the DIP Notice and the Debtors' request for approval of the Supplemental DIP Order, on June 29, 2023, the Debtors filed the *Notice of Occurrence of DIP Termination Event and Objection Deadline with Respect to Debtors' Authorization to Conduct Liquidation Sales at all of the Debtors' Stores* [Dkt. No. 322] (the "Supplemental Store Closing Notice"). Pursuant to the Supplemental Store Closing Notice, the Debtors informed parties that, in accordance with the terms of the Store Closing Order, the Debtors were going to conduct going-out-of-business sales at all of its remaining store locations (collectively, the "Closing Stores"), beginning on July 6, 2023. *See* Supplemental Store Closing Notice, Exhibit A (identification of Closing Store locations).

16. On July 12, 2023, the Court entered the *Order Extending the Time Within Which the Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property* [Dkt. No. 392], extending the time, pursuant to section 365(d)(4) of the Bankruptcy Code, for the Debtors to assume or reject the Debtors' leases that are not the subject of this Motion (or have not previously been assumed or rejected) to the earlier of (i) December 1, 2023 and (ii) the date of entry of an order confirming a plan in the Chapter 11 Cases.

17. The rejected Leases include 49 of the Debtors' leases for the Closing Stores. The going-out-of-business sales at the Closing Stores related to the Leases to be rejected pursuant to this Motion were concluded by August 12, 2023, and the Debtors have vacated the applicable Closing Stores on or before August 14, 2023. In connection with the going-out-of-business sales,

5
DOCS_DE:244375.4 57097/001

the Trustee is informed that the Debtors or their agents removed all of the inventory located at the relevant 49 Closing Stores along with other personal property. There may still be some furniture, fixtures, equipment, and other miscellaneous personal property located on the premises at the time the Debtors vacated the Closing Stores related to the rejected Leases, which is of no value to the Debtors' estates.

## RELIEF REQUESTED

18. The Trustee requests entry of the Proposed Order, in substantially the form attached hereto as **Exhibit A**, authorizing the Trustee to (i) reject the Leases as of August 31, 2023 (the "Rejection Date"); (ii) abandon certain equipment, fixtures, furniture or other miscellaneous personal property that may be located at the premises leased pursuant to the Leases which is not otherwise transitioned to another location (collectively, the "Abandoned Property"); and (iii) granting related relief.

## BASIS FOR RELIEF

19. A trustee or debtor, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). This section is intended "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Exide Techs.,* 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization").

20. Courts use the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate, in determining whether

6

the rejection of an unexpired nonresidential lease should be authorized. *See Grp. Of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); *in re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test.") *accord In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

21. The Leases provide no benefit to the Debtors' estates or these chapter 7 cases. By rejecting the Leases, the Trustee will save substantial rent amounts and associated costs including, without limitation, real property taxes, utilities, insurance, and other related charges which the Debtors' estate may be obligated to pay in connection with the Leases. Moreover, the Trustee has determined in his business judgment that such costs do not constitute a value-maximizing use of estate assets and that the costs of the Leases exceed any marginal benefits that could potentially be achieved from assignments or subleases of the Leases. Accordingly, the Trustee has concluded that rejection of the Leases is in the best interest of the Debtors' estates, their creditors, and parties in interest.

22. It is the Trustee's understanding that the Debtors vacated the Closing Stores prior to the Conversion Order. Absent rejection, the Debtors' estates may incur administrative expense claims for postpetition rent due under the Leases even though the Debtors ceased operations at, and are no longer are in possession of, the Closing Stores.

23. In applying the business judgement standard, bankruptcy courts defer to a debtor's decision to assume or reject leases. *See*, *e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (affirming the rejection of a service agreement as sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would

7

benefit the debtors' estate); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. Del. 2000) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the produce of bad faith, or whim or caprice.")).

24. Authorizing the rejection of the Leases as of the Rejection Date is consistent with prior rulings of courts in this and other circuits, which have held that a bankruptcy court may authorize the retroactive rejection of a nonresidential real property lease if the balance of equities favors such a retroactive rejection. *See In Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed as of the date of the motion or the date the premises were surrendered).

25. Here, the balance of the equities favors rejection of the Leases as of the Rejection Date, which will allow the Debtors' estates to avoid the unnecessary economic burden of paying rent for the property beyond the end of August.

26. Section 554(a) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also In re Wilson*, 94 B.R. 886, 888 (Bankr. E.D. Va. 1989) ("It is well settled, however, that a trustee is not obligated to accept onerous or unprofitable property surrendered as part of the estate, and may abandon property that is 'burdensome' or 'of inconsequential value and benefit' under § 554 of the Code.") (internal citations omitted). The right to abandon property is virtually unfettered, unless: (a) abandonment of the property will contravene laws designed to protect public health and safety; or

8

(b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

27. The Trustee submits that any Personal Property left at any of the Closing Stores is of inconsequential value to the Debtors' estates, or the costs to the Trustee of retrieving, marketing, and reselling the Personal Property will exceed the recoveries, if any, that the Trustee could reasonably obtain in exchange for such property. Accordingly, the Trustee has determined, in the exercise of his sound business judgment that abandonment of any Personal Property will be in the best interest of the Debtors and their estates.

## RESERVATION OF RIGHTS

28. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Trustee's rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Trustee's rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Trustee that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Trustee expressly reserves his rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Trustee's rights to subsequently dispute such claim.

9

# NOTICE

29. Notice of this Motion will be given to: (a) the U.S. Trustee; (b) counsel for the DIP Agent; (c) counsel to Eclipse Business Capital LLC; (d) counsel to Pathlight Capital, LP; (e) counsel for Bed, Bath and Beyond, Inc.; (f) counsel for ReStore Capital (CTS), LLC; (g) the landlords that are counterparties under the Leases; and (h) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Trustee respectfully submits that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, and grant such other and further relief.

| | |
|---|---|
| Dated: August 24, 2023<br>Wilmington, Delaware | PACHULSKI STANG ZIEHL & JONES LLP<br><br>*/s/ Colin R. Robinson*<br>Bradford J. Sandler (DE Bar No. 4142)<br>Colin R. Robinson (DE Bar No. 5524)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward A. Corma (DE Bar No. 6718)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: bsandler@pszjlaw.com<br>       crobinson@pszjlaw.com<br>       pkeane@pszjlaw.com<br>       ecorma@pszjlaw.com<br><br>*Proposed Counsel to George L. Miller, Chapter 7 Trustee* |