# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHRISTMAS TREE SHOPS, LLC, *et al.*,[1]<br><br>Debtors | Chapter 7<br><br>Case No. 23-10576 (TMH)<br><br>Jointly Administered<br><br>**Proposed Objection Deadline**: At the Hearing<br>**Proposed Hearing Date**: August 31, 2023 at 11:00 a.m. (ET) |

**MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, PURSUANT TO SECTIONS 105, 363, AND 365 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, AND 6006, AND LOCAL RULE 6004-1, FOR ENTRY OF AN ORDER AUTHORIZING SALE AND ASSUMPTION AND ASSIGNMENT OF SOMERVILLE, MA LEASE (STORE #7028) TO RAYMOURS FURNITURE COMPANY, INC.**

George L. Miller, chapter 7 trustee (the "Trustee"), to the estates of the above-captioned debtors (the "Debtors"), hereby files this motion (the "Motion") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (A) approving the sale and assumption and assignment, of all of the Debtors' right, title and interest in and to the real property lease agreement dated December 29, 2003, by and between FR Assembly Square, LLC (successor-in-interest to the original landlord, Assembly Square Limited Partnership) (the "Landlord") and Debtor Christmas Tree Shops, LLC (f/k/a Christmas Tree Shops, Inc.) ("CTS") for certain premises (the "Premises" or "Store 7028") located at Assembly Square Marketplace, 133 Middlesex Avenue, Somerville, MA (as amended and assigned from time to time, the "Lease")

---

[1] The Debtors in these chapter 7 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640).

to Raymours Furniture Company, Inc. (the "Assignee" or "Buyer"), free and clear of all liens, claims and interests, (B) fixing the amount of and authorizing Assignee's payment of the allowed amount of cure costs due to the Landlord under the Lease as set forth in the Assignment Agreement, and (C) granting related relief. <u>Contemporaneously with the filing of this Motion, the Trustee has filed a motion to shorten notice seeking an expedited hearing on the Motion at the currently scheduled hearing on August 31, 2023 at 11:00 a.m. (ET)</u>. In further support of the Motion, the Trustee respectfully states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Trustee confirms his consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Motion are sections 105, 363, and 365 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule of Bankruptcy Practice and Procedure 6004-1 (the "Local Rules").

**Background**

4. On May 5, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5. On May 17, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") [Dkt. No. 100].

6. On August 16, 2023, the Chapter 11 Cases were converted to Chapter 7 pursuant to the Order (I) Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code Pursuant to 11 U.S.C. 1112(b); (II) Approving the Conversion Procedures; (III) Authorizing the Transfer of the Professional Fee Funding Amounts Into a Segregated Attorney Trust Account Maintained by Debtors' Counsel; (IV) Limiting Notice of the Motion and (V) Granting Related Relief [Docket No. 23-10576] (the "Conversion Order"). George L. Miller was appointed as the chapter 7 trustee by the U.S. Trustee.

7. The Debtors operated a chain of brick-and-mortar home goods retail stores that specializes in the sale of year-round seasonal goods at value pricing. The Debtors' stores offered a variety of products including home décor, bed and bath products, kitchen and dining products, furniture, food and seasonal products. As of the Petition Date, the Debtors operated 82 stores in 20 states.

8. A description of the Debtors and their business, and the facts and circumstances surrounding the Chapter 11 Cases are set forth in greater detail in the *Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 12] and the *Supplemental Declaration of Marc Salkovitz, Executive Chairman, in Support of First Day Relief* [Dkt. No. 23].

9. On the Petition Date, Christmas Tree Shops, LLC ("CTS") held leasehold interests as a tenant or subtenant under approximately 84 leases, of varying terms and lengths, including leases of CTS store locations.

10. CTS's leases included eleven (11) subleases with BBBy for store locations leased by Bed Bath & Beyond, Inc., CTS's former owner ("BBBy"), from third-party landlords (the "BBBy Subleases"). BBBy is a debtor in a jointly administered chapter 11 case in the United States Bankruptcy Court for the District of New Jersey (Case No. 23-13359-VFP) and filed a motion to reject, among others, the master leases for properties which are subleased or assigned to, or by other agreement occupied by, CTS pursuant to the BBBy Subleases. On May 17, 2023, the Bankruptcy Court for the District of New Jersey entered an order in that case providing that any master lease relating to a BBBy Sublease would not be deemed rejected until the date that CTS has vacated the premises of the property subject to the BBBy Sublease. Six (6) of the Closing Stores subject to this Motion are leased from BBBy pursuant to BBBy Subleases.

11. On May 31, 2023, the Court entered the Final Order (I) Authorizing, on a Final Basis, the Debtors to Assume the Store Closing Agreement, (II) Authorizing and Approving closing Sales Free and Clear of all Liens, Claims, and Encumbrances, and (III) Granting Related Relief [Dkt No. 201] (the "Store Closing Order"). Among other things, pursuant to the Store Closing Order, the Debtors retained Hilco Merchant Resources, LLC as a consultant to assist the Debtors wind down an initial ten (10) underperforming stores, conduct going-out-of-business sales of the inventory at those stores, and institute certain store closing procedures related thereto. The Store Closing Order also authorized the Debtors to begin going-out-of-business sales at additional store locations, including initiating sales at all of the Debtors' remaining stores, upon notice required by the Store Closing Order. See Store Closing Order, ¶¶ 6, 37, 38.

12. On June 5, 2023, the Court entered the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative

Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief [Dkt. No. 229] (the "Final DIP Order").

13. Following entry of the Final DIP Order, one or more DIP Termination Events (as defined in the Final DIP Order) occurred under the Final DIP Order, with the first DIP Termination Event having occurred on June 9, 2023.

14. On June 21, 2023, the DIP Agent (as defined in the Final DIP Order) delivered to the Debtors a *Notice of Event of Default, DIP Termination Event and Carve Out Trigger Notice under the Final DIP Order* (the "DIP Notice").

15. Subsequent to the DIP Notice, the Debtors, the DIP lenders, and the Committee worked together to resolve issues related to a budget to allow the Debtors to remain in their chapter 11 bankruptcy cases to maximize value for their estates and creditors. The parties' agreement, as approved by the Court, was memorialized in the *Final Supplemental Order to the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Certain Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Dkt. No. 431] (the "Supplemental DIP Order").

16. Concurrent with the DIP Notice and the Debtors' request for approval of the Supplemental DIP Order, on June 29, 2023, the Debtors filed the *Notice of Occurrence of DIP Termination Event and Objection Deadline with Respect to Debtors' Authorization to Conduct Liquidation Sales at all of the Debtors' Stores* [Dkt. No. 322] (the "Supplemental Store Closing Notice"). Pursuant to the Supplemental Store Closing Notice, the Debtors informed parties that,

in accordance with the terms of the Store Closing Order, the Debtors were going to conduct going-out-of-business sales at all of its remaining store locations (collectively, the "Closing Stores"), beginning on July 6, 2023. *See* Supplemental Store Closing Notice, Exhibit A (identification of Closing Store locations).

17. On July 12, 2023, the Court entered the *Order Extending the Time Within Which the Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property* [Dkt. No. 392], extending the time, pursuant to section 365(d)(4) of the Bankruptcy Code, for the Debtors to assume or reject the Debtors' leases that are not the subject of this Motion (or have not previously been assumed or rejected) to the earlier of (i) December 1, 2023 and (ii) the date of entry of an order confirming a plan in the Chapter 11 Cases.

18. The Trustee is in the process of rejecting all remaining real property leases and has filed an omnibus motion to reject all such leases. *See* Docket No. 555. The Court has scheduled a hearing on that motion on August 31, 2023 at 11:00 a.m. (ET). *See* Docket Nos. 557, 561. Shortly after the Conversion Order, the Trustee was approached by the Buyer as it was interested in a sale transaction providing for an assumption and assignment and payment of cure costs for the Lease of Store 7028.

Relief Requested

19. The Trustee seeks entry of the Order, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1, (A) approving the sale and assumption and assignment of the Lease of Store 7028 with Landlord to Assignee free and clear of all liens, claims and interests, (B) fixing the amount of and authorizing Assignee's payment of the allowed amount of cure costs due to the Landlord under the Lease as set forth in the Assignment Agreement, and (C) granting related relief.

The Sale

20.     The Trustee believes it is in the best interest of the Debtors' estates and all parties in interest and will maximize value for the estates to complete the Sale under the terms of the Assignment Agreement.

21.     The key terms of the Purchase Agreement are summarized below.[2]

| Provision | Summary Description |
|---|---|
| Buyer | RAYMOURS FURNITURE COMPANY, INC. ("Assignee" or "Buyer") |
| Seller | George L. Miller, chapter 7 trustee (the "Trustee" or "Assignor") to the estates of the Debtors |
| Landlords | FR Assembly Square, LLC |
| Purchase Price | $550,000 comprised of (a) $100,000.00 in immediately available funds wired to the account specified by Assignor at the Closing (as defined below), and (b) up to $450,000.00 to the Landlord to pay the Allowed Cure Costs (the "Cure Cost Cap") in immediately available funds wired to the account specified by Landlord payable when the Cure Costs becomes Allowed Cure Costs.<br><br>Assignment Agreement, section 2. |
| Purchased Assets | Trustee's and CTS' right, title, and interest in and to the Lease.<br><br>Assignment Agreement, section 1(a). |

---

[2] The descriptions below only summarize certain provisions of the Assignment Agreement, and the terms of the Assignment Agreement control in the event of any inconsistency.

| Provision | Summary Description |
|---|---|
| Assumed Liabilities | Except to the extent otherwise agreed in writing by the Landlord, or as set forth by the Sale Order, Assignee shall assume all of the terms, conditions and covenants of the Lease as tenant under the Lease, and agrees to assume and undertake to pay, perform and discharge all of Assignor's obligations and duties with respect to such Lease that accrue on or after the Effective Date. If Assignor has already paid rent for the month in which the Effective Date occurs, Assignee and Assignor shall adjust on a per diem basis for the same at Closing. In addition, the Sale Order shall state that any and all obligations arising under the Lease with are attributable to the period prior to the Effective Date, other than Cure Costs identified in (and to be paid pursuant to) paragraph 1(b) above, shall be the obligation of Assignor. Assignee shall not be responsible for any obligations under the Lease arising, accruing or attributable to a period prior to the Effective Date (regardless of when the same becomes due and payable, including but not limited to base rent, percentage rent, common area maintenance charges, real estate taxes and insurance costs). Without limiting the generality of the foregoing, Assignee shall not be obligated for any portion of true-ups or reconciliations owed for periods prior to the Effective Date.<br><br>Assignment Agreement, section 5. |
| Excluded Assets | N/A |
| Breakup Fee | N/A |
| Closing Date | On or about one (1) business day following the approval by the Court and the entry of a sale order approving the assumption and assignment of the Lease to Assignee (the "<u>Sale Order</u>"), provided there is no stay pending appeal. Assignment Agreement, section 3. |

| Provision | Summary Description |
|---|---|
| Representations and Warranties | Assignee hereby acknowledges and agrees that, except as provided herein, Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Lease.<br><br>Assignment Agreement, section 11. |
| Deposit | N/A |
| Successor Liability | The Assignment Agreement requires the sale order to include a finding that Assignee is not a "successor in interest" of Assignor.<br><br>Assignment Agreement, section 6. |

22. The Sale is intended to be a private sale, however, the Trustee reserves all rights to accept higher and better offers for the Lease up until the proposed sale hearing on the Motion.

### Basis for Relief

**A.     Approval of Sale**

23. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

24. The sale of a debtor's property should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996), *citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788

F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court held that once a court is satisfied that there is a sound business reason, "the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id*.

25. The Trustee proposes to sell and assume and assign the Lease of Store 7028 with Landlord to Assignee free and clear of all liens, claims and interests, and his decision is supported by a number of sound business reasons. The payment terms and purchase price represents fair market value of the Lease and also avoids incurring additional significant administrative expenses that would otherwise be asserted against the Debtors' estates if the Lease were not rejected or not assumed and assigned by August 31, 2023.

26. For the reasons noted above, the immediate sale and assumption and assignment of the Lease to Assignee is supported by sound business reasons and is in the best interests of the Debtors' estates. Accordingly, the Trustee requests approval under section 363(b) of the Bankruptcy Code of the Sale to the Buyer.

**B.     The Sale of the Purchased Assets is
        Free and Clear of All Liens, Claims, and Encumbrances**

27. The Assignee is only willing to complete the assumption and assignment is the Lease is sold free and clear of all liens, claims, and encumbrances. Accordingly, the Trustee is seeking authorization to sell the Lease free and clear of all liens, claims, and encumbrances to maximize value.

28. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in a bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

29. Section 363(f) of the Bankruptcy Code provides for the sale of property "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." Id. at 258 (*citing* 3 Collier on Bankruptcy 363.06[1]). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

30. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets free and clear of all liens, claims, and encumbrances. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Furthermore, a trustee or debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

31. The Trustee submits that it is appropriate to sell the Lease on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale. In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Such lienholders that do not object to a Sale should be deemed to have consented. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. Of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same).

32. Furthermore, the Trustee proposes that any liens, claims, and encumbrances asserted in connection with the Lease will be transferred to and attach to the proceeds of such Sale in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Trustee and the Debtors' estates may have with respect thereto. *See Folger Adam*, 209 F.3d at 259; *In re Elliot*, 94 B.R. at 345; *In re Circus Time, Inc.*, 5 B.R. 1, 7 (Bankr. D. Me. 1979). Therefore, the Trustee may sell the Lease free and clear of all liens, claims, and encumbrances on the terms set forth in the Assignment Agreement.

33. Finally, the Trustee will agree that any proceeds from the sale will be segregated and such proceeds are subject to the liens of Pathlight Capital LP ("Pathlight"). The sale proceeds will not be used by the Trustee without further order of the Court or absent written agreement of Pathlight.

C. **Good Faith of Buyer Under Section 363(m) of the Bankruptcy Code**

34. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate Real Property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

35. The Assignment Agreement was a negotiated, arm's-length transaction, in which the Buyer acted in good faith and in compliance with the *Abbotts Dairies* standards. The Buyer is also an independent third-party buyer and is not an "insider" or "affiliate" as defined in section 101 of the Bankruptcy Code. The Trustee thus requests that the Court find that the Buyer purchased the Lease in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**D.  A Private Sale is Appropriate**

36. Bankruptcy Rule 6004(f) and Local Rule 6004-11(b)(iv)(D) permit a debtor to conduct a private sale pursuant to section 363. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added); *see Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . .").

37. Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a trustee may conduct a private sale if a good business reason exists. *See, e.g., In re MF Global, Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015 ("The business judgment of a trustee is entitled to great deference"); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

38. Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) when there has been a valid business reason for not conducting an auction. *See, e.g.*, *In re Evergreen Int'l Aviation, Inc.*, Case No. 13-13364 (MFW) (Bankr. D. Del. Feb. 26, 2014) (approving private sale of helicopters for $350,000); *In re Buffets Holdings, Inc.*, Case No. 08−10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, Case No. 01−01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, Case No. 08−10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet into nylon engineered resins for $17.9 million).

39. The Trustee submits that the proposed private sale to the Buyer in accordance with the Assignment Agreement is appropriate in light of the facts and circumstances of these chapter 7 cases. Specifically, a long and complicated sale process with bid procedures and an auction is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process. In addition, a longer sale process would require the Trustee to incur more administrative expenses in the form of more monthly rent for the Premises.

40. As a result, the transaction with the Buyer allows the Trustee to maximize the value of the Lease and provides a significant benefit to the Debtors' estates. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Trustee believes that the Buyer's offer is the highest and best offer for the Lease at this time (and which would otherwise be rejected), the Trustee requests that the Court approve the proposed private sale to the Buyer in accordance with the Assignment Agreement.

**Reservation of Rights for Higher and Better Offers**

41. Notwithstanding the requested relief for approval of the Sale as a private sale, the Trustee reserves all rights, in the exercise of his business judgment, to accept any higher and better offers for an alternative transaction for the Lease, that the Trustee determines, in the exercise of his business judgment, will provide a greater value for the estates. The Trustee expressly reserves this right to accept higher and better offers up until the hearing to approval the Sale and the relief requested in the Motion.

**Waiver of Bankruptcy Rules 6004(h)**

42. The Buyer is ready, willing, and able to close the Sale. Because the liens, claims, and encumbrances will attach to the sale proceeds, the Trustee submits there is no prejudice

39. The Trustee submits that the proposed private sale to the Buyer in accordance with the Assignment Agreement is appropriate in light of the facts and circumstances of these chapter 7 cases. Specifically, a long and complicated sale process with bid procedures and an auction is unlikely to net the estates a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a competitive bid and sale process. In addition, a longer sale process would require the Trustee to incur more administrative expenses in the form of more monthly rent for the Premises.

40. As a result, the transaction with the Buyer allows the Trustee to maximize the value of the Lease and provides a significant benefit to the Debtors' estates. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Trustee believes that the Buyer's offer is the highest and best offer for the Lease at this time (and which would otherwise be rejected), the Trustee requests that the Court approve the proposed private sale to the Buyer in accordance with the Assignment Agreement.

**Reservation of Rights for Higher and Better Offers**

41. Notwithstanding the requested relief for approval of the Sale as a private sale, the Trustee reserves all rights, in the exercise of his business judgment, to accept any higher and better offers for an alternative transaction for the Lease, that the Trustee determines, in the exercise of his business judgment, will provide a greater value for the estates. The Trustee expressly reserves this right to accept higher and better offers up until the hearing to approval the Sale and the relief requested in the Motion.

**Waiver of Bankruptcy Rules 6004(h)**

42. The Buyer is ready, willing, and able to close the Sale. Because the liens, claims, and encumbrances will attach to the sale proceeds, the Trustee submits there is no prejudice

to creditors by having an order approving the Motion become effective immediately upon its entry. In addition, there is a risk of deterioration of the value of the Lease if the Assignment Agreement is not consummated quickly. Accordingly, the Trustee is requesting a waiver of the fourteen-day stay requirement under Bankruptcy Rule 6004(h).

## **Notice**

43. Notice of this Motion shall be provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the U.S. Trustee; (b) counsel for the DIP Agent; (c) counsel to Eclipse Business Capital LLC; (d) counsel to Pathlight Capital, LP; (e) counsel for Bed, Bath and Beyond, Inc.; (f) counsel for ReStore Capital (CTS), LLC; (g) the Landlord to the Lease and related notice parties under the Lease; (h) counsel to the Assignee; and (i) all parties requesting notice pursuant to Bankruptcy Rule 2002

## **No Prior Request**

44. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Court grant the Motion and enter the Order approving the Sale, substantially in the form attached hereto as **Exhibit A**, and grant such other relief is as appropriate.

| | |
|---|---|
| Dated: August 25, 2023<br>Wilmington, Delaware | PACHULSKI STANG ZIEHL & JONES LLP<br><br>*/s/ Colin R. Robinson*<br>Bradford J. Sandler (DE Bar No. 4142)<br>Colin R. Robinson (DE Bar No. 5524)<br>Peter J. Keane (DE Bar No. 5503)<br>Edward A. Corma (DE Bar No. 6718)<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: bsandler@pszjlaw.com<br>          crobinson@pszjlaw.com<br>          pkeane@pszjlaw.com<br>          ecorma@pszjlaw.com<br><br>*Proposed Counsel to George L. Miller, Chapter 7 Trustee* |