## EXHIBIT A

**Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:

CHRISTMAS TREE SHOPS, LLC, *et al.,*[1]

        Debtors.

Chapter 7

Case No. 23-10576 (TMH)

(Jointly Administered)

**Ref. Docket No. ___**

**ORDER APPROVING THE SALE AND ASSUMPTION AND
ASSIGNMENT OF SOMERVILLE, MA LEASE (STORE #7028)
TO RAYMOURS FURNITURE COMPANY, INC.**

Upon the Motion (the "Motion") of the George Miller, the interim chapter 7 trustee (the "Trustee" or "Assignor") of the above-captioned debtors (collectively, the "Debtors") for entry of an Order (this "Sale Order"), pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) approving the sale and assumption and assignment, of all of the Debtors' right, title and interest in and to the real property lease agreement dated December 29, 2003 by and between FR Assembly Square, LLC (successor-in-interest to the original landlord, Assembly Square Limited Partnership) (the "Landlord") and Debtor Christmas Tree Shops, LLC (f/k/a Christmas Tree Shops, Inc.) ("CTS") for certain premises (the "Premises") located at Assembly Square Marketplace, 133 Middlesex Avenue, Somerville, MA (as amended and assigned from time to time, the "Lease") to Raymours Furniture Company, Inc. (the "Assignee"), free and clear of all liens, claims and interests, (B) fixing the amount of and authorizing Assignee's payment of the allowed amount of

---

[1]    The Debtors in these chapter 7 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). Prior to conversion to Chapter 7, the notice address for the Debtors was 64 Leona Drive, Middleboro, Massachusetts 02346.

cure costs due to the Landlord under the Lease as set forth in the Assignment Agreement, and (C) granting such other and further relief as is just and proper.

Upon consideration of the Motions, **IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     This Court has jurisdiction over the Motion and over the property of the Debtors pursuant to 28 U.S.C. §§ 157 and 1334, including the Lease belonging to the Debtors to be sold, assigned, transferred, conveyed, and delivered to Assignee pursuant to the terms of the Assumption and Assignment Agreement dated August 24, 2023 (the "<u>Assignment Agreement</u>"), a copy of which is annexed to this Order as **<u>Exhibit A</u>**.

C.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court enters this Order as a final order consistent with Article III of the U.S. Constitution.  Venue of these chapter 7 cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Motion are sections 105, 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

E.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Order, and directs entry of judgment as set forth herein on the date hereof.

F.     The Lease, which is comprised solely of the documents listed on the Schedule A annexed to the Assignment Agreement, constitutes property of Debtors' estates, and title thereto is vested in Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G.     Due and adequate notice of the Motion, the proposed assumption, assignment, and transfer contemplated thereby, the hearing with respect thereto, and the subject matter thereof has been provided to all parties in interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

H.     The relief requested in the Motion, including with respect to the assumption, assignment, and transfer approved hereby, is in the best interests of the Debtors' estates, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.

I.     The Assignment Agreement was negotiated and proposed in good faith, from arms'-length bargaining positions, and without collusion. Assignee is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protections thereof. Neither the Trustee, the Chapter 11 Debtors, nor Assignee have engaged in any conduct that would cause or permit the assumption, assignment, and transfer to Assignee, pursuant to the Assignment Agreement and this Order, to be avoided under section 363(n) of the Bankruptcy Code. Assignee is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders

existed between Assignee and the Debtors. Further, the Court now finds that the Assignee is not a "successor in interest" of any of the Debtors.

J.　　　The Trustee is authorized to assume, assign, and transfer the Lease free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever, other than easements, rights-of-way, restrictive covenants, zoning laws, municipal ordinances, and any other defects or minor encumbrances on title that would appear on a current title report or survey, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied, provided that, any Interests or Claims (defined below) encumbering all or any portion of the proceeds that the Trustee is entitled to receive in respect of the sale of the Lease shall attach to the proceeds to be received by the Trustee in the same order, priority and validity that such Interests or Claims had in such Lease or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in these cases. Those holders of liens, claims, interests, and encumbrances who did not object to the Motion, or who interposed and then withdrew their objections, are deemed to have consented to the Assignment Agreement pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, interests, and encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

K.　　　The Trustee and/or the Assignee have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment provided under the Assignment Agreement and have, or will have, as of the date of Closing as such term is defined in the Assignment Agreement (the "Closing") (1) cured any undisputed default existing prior to the Closing under the Lease, within the meaning of section

4

365(b)(l)(A) of the Bankruptcy Code, and (2) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default arising prior to Closing under the Lease, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The Lease is assignable to this Assignee notwithstanding any contrary terms and provisions in the Lease. Solely as they may pertain to this assignment only, to the extent in the Lease, "going dark" prohibitions, alteration restrictions, use restrictions, and recapture provisions, clauses which impose a fee or a penalty or a profit sharing as the result of this assignment, clauses which seek to increase the rent or impose a penalty as a result of this assignment or to modify or terminate a lease, any reciprocal easement agreement or declaration of covenants and restrictions and restrictions or other land use agreement (each, an "REA"), any ground or master lease (each a "Master Lease") or local law, as a result of going dark (for more than twelve months) upon assignment, provisions which directly or indirectly limit or condition or prohibit this assignment, rights of first refusal or purchase option provisions in favor of third parties, continuous operating covenants, covenants that any user of the Premises operate under the name of the Debtors and/or operate with a use similar to the Debtors' use, and similar provisions contained in any REA or any Master Lease, shall not restrict, limit or prohibit the sale and assignment of the Lease to Assignee and are unenforceable anti-assignment clauses within the meaning of § 365(f) and (l). Assignee shall use the Premises for the "Intended Use" as defined in the Assignment Agreement or any of the uses permitted by the Lease (specifically including the sale of furniture, mattresses and home furnishings, which uses the Landlord acknowledges and agrees are permitted uses pursuant to the terms of the Lease and do not violate any use restriction contained therein).

Accordingly, the Court further finds that the Motion should be **GRANTED**,

**NOW, THEREFOR, IT IS HEREBY ORDERED THAT**:

1.      The Trustee's proposed assignment of the Lease to Assignee and the assumption of the Lease by Assignee pursuant to the Assignment Agreement (the "<u>Proposed Assumption and Assignment</u>") are hereby approved.

2.      Any and all objections and responses to the Proposed Assumption and Assignment that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.      Notice of the Proposed Assumption and Assignment, and the proposed form of order authorizing the Trustee to enter into the Assignment Agreement, was adequate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4.      The Assignment Agreement, and all of the terms and conditions thereof, and the transaction contemplated therein with respect to the Lease, is hereby approved in all respects.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate and close the transaction contemplated by the Assignment Agreement; (b) execute and deliver, perform under, consummate, and implement the Assignment Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Assignment Agreement, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Assignment Agreement and such other ancillary documents.

6.      This Order shall be binding in all respects upon the Trustee, Debtors' estates, all creditors, all holders of equity interests in the Debtors, all holders of any interests or claims (whether known or unknown) against any Debtor, any holders of interests or claims against or on

6

all or any portion of the Lease being transferred under the Assignment Agreement, Assignee and all successors and assigns of Assignee, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in the Debtors' chapter 7 cases. The terms and provisions of the Assignment Agreement and this Order shall inure to the benefit of the Debtors' estates, and their creditors, Assignee, and their respective affiliates, successors and assigns, and any other affected third parties, including all persons asserting any interests or claims in the Lease being transferred to Assignee pursuant to the Assignment Agreement, notwithstanding any subsequent appointment of any other trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

7. Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing, the Lease shall be transferred to Assignee free and clear of all encumbrances, claims, interests, and liens, including mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income

Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' former employees, of the Debtors or any of the Debtors' predecessors or affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases or the entry of the order converting these cases to chapter 7 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, other than easements, rights-of-way, restrictive covenants, zoning laws, municipal ordinances, and any other defects or minor encumbrances on title that would appear on a current title report or survey (collectively, the "Interests or Claims"); provided that, any Interests or Claims encumbering all or any portion of the proceeds that the Trustee is entitled to receive in respect of the sale or disposition of the Lease shall attach to the proceeds to be received by the Trustee in the same order, priority, and validity that such Interests or Claims had in such Leases or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in the Debtors' Chapter 11 or Chapter 7 cases.

8. This Order shall be construed and shall constitute for any and all purposes a full, complete, valid, and effective general assignment, conveyance, and transfer of the Lease transferring good and marketable title in the Lease to Assignee pursuant to the terms and allocations set forth in the Assignment Agreement, without the need for any consents.

9. Upon consummation of the Assignment Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Lease shall not have delivered to the

Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Lease, then (a) the Debtors, Assignee, and any third party who holds any such Interest or Claim is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity and (b) Assignee is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Lease of any kind or nature; *provided*, that, notwithstanding anything to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor Assignee shall be required to execute or file releases, termination statements, assignments, consents, recordings, memoranda of assignment or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

10.     All entities, including all lenders; debt security holders; equity security holders; governmental, tax, and regulatory authorities; parties to executory contracts and unexpired leases; customers; employees and former employees; dealers and sale representatives; and trade or other creditors holding Interests or Claims of any kind or nature whatsoever against the Lease arising under or out of, in connection with, or in any way relating to, the Lease or the assumption, assignment, and transfer of the Lease to Assignee, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims that arise under or out of, in connection with, or in any way relate to, the Assignment Agreement, the Lease or the assumption, assignment, and transfer of the Lease to Assignee against Assignee and its successors, designees, permitted assigns, or property, or the Lease conveyed in accordance with the Assignment Agreement.

11.     Pursuant to sections 105, 363, and 365 of the Bankruptcy Code and the terms of the Assignment Agreement, the Trustee is hereby authorized to assume, assign, and transfer all of the Debtors' rights, title, and interests in the Lease to Assignee.

12.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, the Trustee's assumption and assignment, and Assignee's assumption, contemplated by the Assignment Agreement is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

13.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Assignee shall be fully and irrevocably vested in all right, title, and interest in the Lease. The Lease shall be transferred to, and remain in full force and effect for the benefit of, Assignee in accordance with its terms, notwithstanding any provision in the Lease that prohibits, restricts, or conditions such assignment or transfer.  Pursuant to section 365(f) of the Bankruptcy Code, the assignment contemplated by the Assignment Agreement shall not be considered a default or effect a forfeiture.  Any provisions in the Lease, REA, any Master Lease, or any other lease agreement or document that prohibit or condition the assignment of the Lease or restrict the tenant's Intended Use or allow the Landlord to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Lease constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to Assignee have been satisfied.

14.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Assignee shall pay the cure costs owed to the Landlord in an amount up to the Cure Cost Cap (as defined in

the Assignment Agreement) that is (a) either resolved and agreed to consensually by the Trustee, Assignee and the Landlord or (b) determined by final order of this Court, which amount shall constitute the undisputed cure amount owed to Landlord resulting from a default prior to the Closing under the Lease (the "Allowed Cure Cost").  Assignee shall have standing to object to the amount of cure cost asserted by the Landlord.  Pursuant to the terms of the Assignment Agreement, the parties expressly agree that the assignment of the Lease is conditioned on the Allowed Cure Costs for the Lease being paid or reserved for by the Assignee and shall in no event constitute an obligation of the Assignee (beyond the amount of the Cure Cost Cap), the Debtors or the Trustee. The Allowed Cure Costs are to be fixed at such amount for the purposes of establishing the Assignee's maximum obligations with respect thereto and any and all other amounts accruing or attributable to a period under the Lease prior to the Closing and any and all breaches that occurred or are alleged to have occurred prior to the Closing are hereby released, barred and otherwise waived.  No party shall have any recourse against the Trustee, Debtors' estates or Assignee for amounts asserted in connection with alleged cure obligations that differ from the Allowed Cure Costs.  After the payment or reserve of the Allowed Cure Costs, the Trustee, Debtors' estates and Assignee shall not have any further liabilities on account of the Lease, other than Assignee's obligations to satisfy all unpaid amounts that accrue or are attributable to a period under the Lease from and after the Closing.

15.     Notwithstanding any provision in the Lease, REA, Master Lease, or local law to the contrary, Assignee may (i) operate the Premises under the trade names "Raymour & Flanigan Furniture | Mattresses" or "Raymour & Flanigan Furniture | Mattresses Outlet"; (ii) go (and remain) dark in the Premises for up to twelve months following the Closing; and (iii) perform alterations and remodel the entirety of the Premises (including all floors thereof) and to replace

11

and modify existing signage (both inside and upon the Premises and upon any signage afforded to CTS under the Lease in or around the shopping center of which the Premises is a part) and facade consistent with such signage and facade utilized by Assignee at other locations for the store concept or concepts that Assignee will operate at the Premises. Any extension and renewal options contained in the Lease which purport to be personal only to the Debtors or any predecessor-in-interest of Debtors or to be exercisable only by Debtors or any predecessor-in-interest of Debtors shall constitute an unenforceable restriction on assignment and may be freely exercised by Assignee to its/their full extent. The Landlord shall cooperate and expeditiously execute and deliver, upon the reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approvals or other necessary documents required for the alteration, opening and operating of the Premises by Assignee.

16.     Assignee has provided the required adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

17.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Landlord under the Lease is forever barred and permanently enjoined from raising or asserting against the Trustee, Debtors' estates, or Assignee any assignment fee, rent-acceleration, rent increase, default, breach, claim, pecuniary loss, or condition to assignment (other than the Allowed Cure Costs), arising under or related to the Lease, existing prior to the date that the Lease is assumed or arising by reason of the assumption and assignment (which, for the avoidance of doubt, excludes Assignee's ongoing post-Closing obligations under the Lease).

DOCS_DE:244423.2 57097/001

18.     Notwithstanding anything to the contrary in this Order or the Assignment Agreement, from and after the Closing, (a) neither the Trustee nor any of the Debtors' estates shall have any further benefits, liabilities, or responsibilities under the Lease, and (b) Assignee shall have both the benefits and the burdens under the Lease, including the burden for all rent increases provided for in such Lease (other than rent increases arising as a result of the assignment of such Lease to Assignee) and those burdens for charges under the Lease accruing or attributable to the period from and after the Closing (including but not limited to base rent, percentage rent, CAM, real estate taxes and insurance attributable to such period (unless they are included and payable as an Allowed Cure Cost)). Assignee shall be entitled to receive the benefit of any non-disturbance protection or other consent granted to the Debtors, although the preceding requirement in this sentence shall be waived by Assignee if the affected party who granted non-disturbance protection or other consent grant similar non-disturbance protection or other consent directly to Assignee.

19.     Subject to paragraph 24, the Trustee and the Debtors' estates are hereby relieved from any liability arising from any breach (or purported breach) of the terms of the Lease on and after the Closing with respect thereto.

20.     Pursuant to section 365(a) of the Bankruptcy Code, all license and concession agreements pursuant to which the Debtors have granted any party a license, access or right to use all or any portion of the Premises for any purpose whatsoever are hereby rejected.

21.     The transaction contemplated by the Assignment Agreement is undertaken by Assignee without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the assumption, assignment, and transfer shall not affect the validity of such transaction, unless such authorization and consummation of such transaction is

duly stayed pending such appeal. Assignee is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. By virtue of the transaction contemplated by the Assignment Agreement, Assignee shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors; (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise or operations of the Debtors.

22.     As a good-faith purchaser, Assignee has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Lease, and, therefore, the sale of the Lease as provided in the Assignment Agreement may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

23.     The transfer of the Lease under the Assignment Agreement is "AS IS-WHERE IS," without any representations or warranties of any kind from the Trustee or the Debtors' estates; provided, however, (i) to the extent that Debtors' estates have any rights or claims against their liquidation consultant for failure to deliver the Premises in broom clean condition, with all remaining items of furniture, fixtures, and equipment located at the Premises left in a neat and orderly manner, the Trustee hereby assigns and transfers such rights and claims to Assignee; and (ii) all remaining items of furniture, fixtures, and equipment located at the Premises are hereby abandoned by the Trustee and the Assignee shall be authorized to retain or dispose of such items as it deems appropriate in its sole discretion.

24.     All parties retain all rights, if any, to seek indemnification for any potential claims that may have arisen prior to the Closing. Specifically, the Landlord may seek to recover from the Debtors (but not the Assignee) indemnification obligations, if any, arising from third party claims

14

asserted with respect to or arising from the Debtors' use and occupancy of the Premises under the Lease prior to the Closing for which the Debtors had a duty to indemnify the Landlord pursuant to the Lease, solely with respect to available insurance coverage, if any.

25. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

26. The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the transaction or this Sale Order.

# EXHIBIT A

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement"), dated as of August 24, 2023, is by and between GEORGE MILLER, AS INTERIM CHAPTER 7 TRUSTEE FOR CHRISTMAS TREE SHOPS, LLC (together with CTS (defined below), "Assignor") and RAYMOURS FURNITURE COMPANY, INC. ("Assignee"). For the avoidance of doubt, all provisions of the Lease (defined below), including any provision limiting future assignment, shall be binding on the Assignee after consummation of the assignment of such contract by Assignor to the Assignee.

## RECITALS

WHEREAS, Christmas Tree Shops, LLC, along with its affiliated debtors and debtors in possession (the "Debtors"), has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), jointly administered under case *In re Christmas Tree Shops, LLC* , Case No. 23-10576 (TMH) (Bankr. D. Del 2023) (the "Chapter 11 Cases"); and

WHEREAS, on August 16, 2023, the Court entered an order converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases"). George Miller has been appointed as the interim chapter 7 trustee for the Debtors; and

WHEREAS, reference to made to that certain Lease Agreement by and between Assembly Square Limited Partnership ("Original Landlord") and Christmas Tree Shops, LLC (f/k/a Christmas Tree Shops, Inc.) ("CTS") dated December 29, 2003 for certain premises (the "Premises") located at Assembly Square Marketplace, 133 Middlesex Avenue, Somerville, MA (as amended and assigned from time to time, the "Lease"). CTS is the tenant under the Lease. The Original Landlord subsequently assigned its interests in the Lease to FR Assembly Square, LLC (successor-in-interest to Original Landlord) (the "Landlord"); and

WHEREAS, the Lease consists solely and exclusively of the documents listed on Schedule A attached hereto and the documents provided to Assignee by CTS or Assignor in connection with the Chapter 11 Cases or Chapter 7 Cases are full and complete copies of the same. There are no further documents creating obligations or establishing rights as between CTS and Landlord (defined below) with respect to CTS' use and occupancy of the Premises; and

WHEREAS, Assignee intends to occupy and use the Premises for the retail sale of home and home office furniture furnishings and accessories and mattresses and box springs (and such other goods as are sold from time to time at stores operated under by Assignee), and such ancillary office and other uses as are incidental to the operation of a retail furniture store, in one or more of the formats operated by Assignee, as the same are operated by Assignee from time to time (collectively, the "Intended Use"); and

WHEREAS, Assignor has agreed to assume and assign and Assignee has agreed to assume the Lease, subject to approval by the Court in the Chapter 7 Cases and the terms contained herein.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## AGREEMENT

1.      Assignment and Assumption.

(a)     Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease.

(b)     Assignor has notified or will notify the landlord under the Lease ("Landlord") of the monetary value of any defaults existing under the Lease (the "Cure Costs"), which amounts may be contested by Landlord or Assignee.  Any dispute as to the amount of Cure Costs will either be resolved consensually by Assignor, Assignee and Landlord or determined by final order of the Court (the "Allowed Cure Costs").  Allowed Cure Costs up to the amount of the Cure Cost Cap (defined below) shall be paid by Assignee.

(c)     Except as may be agreed in writing by Landlord or as provide in the Sale Order (as defined below), Assignee hereby assumes and undertakes to pay, perform, and discharge the Allowed Cure Costs and all of Assignor's obligations and duties with respect to the Lease that accrue on or after the Effective Date (as defined below).

2.     Payment of Purchase Price.  Assignee shall deliver the purchase price for the Lease in the amount of up to Five Hundred Fifty Thousand and 00/100 Dollars ($550,000.00) (the "Purchase Price"), comprised of (a) One Hundred Thousand and 00/100 Dollars ($100,000.00 in immediately available funds wired to the account specified by Assignor at the Closing (as defined below), and (b) up to Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) to the Landlord to pay the Allowed Cure Costs (the "Cure Cost Cap") in immediately available funds wired to the account specified by Landlord payable when the Cure Costs becomes Allowed Cure Costs.

3.     Closing and Effective Date of Assignment.  The closing of the assignment of the Lease hereunder (the "Closing") shall take place on or about one (1) business day following the approval by the Court and the entry of a sale order approving the assumption and assignment of the Lease to Assignee pursuant to this Agreement (the "Sale Order"), provided there is no stay pending appeal.  The "Effective Date" of the assignment shall be the date of the Closing.

4.     Bankruptcy Court Approval.  This Agreement is subject to and conditioned upon (i) Assignor obtaining the Sale Order of the Court authorizing: (1) Assignor to enter into this Agreement and (2) the assumption and assignment of the Lease pursuant hereto.  If the Bankruptcy Court does not approve this Agreement for any reason, other than a material breach of this Agreement by Assignee, then Assignee shall have no further claim against Assignor.

5.     Assumption of Liabilities.  Except to the extent otherwise agreed in writing by the Landlord, or as set forth by the Sale Order, Assignee shall assume all of the terms, conditions and covenants of the Lease as tenant under the Lease, and agrees to assume and undertake to pay, perform and discharge all of Assignor's obligations and duties with respect to such Lease that accrue on or after the Effective Date. If Assignor has already paid rent for the month in which the Effective Date occurs, Assignee and Assignor shall adjust on a per diem basis for the same at Closing.  In addition, the Sale Order shall state that any and all obligations arising under the Lease with are attributable to the period prior to the Effective Date, other than Cure Costs identified in (and to be paid pursuant to) paragraph 1(b) above, shall be the obligation of Assignor.  Except for the Allowed Cure Costs, Assignee shall not be responsible for any obligations under the Lease arising, accruing or attributable to a period prior to the Effective Date (regardless of when the same becomes due and payable, including but not limited to base rent, percentage rent, common area maintenance charges, real estate taxes and insurance costs).  Without limiting the generality of the foregoing, Assignee shall not be obligated for any portion of true-ups or reconciliations owed for periods prior to the Effective Date.

6.    <u>Content of the Sale Order</u>.  (a) the obligation of Assignee to consummate the Closing hereunder is expressly subject to and conditioned upon the Court entering the Sale Order under Sections 363 and 365 of the Bankruptcy Code in form and substance satisfactory to Assignee.  At a minimum, the Sale Order shall (1) authorize and approve the sale and assignment of the Lease by Assignor to Assignee free and clear of all mortgages, liens, liabilities, claims, encumbrances, and interests in accordance with the terms of this Agreement under sections 105(a) and 363(f) of the Bankruptcy Code, (2) contain a  finding that Assignor and Assignee have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and also finding that Assignee is not a "successor in interest" of Assignor, (3) notwithstanding anything to the contrary contained in the Lease, any reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement or restriction (each, an "<u>REA</u>"), any ground or master lease (each a "<u>Master Lease</u>") or local law, authorize Assignor to allow the Premises to go (and remain) dark for any period of time prior to Closing and authorize Assignee to allow such Premises to go dark for up to an additional twelve (12) months after the Closing, (4) authorize Assignee to perform alterations and remodel the entirety of the Premises (including all floors thereof) and to replace and modify existing signage (both inside and upon the Premises and upon any signage afforded to Assignor under the Lease in or around the shopping center of which the Premises is a part) and facade consistent with such signage and facade utilized by Assignee at other locations for the store concept or concepts that Assignee will operate at the Premises, notwithstanding any provision in the Lease, any REA or any Master Lease or local law to the contrary, (5) find that Assignee's Intended Use is an authorized use under the terms of the Lease and order that the Lease is being sold and assigned to Assignee free and clear of any use restrictions or limitations contained in the Lease, any REA, any Master Lease, or any other lease agreement or document to the contrary, and any such restriction or limitation is expressly unenforceable as against Assignee, (6) order that terms and provisions in the Lease such as "going dark" prohibitions, alteration restrictions, use restrictions, and recapture provisions, clauses which impose a fee or penalty or a profit sharing upon assignment, clauses which seek to increase the rent or impose a penalty or to modify or terminate a lease, a Master Lease or REA as a result of going dark or upon assignment, provisions which directly or indirectly limit or condition or prohibit assignment, rights of first refusal or purchase option provisions in favor of third parties, continuous operations covenants, covenants that any user of the Premises operate under the name of the Assignor and/or operate with a use similar to Assignor's use, and similar provisions contained in any REA or any Master Lease, shall not restrict, limit or prohibit the sale and assignment of the Lease to Assignee and declare and find such clauses to be anti-assignment clauses within the meaning of sections 365 (f) and (l) of the Bankruptcy Code, (7) order that extension and renewal options contained in the Leases which purport to be personal only to Assignor or any predecessor in interest of any Assignor (or their respective affiliates) constitute an unenforceable restriction on assignment and may be freely exercised by Assignee to its/their full extent, (8) order that, notwithstanding rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, the order shall take effect immediately upon entry, (9) order that there shall be no rent accelerations, assignment fees, increases or other fees charged or chargeable to Assignee as a result of the sale and assignment of the Lease contemplated hereby, (10) include an exhibit stating that the entirety of the documents comprising the Lease is the same as that annexed hereto as Schedule A, (11) order that the Landlord shall cooperate and expeditiously execute and deliver, upon reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approvals or other necessary documents required for the alteration, opening and operating of the Premises by Assignee, (12) order that Assignee shall not be responsible for any obligations under the Lease (regardless of when same becomes due and payable, including but not limited to, base rent, percentage rent, common area maintenance charges, real estate taxes and insurance), including for any portion of true-ups or reconciliations owed for periods prior to the date of the assignment (which respect to any provision providing for rent based on a percentage of annual sales, for the annual period when the Closing occurs, Assignee shall be responsible solely for the prorated portion of percentage rent attributable to the period after the Closing calculated on a per diem basis), (13) authorize the rejection of all licenses and concession agreements pursuant to which Assignor has granted any party a license, access or right to use all  or any portion of the Premises for any purpose

whatsoever; and (14) granting Assignee standing to object to the amount of Cure Costs asserted by the Landlord and requiring that Assignee consent to any settlement with the Landlord of the amount of Allowed Cure Costs.

(b) Notwithstanding anything to the contrary contained in this Agreement, Assignor and Assignee shall agree on the list of parties ("Affected Parties") to be served with notice of the motion to approve the Sale Order. The Affected Parties shall include not only the Landlord, but also any party who has granted non-disturbance protection or other consent to Assignor, and any party who has a contractual interest in any Lease, any REA, or any Master Lease. The Sale Order shall order that Assignee receive the benefit of (y) any non-disturbance protection, recognition, or other consent granted to Assignor, although the preceding requirement in this sentence shall be waived by Assignee if the Affected Parties who granted non-disturbance protection, recognition, or other consent grant similar non-disturbance protection, recognition or other consent directly to Assignee, and (z) any rights with respect to the condition of or any damages to the Premises which Assignor may have against any party conducting a store closing or going-out-of-business sale pursuant to any agency agreement.

7.    No Further Liability of Assignor. From and after the Effective Date, Assignor shall have no further obligations and duties with respect to the Lease or under this Agreement, other than pursuant to Sections 9 and 10 below.

8.    Use. Assignee shall use the Premises for such purposes as are authorized under the Lease, the Sale Order or applicable law. Assignee's intended use in the Premises is the Intended Use defined above.

9.    Possession. On the Effective Date, Assignor agrees to deliver Assignee vacant possession of the Premises with all personal property of any tenant or occupant removed and otherwise in broom clean condition, subject in each case only to extension ordered by the Court.

10.   Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease.

11.   "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that, except as provided herein, Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Lease. Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the Lease and all such other matters relating to or affecting the Lease as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease, Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease "AS IS" and "WHERE IS" as of the Effective Date.

12.   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

13.   Jurisdiction. The Parties consent to the exclusive jurisdiction of the Court (as defined above) with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.

The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

14.     <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

15.     <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

16.     <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

17.     <u>No Broker</u>.  Assignor and Assignee each represent and warrant to the other that it has not dealt or negotiated with, or engaged on its own behalf or for its benefit, any broker or finder in connection with this transaction.  Assignor and Assignee agree to indemnify and hold harmless the other party from and against any and all claims, demands, causes of action, losses, costs and expenses (including attorneys' fees) and other liabilities arising from the indemnifying party's breach of the preceding representation and warranty.  This paragraph shall survive Closing.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**GEORGE MILLER AS INTERIM**
**CHAPTER 7 TRUSTEE OF CHRISTMAS**
**TREE SHOPS, INC.**

_____
George Miller
Interim Chapter 7 Trustee


**ASSIGNEE:**
**RAYMOURS FURNITURE COMPANY,**
**INC.**


By_____
Name_____
Its_____

**Schedule A**

**Description of Lease**

1) Lease Agreement between Assembly Square Partnership ("Original Landlord") and Assignor dated December 29, 2003.
2) First Amendment to Lease between Original Landlord and Assignor dated August __, 2004.
3) Letter agreement between FR Assembly Square, LLC (successor-in-interest to Original Landlord) ("Landlord") and Assignor dated March 22, 2006 and countersigned April 10, 2006.
4) Second Amendment to Lease between Landlord and Assignor dated October 3, 2006.
5) Third Amendment to Lease among Landlord, Assignor and Bed Bath & Beyond Inc. dated May 8, 2008.
6) Letter agreement among Landlord, Assignor and Bed, Bath & Beyond, Inc. dated July 14, 2011 and countersigned July 22, 2011.
7) Letter Agreement between Landlord and Assignor last dated April 23, 2012.
8) Fourth Amendment to Lease between Landlord and Assignor dated February 12, 2016.
9) Letter Agreement between Landlord and Assignor last dated February 17, 2021.