# EXHIBIT 2

**Redline of Revised Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

CHRISTMAS TREE SHOPS, LLC, *et al.*,[1]

Debtors.

Chapter 7

Case No. 23-10576 (TMH)

(Jointly Administered

## ORDER APPROVING THE SALE AND ASSUMPTION AND ASSIGNMENT OF SOMERVILLE, MA LEASE (STORE #7028) TO RAYMOURS FURNITURE COMPANY, INC.

Upon the Motion (the "Motion") of ~~the~~ George Miller, the interim chapter 7 trustee (the "Trustee" or "Assignor") of the above-captioned debtors (collectively, the "Debtors") for entry of an Order (this "Sale Order"), pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) approving the sale and assumption and assignment, of all of the Debtors' right, title and interest in and to the real property lease agreement dated December 29, 2003 by and between FR Assembly Square, LLC (successor-in-interest to the original landlord, Assembly Square Limited Partnership) (the "Landlord") and Debtor Christmas Tree Shops, LLC (f/k/a Christmas Tree Shops, Inc.) ("CTS") for certain premises (the "Premises") located at Assembly Square Marketplace, 133 Middlesex Avenue, Somerville, MA (as amended and assigned from time to time, the "Lease") to Raymours Furniture Company, Inc. (the "Assignee"), free and clear of all liens, claims and

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops, LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640). Prior to conversion to Chapter 7, the notice address for the Debtors was 64 Leona Drive, Middleboro, Massachusetts 02346.

interests, (B) fixing the amount of and authorizing Assignee's payment of the allowed amount of cure costs due to the Landlord under the Lease as set forth in the Assignment Agreement, and (C) granting such other and further relief as is just and proper.

Upon consideration of the Motions, **IT IS HEREBY FOUND AND DETERMINED THAT:**

A.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.  This Court has jurisdiction over the Motion and over the property of the Debtors pursuant to 28 U.S.C. §§ 157 and 1334, including the Lease belonging to the Debtors to be sold, assigned, transferred, conveyed, and delivered to Assignee pursuant to the terms of the Assumption and Assignment Agreement dated August ~~__,~~ 31, 2023 (the "Assignment Agreement"), a copy of which is annexed to this Order as Exhibit A.

C.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court enters this Order as a final order consistent with Article III of the U.S. Constitution. Venue of these chapter 7 cases and the Motion in this district and Court is proper under 28 U.S.C. §§ 1408 and 1409.

D.  The statutory predicates for the relief sought in the Motion are sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

E.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Order, and directs entry of judgment as set forth herein on the date hereof.

F.  The Lease, which is comprised solely of the documents listed on the Schedule A annexed to the Assignment Agreement, constitutes property of Debtors' estates, and title thereto is vested in Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G.  Due and adequate notice of the Motion, the proposed assumption, assignment, and transfer contemplated thereby, the hearing with respect thereto, and the subject matter thereof has been provided to all parties in interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

H.  The relief requested in the Motion, including with respect to the assumption, assignment, and transfer approved hereby, is in the best interests of the Debtors' estates, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.

I.  The Assignment Agreement was negotiated and proposed in good faith, from arms'-length bargaining positions, and without collusion. Assignee is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protections thereof. Neither the Trustee, ~~the Chapter 11 Debtors~~, nor Assignee have engaged in any conduct that would cause or permit the assumption, assignment, and transfer to Assignee, pursuant to the Assignment Agreement and this Order, to be avoided under section 363(n) of the Bankruptcy Code. Assignee is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders

3

existed between Assignee and the Debtors. Further, the Court now finds that the Assignee is not a "successor in interest" of any of the Debtors.

J.  The Trustee is authorized to assume, assign, and transfer the Lease free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever, other than easements, rights-of-way, restrictive covenants, zoning laws, municipal ordinances, and any other defects or minor encumbrances on title that would appear on a current title report or survey, (except that, to the extent applicable to the Lease as of the Closing, the Lease shall remain subject to the terms of any related reciprocal easement agreement or declaration of covenants and restrictions or other land use agreement (each an "REA") or any ground or master lease (each a "Master Lease") and any local law related to the shopping center (any REA, Master Lease and local law, collectively the "Permitted Encumbrances"), except in each case to the extent otherwise expressly set forth in this Order or the Assignment Agreement; *provided*, *however*, in all respects, the assumption and assignment, and transfer of the Lease shall not be free and clear and Assignee shall assume all of the terms, conditions and covenants of the Lease as tenant under the Lease, and agrees to assume and undertake to pay, perform and discharge all of Assignor's obligations and duties under the Lease except as may be modified by this Order or the Assignment Agreement (the "Lease Obligations")), because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied, provided that, any Interests or Claims (defined below) encumbering all or any portion of the proceeds that the Trustee is entitled to receive in respect of the sale of the Lease shall attach to the proceeds to be received by the Trustee in the same order, priority and validity that such Interests or Claims had in such Lease or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in these cases. Those holders of liens, claims, interests, and encumbrances who did not object to the Motion, or who

interposed and then withdrew their objections, are deemed to have consented to the Assignment Agreement pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, interests, and encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

K.  The Trustee and/or the Assignee have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment provided under the Assignment Agreement and have, or will have, as of the date of Closing as such term is defined in the Assignment Agreement (the "Closing") (1) cured any undisputed default existing prior to the Closing under the Lease, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code, and (2) provided compensation or adequate assurance of compensation to ~~any party~~Landlord for any actual pecuniary loss to ~~such party~~Landlord resulting from a default arising prior to Closing under the Lease, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The Lease is assignable to ~~this~~the Assignee notwithstanding any contrary terms and provisions in the Lease~~.~~ or applicable law that prohibits, restricts or conditions an assignment of the Lease. Solely as they may pertain to ~~this~~the assignment contemplated herein only, to the extent in the Lease, "going dark" prohibitions~~, alteration restrictions~~, use restrictions, and recapture provisions, clauses which impose a fee or a penalty or a profit sharing as the result of ~~this~~such assignment, clauses which seek to increase the rent or impose a penalty as a result of this assignment or to modify or terminate a lease, any ~~reciprocal easement agreement or declaration of covenants and restrictions and restrictions or other land use agreement (each, an "REA"), any ground or master lease (each a "Master Lease") or local law, as a result of going dark (for more than twelve months) upon assignment~~REA, Master Lease or local law, provisions which directly

or indirectly limit or condition or prohibit this assignment, rights of first refusal or purchase option provisions in favor of third parties, continuous operating covenants, covenants that any user of the Premises operate under the name of the Debtors and/or operate with a use similar to the Debtors' use, and similar provisions contained in any REA or any Master Lease, shall not restrict, limit or prohibit the sale and assignment of the Lease to Assignee and ~~are~~shall be deemed unenforceable anti-assignment clauses within the meaning of § 365(f) and (l).  Assignee shall use the Premises for the "Intended Use" as defined in the Assignment Agreement or any of the uses permitted by the Lease (~~specifically including the sale of furniture, mattresses~~ and ~~home furnishings, which uses the~~ Landlord acknowledges and agrees ~~are~~that the Intended Use is a permitted ~~uses~~use pursuant to the terms of the Lease and ~~do~~will not violate any use restriction contained therein).

Accordingly, the Court further finds that the Motion should be **GRANTED**,

**NOW, THEREFOR, IT IS HEREBY ORDERED THAT**:

1. The Trustee's ~~proposed~~ assignment of the Lease to Assignee and the assumption of the Lease by Assignee pursuant to the Assignment Agreement (the "~~Proposed~~ Assumption and Assignment") are hereby approved.

2. Any and all objections and responses to the ~~Proposed~~ Assumption and Assignment that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3. Notice of the ~~Proposed~~ Assumption and Assignment, and the proposed form of order authorizing the Trustee to enter into the Assignment Agreement, was adequate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

4. The Assignment Agreement, and all of the terms and conditions thereof, and the transaction contemplated therein with respect to the Lease, is hereby approved in all respects except as otherwise expressly modified by the terms of this Order.

5. ~~Pursuant~~Subject to the provisions of this Order, pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate and close the transaction contemplated by the Assignment Agreement; (b) execute and deliver, perform under, consummate, and implement the Assignment Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement the Assignment Agreement, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Assignment Agreement and such other ancillary documents.

6. This Order shall be binding in all respects upon the Trustee, Debtors' estates, all creditors, all holders of equity interests in the Debtors, all holders of any interests or claims (whether known or unknown) against any Debtor, any holders of interests or claims against or on all or any portion of the Lease being transferred under the Assignment Agreement, Assignee and all successors and assigns of Assignee, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in the Debtors' chapter 7 cases. The terms and provisions of the Assignment Agreement and this Order shall inure to the benefit of the Debtors' estates, and their creditors, Assignee, and their respective affiliates, successors and assigns, and any other affected third parties, including all persons asserting any interests or claims in the Lease being transferred to Assignee pursuant to the Assignment Agreement, notwithstanding any subsequent appointment of any other trustee(s), party, entity, or other fiduciary under any

section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

7. ~~Pursuant~~<ins>Except as otherwise expressly set forth in this Order or the Assignment Agreement, other than Permitted Encumbrances (as modified by this Order) or the Lease Obligations, pursuant</ins> to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing, the Lease shall be transferred to Assignee free and clear of all encumbrances, claims, interests, and liens, including mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' former employees, of the Debtors or any of the Debtors' predecessors or affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of

the chapter 11 cases or the entry of the order converting these cases to chapter 7 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, other than easements, rights-of-way, restrictive covenants, zoning laws, municipal ordinances, and any other defects or minor encumbrances on title that would appear on a current title report or survey (collectively, the "Interests or Claims"); provided that, any Interests or Claims encumbering all or any portion of the proceeds that the Trustee is entitled to receive in respect of the sale or disposition of the Lease shall attach to the proceeds to be received by the Trustee in the same order, priority, and validity that such Interests or Claims had in such Leases or such proceeds as of the Petition Date or pursuant to any order of the Bankruptcy Court entered in the Debtors' Chapter 11 or Chapter 7 cases.

8. This Order shall be construed and shall constitute for any and all purposes a full, complete, valid, and effective general assignment, conveyance, and transfer of the Lease transferring good and marketable title in the Lease to Assignee pursuant to the terms and allocations set forth in the Assignment Agreement, without the need for any consents.

9. Upon consummation of the Assignment Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Lease shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Lease, then (a) the Debtors, Assignee, and any third party who holds any such Interest or Claim is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity and (b) Assignee is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which,

9

once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Lease of any kind or nature; *provided*, that, notwithstanding anything to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor Assignee shall be required to execute or file releases, termination statements, assignments, consents, recordings, memoranda of assignment or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

10. All entities, including all lenders; debt security holders; equity security holders; governmental, tax, and regulatory authorities; parties to executory contracts and unexpired leases; customers; employees and former employees; dealers and sale representatives; and trade or other creditors holding Interests or Claims of any kind or nature whatsoever against the Lease arising under or out of, in connection with, or in any way relating to, the Lease or the assumption, assignment, and transfer of the Lease to Assignee, hereby are forever barred, estopped, and permanently enjoined from asserting any Interests or Claims that arise under or out of, in connection with, or in any way relate to, the Assignment Agreement, the Lease or the assumption, assignment, and transfer of the Lease to Assignee against Assignee and its successors, designees, permitted assigns, or property, or the Lease conveyed in accordance with the Assignment Agreement<ins>; provided, however, that except as specifically set forth herein or the Assignment Agreement, the Landlord's Interest in the Lease and the Lease Obligations shall remain unimpaired</ins>.

11. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code and the terms of the Assignment Agreement <ins>and this Order</ins>, the Trustee is hereby authorized to assume, assign, and transfer all of the Debtors' rights, title, and interests in the Lease to Assignee.

12. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing, the Trustee's assumption and assignment, and Assignee's assumption, contemplated by the Assignment Agreement is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

13. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Assignee shall be fully and irrevocably vested in all right, title, and interest in the Lease. The Lease shall be transferred to, and remain in full force and effect for the benefit of, Assignee in accordance with its terms, notwithstanding any provision in the Lease that prohibits, restricts, or conditions such assignment or transfer. Pursuant to section 365(f) of the Bankruptcy Code, the assignment contemplated by the Assignment Agreement shall not be considered a default or effect a forfeiture. Any provisions in the Lease, REA, any Master Lease, or any other lease agreement or document that prohibit or condition the assignment of the Lease or restrict the tenant's Intended Use or allow the Landlord to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Lease ~~constitute~~<ins>shall be deemed</ins> unenforceable anti-assignment provisions that are void and of no force and effect <ins>solely for the purposes of the assignment contemplated herein only</ins>. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to Assignee have been satisfied.

14. Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Assignee shall pay the cure costs owed to the Landlord in an amount ~~up~~<ins>equal</ins> to ~~the Cure Cost Cap (as defined in the Assignment Agreement) that is (a) either resolved~~<ins>Three Hundred Eighty Three Thousand Four Hundred Fifty Five</ins> and ~~agreed to consensually by the Trustee, Assignee and the~~

11

~~Landlord or (b) determined by final order of this Court,~~04/100 Dollars ($383,455.04), which amount shall constitute the undisputed and complete cure amount owed to Landlord resulting from ~~a default~~all defaults prior to the Closing under the Lease (the "~~Allowed Cure Cost").~~ Cure Costs"). Within one business day of the entry of this Order (provided no stay is in place), Assignee shall ~~have standing to object to the amount of cure cost asserted~~wire transfer the Cure Costs, plus One Hundred Thousand and 00/100 Dollars ($100,000.00) to the Trustee pursuant to wire instructions provided by the Trustee, and within one business day of the Trustee's receipt of such funds (or as soon as they become available funds), the Trustee shall and is hereby directed to wire transfer the Cure Costs to the Landlord pursuant to wire instructions provided by the Landlord. ~~Pursuant to the terms of the Assignment Agreement, the parties expressly agree that~~ to the ~~assignment of the Lease is conditioned on the Allowed Cure Costs for the Lease being paid or reserved for by the Assignee and shall in no event constitute an obligation of the Assignee (beyond the~~ Trustee. The amount of the Cure ~~Cost Cap), the Debtors or the Trustee. The Allowed Cure Costs are to be fixed at such amount for the purposes of establishing the~~ Costs shall constitute Assignee's maximum cure obligations with respect thereto and any and all other amounts accruing or attributable to a period under the Lease prior to the Closing and any and all breaches that occurred or are alleged to have occurred prior to the Closing are hereby released, barred and otherwise waived. No party shall have any recourse against the Trustee, Debtors' estates or Assignee for amounts asserted in connection with alleged cure obligations that differ from the ~~Allowed~~ Cure Costs. After the payment or reserve of the ~~Allowed~~ Cure Costs, the Trustee, Debtors' estates and Assignee shall not have any further liabilities on account of the Lease, other than Assignee's obligations to satisfy all ~~unpaid~~ amounts that accrue or are attributable to a period under the Lease from and after the Closing. For the avoidance of doubt, Assignee shall have no liability for any taxes, costs, charges,

expenses or other pass-throughs by way of billings, true-ups or reconciliations that are attributable to any period of time prior to the Closing.

15. ~~Notwithstanding~~Except as otherwise expressly agreed by Assignee and Landlord, notwithstanding any provision in the Lease, REA, Master Lease, or local law to the contrary, Assignee may (i) operate the Premises under the trade ~~names~~name "Raymour & Flanigan Furniture | Mattresses~~" or "Raymour & Flanigan Furniture | Mattresses Outlet~~"; (ii) go (and remain) dark in the Premises for up to ~~twelve~~eight months following the Closing~~;~~ (provided that if Assignee is using commercially reasonable and diligent efforts to obtain permits, perform alterations and open for business from the Premises, Assignee shall be entitled to extend such eight-month period by an additional period of up to four months by providing notice of such extension to Landlord and evidence reasonably supporting such efforts (utilizing the notice requirements under the terms of the Lease)); and (iii) perform alterations and remodel the entirety of the Premises (including all floors thereof) and to replace and modify existing signage (both inside and upon the Premises and upon any signage afforded to CTS under the Lease in or around the shopping center of which the Premises is a part) and facade ~~consistent with such signage and facade utilized by Assignee at other locations for the store concept or concepts that Assignee will operate at the Premises.~~as permitted in accordance with the terms of the Lease (as modified below).  To the extent any alterations or signage replacement does not require Landlord's consent under the terms of the Lease, then Assignee may perform the same without approval of any plans related to the same. To the extent any alterations or signage replacement does require Landlord's consent under the terms of the Lease (collectively, the "Improvements Requiring Approval"), Assignee shall present plans and specifications related to the Improvements Requirement Approval and Landlord shall be required to respond with either an approval or with reasonable and specific comments to such plans

13

and specifications within five (5) business days following receipt of the same (and Landlord shall not unreasonably condition or withhold its approval), failing which, Landlord's consent shall be deemed given. Any extension and renewal options contained in the Lease which purport to be personal only to the Debtors or any predecessor-in-interest of Debtors or to be exercisable only by Debtors or any predecessor-in-interest of Debtors shall constitute an unenforceable restriction on assignment and may be freely exercised by Assignee to its/their full extent. The Landlord shall cooperate and expeditiously execute and deliver, upon the reasonable request of Assignee and at no cost to Landlord, any instruments, applications, consents or other documents which may be required by any governmental agency for the purpose of obtaining permits, approvals or other necessary documents required for the alteration, opening and operating of the Premises by Assignee.

16. Assignee has provided the required adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

17. ~~Pursuant~~Except as otherwise expressly set forth in this Order, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Landlord under the Lease is forever barred and permanently enjoined from raising or asserting against the Trustee, Debtors' estates, or Assignee any assignment fee, rent-acceleration, rent increase, default, breach, claim, pecuniary loss, or condition to assignment (other than the ~~Allowed~~ Cure Costs), arising under or related to the Lease, existing prior to the date that the Lease is assumed or arising by reason of the assumption and assignment (which, for the avoidance of doubt, excludes Assignee's ongoing post-Closing obligations under the Lease).

18. ~~Notwithstanding anything to the contrary~~<u>Except as otherwise set forth</u> in this Order or the Assignment Agreement, from and after the Closing <u>upon payment by Assignee of the Cure Costs</u>, (a) neither the Trustee nor any of the Debtors' estates shall have any further benefits, liabilities, or responsibilities under the Lease, and (b) Assignee shall have both the benefits and the burdens under the Lease, including the burden for all rent increases provided for in such Lease (other than rent increases arising as a result of the assignment of such Lease to Assignee) and those burdens for charges under the Lease accruing or attributable to the period from and after the Closing (including but not limited to base rent, percentage rent, CAM, real estate taxes and insurance attributable to such period (unless they are included and payable as an Allowed Cure Cost)).  Assignee shall be entitled to receive the benefit of any non-disturbance protection or other consent granted to the Debtors, although the preceding requirement in this sentence shall be waived by Assignee if the affected party who granted non-disturbance protection or other consent grant similar non-disturbance protection or other consent directly to Assignee.

19. Subject to paragraph 24,<u> upon payment by Assignee of the Cure Costs</u> the Trustee and the Debtors' estates are hereby relieved from any liability arising from any breach (or purported breach) of the terms of the Lease on and after the Closing with respect thereto.

20. Pursuant to section 365(a) of the Bankruptcy Code, all license and concession agreements pursuant to which the Debtors have granted any party a license, access or right to use all or any portion of the Premises for any purpose whatsoever are hereby rejected.

21. The transaction contemplated by the Assignment Agreement is undertaken by Assignee without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the assumption, assignment, and transfer shall not affect the

validity of such transaction, unless such authorization and consummation of such transaction is duly stayed pending such appeal. Assignee is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. By virtue of the transaction contemplated by the Assignment Agreement, Assignee shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors; (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise or operations of the Debtors.

22. As a good-faith purchaser, Assignee has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Lease, and, therefore, the sale of the Lease as provided in the Assignment Agreement may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

23. The transfer of the Lease under the Assignment Agreement is "AS IS-WHERE IS," without any representations or warranties of any kind from the Trustee or the Debtors' estates; provided, however, (i) to the extent that Debtors' estates have any rights or claims against their liquidation consultant for failure to deliver the Premises in broom clean condition, with all remaining items of furniture, fixtures, and equipment located at the Premises left in a neat and orderly manner, the Trustee hereby assigns and transfers such rights and claims to Assignee; and (ii) all remaining items of furniture, fixtures, and equipment located at the Premises are hereby abandoned by the Trustee and the Assignee shall be authorized to retain or dispose of such items as it deems appropriate in its sole discretion.

24. All parties retain all rights, if any, to seek indemnification for any potential claims that may have arisen prior to the Closing. Specifically, the Landlord may seek to recover from the

Debtors (but not the Assignee) indemnification obligations, if any, arising from third party claims asserted with respect to or arising from the Debtors' use and occupancy of the Premises under the Lease prior to the Closing for which the Debtors had a duty to indemnify the Landlord pursuant to the Lease, solely with respect to available insurance coverage, if any.

25. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

26. The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the transaction or this Sale Order.