# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| CHRISTMAS TREE SHOPS, LLC, *et al.*,[1] ) | Case No. 23-10576 (TMH) |
| ) | |
| Debtors. ) | **Hearing Date: October 17, 2023 at 11:00 am** |
| ) | **Objections Due: October 10, 2023 at 4:00 pm** |

## MOTION OF CBL & ASSOCIATES MANAGEMENT, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §§ 365(d)(3), 503(B)(1)(A), AND 507(A)

CBL & Associates Management, Inc. ("CBL"), managing agent for York Town Center Holding, L.P. ("Landlord"), a landlord from which the Debtor, Christmas Tree Shops, LLC (the "Debtor") leased real property (the "Leased Premises"), by and through its undersigned counsel, hereby requests the entry of an order granting Landlord an allowed administrative expense claim pursuant to sections 365(d)(3), 503(b)(1)(A), and 507(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and requiring payment thereof, attaches the *Declaration of Gary Roddy* (the "Roddy Decl.") as **Exhibit A** hereto, and states as follows:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are Bankruptcy Code sections 364(a), 503(b)(1)(A) and 507(a)(2).

### Background

2. On May 5, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Dkt. No. 1).

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Christmas Tree Shops LLC (1207), Handil, LLC (1150), Handil Holdings, LLC (2891), Salkovitz Family Trust 2, LLC (8773), and Nantucket Distributing Co., LLC (1640) The notice address for the Debtors is 64 Leona Drive, Middleboro, Massachusetts 02346.

3.  On August 10, 2023, a motion was filed to convert the case to a Chapter 7 proceeding. (Dkt. No. 506).  This Court entered an Order granting the motion to convert on August 16, 2023. (Dkt. No. 545).

4.  The Debtor entered into an agreement to lease real property from the Landlord (the "Lease")[2] as shown below in *Table 1*:

**TABLE 1:**

| Property Name | Property Location | Landlord | Debtor Tenant | Lease Start Date | Lease End Date |
|---|---|---|---|---|---|
| York Town Center | 2935 Concord Rd., York, PA 17402 | York Town Center Holding, L.P | Christmas Tree Shops, LLC | December 1, 2021 | January 31, 2033 |

5.  The Lease is one "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum LTD*, 922 F.2d 1081 (3d. Cir. 1990).

6.  On August 31, 2023, the Debtor rejected the Lease. (Dkt. No. 608).

7.  Debtors operated in the Leased Premises or retain personal property in the Leased Premises through August 31, 2023, including, but not limited to the Stub Rent Period (as defined herein). *See* Roddy Decl. ¶ 10.

8.  Landlord's administrative expense claims consist of post-petition use and occupancy charges due from Debtors that arose under the Lease on and after the Petition Date. *See* 11 U.S.C. §§ 503(a), 503(b)(1)(A), and 365(d)(3).

9.  Under the terms of the Lease, Debtor is required to make certain payments arising out of their use and occupancy of the Premises. These payments include such items as rent and related charges, common area maintenance obligations, real property taxes, and all other charges imposed by the Lease, including year-end adjustments and reconciliations for charges that are paid

---

[2] Relevant portions of the Lease are attached to the Roddy Decl. as **Exhibit 1**.  The Lease, in its entirety is not attached due to its confidential and voluminous nature – however, the Lease is available upon appropriate request to undersigned counsel.

on an estimated basis. Debtor has not paid all obligations that have arisen or accrued during the post-petition period, and certain amounts remain due and owing for the period from the Petition Date through and including the date of rejection (the "Administrative Claim Period"). *See* Roddy Decl. ¶ 6.

10. Landlord is entitled to administrative expense claims for such obligations in the total amount of One Hundred Forty-Nine Thousand Ninety-Four and 02/100 Dollars ($149,094.02) (the "Claim") as set forth in greater detail on the A/R Report attached to the Roddy Decl. as **Exhibit 2**, plus indemnity obligations, amounts subject to setoff and/or recoupment and attorneys' fees. *See* Roddy Decl. ¶¶ 7–9, *Exhibit 2*.

### Requested Relief

11. By this Motion, Landlord respectfully requests the entry of an Order granting Landlord an administrative expense claim in the amount of $149,094.02 pursuant to Bankruptcy Code Sections 365(d)(3), 503(b)(1)(A) and 507(a).

### Basis for Relief Requested

12. Section 507(a)(2) provides that "administrative expenses allowed under section 503(b) of this title" shall have second priority status under the Bankruptcy Code. Moreover, Bankruptcy Code section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, . . . including . . . the actual, necessary costs and expenses of preserving the estate[.]" *See* 11 U.S.C. § 503(b)(1)(A).

13. In determining whether administrative priority under Section 503(b)(1)(A) is proper, bankruptcy courts generally apply a two-pronged test. First, there must be a post-petition transaction between the creditor and the debtor. Second, the estate must benefit from the transaction. *E.g., In re Garden Ridge Corp.*, 321 B.R. 669, 676 (Bankr. D. Del. 2005) (citing *In re Waste Systems Int'l, Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002)).

14. In the present case, as indicated above, Landlord provided the leased premises to the Debtor following the Petition Date. Accordingly, the first prong of the *Garden Ridge* test is satisfied.

15. Second, Debtor's occupancy of the leased premises clearly benefited the Debtor's estate as such occupancy was relied upon by the Debtor during the Debtor's post-petition operations. *See TransAm. Nat. Gas Corp.,* 978 F.2d 1409, 1420 (5th Cir. 1992) ("Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue in business as usual."). Accordingly, the Claim also meets the second prong of the *Garden Ridge* test.

16. Based on the foregoing, and because the Claim satisfies both prongs of the test for administrative expense status, the Claim should be allowed as an administrative expense claim in pursuant to section 503(b)(1)(A) of the Bankruptcy Code for all time periods, including, but not limited to Debtors' use and occupancy of the Leased Premises from May 4, 2023 through May 30, 2023 (the "Stub Rent Period"), in an amount totaling $46,422.88.

17. Additionally, Section 365(d)(3) of the Bankruptcy Code and applicable case law require a trustee to pay timely and as an administrative expense claim all post-petition rent and related charges until an unexpired lease is rejected. *See* 11 U.S.C. § 365(d)(3) ("[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(l) of this title"); 11 U.S.C. § 503(a).

18. Further, the clear language of section 365(d)(3 of the Bankruptcy Code requires the Trustee to perform an obligation when the legally enforceable duty to perform arises under that lease. *See In re Montgomery Ward Holding Corp.,* 268 F.3d 205, 209 (3d Cir. 2001). Accordingly,

when a lease requires the debtor to reimburse the landlord for certain obligations, the debtor's obligation to make timely payment arises after the petition, but before rejection of rent as it comes due. *See In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 610-14 (Bankr. D. Del. 2008); *Towers v. Chickering & Gregory (In re Chickering & Gregory)*, 27 F.3d 401, 403 (9th Cir. 1994) ("section 365(d)(3) created an immediate obligation to pay the full amount of the rent specified by the lease. . .").

19. Debtor has failed to pay rent and charges arising under the Lease, including charges billed after the Petition Date and prior to rejection of the Lease. Pursuant to Section 4.3 of the Lease, such charges – defined as "Taxes" – become due and owing on the date they were billed to Debtor:

> Section 4.3  Real Estate and Other Taxes.
>
> 4.3.1. Landlord shall pay on or before the due dates thereof all "Taxes" (defined in Subsection 4.3.3 below) other than personal property taxes levied against tenants. Throughout the Term, Landlord shall cause the Shopping Center to be maintained entirely within tax parcels and lots that exclude any property not a part of the Shopping Center.
>
> 4.3.2. (a)  Tenant shall pay to Landlord Tenant's Pro Rata Share of the Taxes which accrue during the Term, subject to the provisions of this Section 4.3. Any Taxes for a real estate fiscal tax year, only a part of which is included within the Term, shall be adjusted between Landlord and Tenant on the basis of a 365-day year as of the Rent Commencement Date or the date on which the Term expires or earlier terminates, as the case may be, for the purpose of computing Tenant's Pro Rata Share of Taxes. If, by law, any Taxes may, at the option of the taxpayer, be paid in installments (whether or not interest shall accrue on the unpaid balance thereof), Landlord shall exercise such option so as to maximize the number of installments, and Landlord shall pay the same as they come due and before any fine, penalty, interest or cost may be added thereto for nonpayment thereof.
>
> (b)  Landlord shall submit to Tenant a copy of the bill for Taxes issued by the applicable taxing authority, a computation of Tenant's Pro Rata Share of such
>
> Taxes and proof of the payment of Taxes for the previous payment period, as well as copies of all notices concerning assessments, tax rates, and changes thereto. Tenant shall pay Landlord in the amount required by this Subsection 4.3.2 within thirty (30) days after receipt of such bill (but in no event earlier than the fifteenth (15th) day prior to the last day on which such Taxes may be paid in order to receive the maximum discount from the taxing authority.

*See* Roddy Decl., *Exhibit 1*, § 4.3.

20. As such, Landlord is entitled to a priority claim under Section 365(d)(3) for these unpaid charges, including real estate property tax adjustments and water utility bill adjustments, billed on August 23, 2023, and totaling $102,671.14. *See In re Montgomery Ward, LLC,* 302 B.R. 478, 481 (D. Del. 2003) (finding tax adjustments billed post-petition were administrative expenses when the lease stated that the obligation to pay such adjustments arose on the date the bill was given to the debtor). Attached as **Exhibit 3** to the Roddy Decl. is the post-petition, pre-rejection real property tax bill.

21. Lastly, Landlord is entitled to a priority claim under Section 365(d)(3) for any unpaid rent and charges accruing after May 30, 2023 if any such charges are accrued but not yet billed (and are requested in a supplemental or amended administrative claim).

WHEREFORE, pursuant to sections 365(d)(3), 503(b)(1)(A), and 507(a) of the Bankruptcy Code, CBL requests the entry of an Order (i) granting and allowing the Claim against the Debtors as an administrative expense claim in the amount of $149,094.02; and (ii) granting such other and further relief as is just and proper.

Dated: September 8, 2023              Respectfully submitted by:

                                             HOGAN♦McDANIEL

                                             */s/Garvan F. McDaniel*
                                             Garvan F. McDaniel (DE Bar No. 4167)
                                             1311 Delaware Avenue
                                             Wilmington, Delaware 19806
                                             Telephone: 302.656.7540
                                             Facsimile: 302.656.7599
                                             Email: gfmcdaniel@dkhogan.com

                                             *ATTORNEY FOR ATTORNEYS FOR CBL &*
                                             *ASSOCIATES MANAGEMENT, INC.*