**EXHIBIT A**
**Engagement Agreement**



May 30, 2023                                              EXECUTION VERSION

Mr. Marc Salkovitz
Chairman
Ms. Pamela Salkovitz
Chief Executive Officer
Handil LLC
64 Leona Drive
Middleboro, MA  02346

Dear Mr. Salkovitz and Ms. Salkovitz:

This agreement ("Engagement Agreement") will serve as the contract between Handil LLC, Handil Holdings, LLC, Salkovitz Family Trust 2, LLC, Christmas Tree Shops, LLC, Nantucket Distributing Co., LLC and affiliates as debtors and debtors-in-possession (collectively, "CTS" or the "Company") in the Chapter 11 proceedings pending in the U.S. Bankruptcy Court for the District of Delaware, jointly administered Case No. 23-10576 (TMH) (collectively, the "Cases"), and SSG Advisors, LLC ("SSG") regarding the retention of SSG as exclusive investment banker to CTS for the purposes outlined in this Engagement Agreement. SSG's responsibilities hereunder involve providing investment banking services to CTS, on an exclusive basis, focusing on: (i) the review of financing alternatives and the private placement of debt and/or equity capital with parties other than the Existing Stakeholders (as defined below) and their affiliates and assigns (a "Financing"); (ii) the restructuring of CTS's balance sheet with all Existing Stakeholders ("Restructuring"); and/or (iii) the sale of all or a part of CTS's brands and assets (the "Sale"), individually and/or collectively, a ("Transaction").

A.  **SSG's Role:**

1.  SSG will provide the following services in connection with the Financing:

    • Prepare an information memorandum describing CTS, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management, and financial projections;

    • Assist CTS in compiling a data room of any necessary and appropriate documents related to the Financing;

    • Assist CTS in developing a list of suitable potential lenders and investors who will be contacted on a discreet and confidential basis after approval by CTS;

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 2

- Coordinate the execution of confidentiality agreements for potential lenders and investors wishing to review the information memorandum;

- Assist CTS in coordinating site visits for interested lenders and investors and work with the management team to develop appropriate presentations for such visits;

- Solicit competitive offers from potential lenders and investors;

- Advise and assist CTS in structuring the Financing and negotiating the Financing agreements; and

- Otherwise assist CTS and its other professionals, as necessary, through closing on a best efforts basis.

2. SSG will provide the following services in connection with the Restructuring:

- SSG, on a best effort basis, shall assist CTS in the negotiation with various stakeholders, any of CTS's shareholders, including, but not limited to, the post-petition debtor-in-possession ("DIP") senior secured lenders (Eclipse Business Capital LLC and ReStore Capital, LLC in their respective capacities as agent and/or lenders, and their respective affiliates (collectively, the "DIP Secured Lenders")), pre-petition secured lender Pathlight Capital LP ("Pathlight"), landlords, and general unsecured creditors (collectively, the "Existing Stakeholders") in regard to a possible Restructuring of existing claims and equity.

3. SSG will provide the following services in connection with the Sale:

- Prepare an information memorandum describing CTS, its historical performance and prospects, brands, including existing contracts, marketing and sales, labor force, management, and financial projections;

- Assist CTS in compiling a data room of any necessary and appropriate documents related to the Sale;

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 3

- Assist CTS in developing a list of suitable potential buyers for each brand who will be contacted on a discreet and confidential basis after approval by CTS and update and review such list with CTS on an on-going basis;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Assist CTS in coordinating physical and/or virtual site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

- Solicit competitive offers from potential buyers;

- Advise and assist CTS in structuring the sale and negotiating the sale agreement(s); and

- Otherwise assist CTS and its other professionals, as necessary, through closing on a best-efforts basis.

Notwithstanding any of the forgoing descriptions of SSG's role in this paragraph A, SSG shall have no mandate or responsibility with respect to those matters for which CTS has (or may in the future) engaged FAAN Advisors Group, Inc ("FAAN").

SSG's services for a potential Financing, Restructuring and/or Sale will be pursued in parallel. In performing the services described above, CTS will furnish or cause to be furnished to SSG such information as SSG reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). CTS represents to SSG that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of SSG's engagement hereunder, CTS will advise SSG immediately of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects. CTS recognizes and confirms that SSG: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of CTS.

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 4

CTS agrees that, except for matters which overlap with the FAAN engagement, SSG shall be its exclusive investment banker in connection with any Transaction undertaken during the Engagement Term, as defined below, of this Engagement Agreement. CTS agrees that, during the Engagement Term, SSG shall have the authority to initiate and conduct discussions and assist and advise CTS in its negotiations with all prospective lenders, investors, and buyers. In that regard, CTS agrees to identify to SSG: (a) all prospective lenders, investors and buyers who have been in contact with CTS prior to the date hereof and (b) all prospective lenders, investors and buyers who come in contact with CTS during the Engagement Term.

SSG will consult with and advise CTS with respect to the financial aspects of any proposed Transaction, including price, terms, and conditions of a Transaction. SSG will not, however, have any authority to bind CTS with respect to any proposed Transaction. Likewise, nothing contained herein shall require CTS to accept the terms of any proposal, and CTS shall at all times have the right, in its sole and absolute discretion, to reject any proposed Transaction regardless of the terms proposed.

Prior to any information concerning CTS being disclosed to a potential counterparty to a Transaction or its authorized representatives, other than anonymous marketing materials (including a teaser), SSG will obtain CTS's consent to the disclosure of such information to such potential counterparty and such potential counterparty must enter into a confidentiality agreement in form and substance approved by CTS. CTS may refuse to discuss or negotiate a potential Transaction with any party for any reason whatsoever and may terminate negotiations with any party, whether or not previously approved by CTS, at any time.

B. **SSG's Compensation**

As compensation for providing the foregoing services, SSG shall receive the following:

1. Initial Fee. An initial fee (the "Initial Fee") equal to $100,000 due upon signing this Engagement Agreement subject to Bankruptcy Court approval.

2. Monthly Fees. Monthly fees (the "Monthly Fees") of $100,000 per month for the first month payable beginning July 1, 2023 and $50,000 per month on the first (1st) of each month thereafter throughout the Engagement Term (as such term is hereafter defined) subject to Bankruptcy Court approval.

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 5

          After receipt of the third (3rd) Monthly Fee, one half (50%) of the subsequent Monthly Fees shall be credited against the Transaction Fee for any Transaction.

3.      Financing Fee. Upon the closing of a Financing to any party, other than Existing Stakeholders, in connection with a confirmed plan of reorganization under chapter 11 of the United States Bankruptcy Code, SSG shall be entitled to a fee (the "Financing Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Financing, equal to (a) the greater of (i) $650,000 or (ii) 2.00% of any Senior Debt (as such term is hereafter defined) raised from any financing source, plus 4% of any Tranche B, Traditional Subordinated Debt or Equity (as such term is hereafter defined) raised regardless of whether CTS chooses to draw down the full amount of the Financing.

4.      Restructuring Fee. Upon the Closing of a Restructuring, SSG shall be entitled to a fee ("Restructuring Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Restructuring equal to $650,000.

5.      Sale Fee. Subject to the immediately succeeding paragraph, upon the consummation of a Sale to any party other than the Existing Stakeholders and their affiliates and assigns, as set forth below, and as a direct carveout from the proceeds of any Sale from any and all secured lenders, prior in right to any such secured debt, SSG shall be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale, equal to the greater of (a) $650,000 or (b) three percent (3.0%) of Total Consideration. Each of the Company and SSG agree that SSG shall not be entitled to a Sale Fee unless (i) the claims of the DIP Secured Lenders have been paid in full in cash at the closing of such Transaction or (ii) each DIP Secured Lender consents to such Transaction. Notwithstanding the foregoing, in the event that CTS determines to terminate the Sale process and move to a liquidation of the inventory and other assets, then SSG shall be entitled to an alternative Sale Fee ("Alternative Sale Fee") of $150,000.

          However, in the event of a Sale to any one or more of the DIP Secured Lenders or any of the Existing Stakeholders, or any of their respective affiliates, by way of a credit bid or otherwise, without a competing third-party overbid, SSG shall be entitled to a fixed Sale Fee of $450,000. If a competing third-party overbid is received, the foregoing Sale Fee structure would apply without discount.

6.      SSG shall only be entitled to one of the above Transaction Fees, the greater of either a Financing Fee, Restructuring Fee or Sale Fee.

7.      Expenses. In addition to the foregoing Initial Fee, Monthly Fee, and Transaction Fees noted above whether or not a Transaction is

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 6

consummated, SSG will be entitled to reimbursement for all of SSG's reasonable out-of-pocket expenses incurred in connection with this Engagement Agreement.

C. **Definitions**

For the purpose of this Engagement Agreement:

**Closing** and **Closed** each means the closing and consummation of the applicable Transaction under and in accordance with the terms of the definitive documents pertaining thereto, the satisfaction of all applicable conditions precedent to closing set forth in such documents and receipt by CTS (or such other applicable designated person or entity) of any and all cash consideration to be paid, funded, advanced, or otherwise remitted at closing under such documents.

**Senior Debt** means funds: (a) received by CTS in the form of revolving credit facilities, notes, term loans, lines of credit, offering lines, purchase and sale of accounts receivable facilities, or any other type of credit facility, for which CTS is obligated to repay the funds on a fixed schedule with interest on the unpaid balance thereof at a fixed interest rate or a floating interest rate, without any profit participation or yield enhancement as a return on the repayment of the funds received by CTS; and (b) for which the lender has a claim to or lien on the assets of CTS, superior or prior to the claim of the holders of any Tranche B or Traditional Subordinated Debt.

**Tranche B Loan** means: (a) funds (i) received by CTS or for which CTS is obligated to repay the funds on a fixed schedule with interest on the unpaid balance therefore at a fixed interest rate or a floating rate higher than that of Senior Debt, and (ii) for which the lender may have a claim to or lien on the assets of CTS, junior to the claim of the holders of Senior Debt.

**Traditional Subordinated Debt** means: (a) funds (i) received by CTS or for which CTS is obligated to repay the funds on a fixed schedule with interest on the unpaid balance therefore at a fixed interest rate or a floating rate; and (ii) for which the lender does not have a claim to or lien on the assets of CTS, or (b) funds (i) received by CTS, is obligated to repay the funds on a fixed schedule with interest on the unpaid balance thereof at a fixed interest rate or a floating interest rate; and (ii) for which part of the overall return to the investor on these funds is anticipated to consist of a participation in the profits of CTS and/or some other type of income enhancement (whether realized through equity warrants conversions of the debt to equity, or otherwise) which has the effect of raising the overall return on these funds to the investors above the level that could be realized solely due to the receipt of stated interest income.

**Equity** shall include, but not be limited to, common stock, preferred stock, convertible stock, and the proceeds from any joint venture agreement, including contributions by a joint venture partner involving cash, stock, property, plant and

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 7

equipment or any other assets, or asset sale that does not convey control of CTS.

**Total Consideration** shall mean the gross purchase price paid at the closing of the Sale for the equity, assets, or any portion of either, plus the assumption or payoff or assumption of indebtedness (secured, unsecured and leasehold).

For purposes of computing any fees payable to SSG hereunder, non-cash consideration shall be valued as follows: (a) publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for the five (5) trading days prior to the closing of the Sale Transaction; and (b) any other non-cash consideration, including the retention any non-controlling equity stake in CTS, shall be valued at the fair market value thereof as determined in good faith by CTS and SSG. For the avoidance of doubt, if such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of SSG's fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are received.

**Transaction Fee** shall mean and include a Financing Fee, Restructuring Fee, and a Sale Fee, as determined above.

D. **Term of Engagement**

This Engagement Agreement shall remain in force for a period of six (6) months from the date of signing this Engagement Agreement (the "Engagement Term") and may continue thereafter on a month-to-month basis provided, however, that the Engagement Agreement shall terminate immediately upon the closing of a Transaction. Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Engagement Agreement shall not affect SSG's right to indemnification under the Indemnification paragraph below; (b) CTS shall remain obligated to pay SSG any unpaid Monthly Fees, Financing Fee, Restructuring Fee, Sale Fee and/or Alternative Sale Fee and to reimburse SSG for any expenses incurred through the date of the termination of the Engagement Agreement; and (c) if a Transaction is consummated within twelve (12) months ("Trailer Term") of the termination of this Engagement Agreement with a purchaser with which SSG has contacted and initiated discussions or negotiations with respect to any Transaction, CTS shall remain obligated to pay a Transaction Fee as calculated above. Sections B, D, E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of SSG's Duties, respectively) of this Engagement Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely.

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 8

E. **Indemnification**

CTS hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F. **Miscellaneous**

No fee payable to any other financial advisor or finder by CTS or CTS in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to SSG hereunder without the prior written consent of SSG. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings, and agreements between the parties hereto. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G. **Scope of Duties**

CTS hereby acknowledges and agrees that: (a) it has retained SSG for the purposes set forth in the Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature, and (b) SSG has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Transaction or as to the economic, financial or other results which may be obtained or experienced by CTS as a result thereof.

H. **Chapter 11 Proceedings**

SSG's retention in these bankruptcy proceedings shall be subject to approval by the U.S. Bankruptcy Court for the District of Delaware.

I. **Other Matters**

SSG has the right following the Transaction closing, to place advertisements in financial and other newspapers and journals and to send email advertising and social media posts at its own expense describing its services to CTS hereunder.

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 9

       In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of CTS, CTS and its senior management team as well as other information that will allow SSG to properly identify its clients. Additionally, SSG maintains important disclosures on its web site www.ssgca.com. These disclosures may be updated periodically on an as-needed basis. CTS agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting SSG directly at (610) 940-1094.

J.    **Securities Platform**

       All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC. ("SCA") which is an affiliated registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). Principals of SSG are registered representatives of SCA. Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Engagement Agreement.

       To the extent a Transaction Fee is payable to SSG in connection with a Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee shall be specifically paid to SCA.

This letter and acceptance may be executed in counterpart, each part of which shall be deemed an original, both of which together shall constitute one and the same instrument, and any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Mr. Marc Salkovitz
Ms. Pamela Salkovitz
May 30, 2023
Page 10

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG ADVISORS, LLC**

By: _____        _____
Teresa C. Kohl                                J. Scott Victor
Managing Director                             Managing Director


ACCEPTED:

**Handil LLC and Affiliates**

Type text here

By: _____        _____
Marc Salkovitz                                Pam Salkovitz
Chairman                                      Chief Executive Officer

May 31, 2023                                  May 31, 2023
Date                                          Date

Mr. Marc Salkovitz  
Ms. Pamela Salkovitz  
May 30, 2023  
Page 11

# ATTACHMENT A
# INDEMNIFICATION PROVISIONS

CTS agrees to indemnify, defend and hold harmless SSG or SCA, and their affiliates, the respective partners, members, directors, officers, agents and employees of SSG, SCA, and their affiliates and each other person, if any, controlling SSG, SCA, and their affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG performing services for or on behalf of CTS under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with:  (a) any act or omission by SSG related to its engagement as financial advisor under the Engagement Agreement; or (b) SSG's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement.   However, that CTS shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a judgment, settlement or plea agreement by a court, agency, arbitrator, or other adjudicating authority of competent jurisdiction, to have resulted from the Indemnified Parties' gross negligence or willful misconduct in the performance of its duties under said Engagement Agreement.  CTS agrees that reliance by SSG on any publicly available information, which SSG verifies with CTS in writing, the information supplied by CTS to SSG in connection with said Engagement Agreement, or any directions furnished by CTS, on which SSG wholly relies, shall not constitute negligence, bad faith, or willful misconduct by SSG.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

3601672.2