**GIBBONS P.C.**
Robert K. Malone, Esq.
Mark B. Conlan, Esq.
Christopher P. Anton, Esq.
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
Email: rmalone@gibbonslaw.com
        mconlan@gibbonslaw.com
        canton@gibbonslaw.com

*Attorneys for Plaintiff Ainslie H. Vorel,*
*Individually and as Proposed Class Representative*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AINSLIE H. VOREL, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>MARC SALKOVITZ and PAMELA SALKOVITZ,<br><br>        Defendants. | Civil Action. No. 24-05933 (BRM)(MAH)<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Ainslie H. Vorel, individually and on behalf of all other similarly situated persons ("**Plaintiff**"), by and through her undersigned counsel, Gibbons P.C., by way of the within First Amended Class Action Complaint ("**Complaint**") against defendants Marc Salkovitz and Pamela Salkovitz (together, "**Defendants**"), alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of herself and other similarly situated employees who were employed by Christmas Tree Shops, LLC ("**CTS**") in the State of New Jersey and were terminated without cause, as part of, or as the result of, the mass layoff and/or termination of operations ordered by Defendants (who operated and indirectly own CTS), and who were not provided with severance pay as required by the Millville Dallas Airmotive Plant Loss Job Notification Act, N.J.S.A. § 34:21-1 *et seq.*, as amended (the "**NJ WARN Act**").

2.     Plaintiff, and the members of the class she seeks to represent, also did not receive 90 days' advance notification of their terminations, in violation of the NJ WARN Act.

3.     On April 10, 2023, major amendments to the NJ WARN Act became effective. Those amendments include, in relevant part, the following changes:

    a.  Employers must give 90-days' notice of an upcoming "mass layoff," "termination of operations," or "transfer of operations." N.J.S.A. § 34:21-2(a). Previously, only 60-days' notice was required.

    b.  A requirement to make mandatory severance payments. In instances when notice is required, the NJ WARN Act now dictates that severance – equal to one week of pay for each full year of employment – be paid to each affected employee "as compensation" for "back pay and losses associated with the termination of the employment relationship" and considered to be "earned in full" upon termination of the employment relationship. N.J.S.A. § 34:21-2(b).

    c.  If an employer fails to comply with the NJ WARN Act's notice requirements, the employer must also provide each affected employee with four (4) weeks of pay in addition to the above-noted mandatory severance. N.J.S.A. § 34:21-2(b).

    d.  The amendments also expanded the definition of "Employer" to include "any individual, partnership, association, corporation, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, and includes any person who, directly or indirectly, owns and operates the nominal employer, or owns a corporate subsidiary that, directly or indirectly, owns and operates the nominal employer or makes the decision responsible for the employment action that gives rise to a mass layoff subject to notification." N.J.S.A. § 34:21-2(d) (emphasis added). In other words, the NJ WARN Act, as amended, provides for a private right of action against the

individuals that own or operate an entity found to be involved in violation(s) of the NJ WARN Act.

4.    Plaintiff and all similarly situated New Jersey-based employees seek to recover from Defendants, as the ultimate owners, Executive Chairman (Marc Salkovitz) and Chief Executive Officer (Pamela Salkovitz) of CTS, the mandatory severance pay required under the NJ WARN Act—equivalent to one week of pay (calculated at their average rate of compensation during the last three (3) years of employment with CTS or the final regular rate of compensation, whichever is higher) for each full year that he or she worked. The New Jersey-based employees are also seeking, in addition to the mandatory severance payment, an additional four (4) weeks of pay from Defendants, as the owners and operators of CTS, because CTS failed to provide them with 90 days' advance notice of their terminations.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) and (d)(6) as the amount in controversy exceeds $5,000,000 and the Plaintiff and Defendants are citizens of different states.

6.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

7.    Plaintiff is a citizen of the State of Florida and, during the time period relevant to this Complaint, was a citizen of the State of New Jersey and a full-time employee at CTS's headquarters located in Union, New Jersey. Members of the proposed class all worked in or reported to locations in the State of New Jersey during the relevant time period.

8.    Defendant Marc Salkovitz is, and during the time period relevant to this Complaint was, a citizen of the Commonwealth of Massachusetts. Defendant Marc Salkovitz currently resides at 18 Summer Street, Unit 2, Andover, Massachusetts 01810. *See* Declaration

of Marc Salkovitz filed in the case captioned *Corbin and Seronick v. Salkovitz, et al*., Case No. 23:cv-12807 (IT) (D. Mass.) [ECF No. 18], a copy of which is attached hereto as **Exhibit A**.

9.      Defendant Pamela Salkovitz is, and during the time period relevant to this Complaint was, a citizen of the Commonwealth of Massachusetts.  Defendant Pamela Salkovitz currently resides at 18 Summer Street, Unit 2, Andover, Massachusetts 01810.  *See* Declaration of Pamela Salkovitz filed in the case captioned *Corbin and Seronick v. Salkovitz, et al*., Case No. 23:cv-12807 (IT) (D. Mass.) [ECF No. 19], a copy of which is attached hereto as **Exhibit B**.

10.     Upon information and belief, Defendants are husband and wife.

11.     Nonparty CTS is a Massachusetts limited liability company that alleged in its bankruptcy petition that its principal place of business was located at 64 Leona Drive, Middleborough, MA  02346, notwithstanding the fact its corporate headquarters office was located in Union, New Jersey, at the time of the bankruptcy filing.

12.     During the time period relevant to this Complaint, Defendants transacted business in the State of New Jersey and participated in New Jersey's economic life.

13.     During the time period relevant to this Complaint, Defendant Marc Salkovitz was the Executive Chairman of CTS.

14.     During the time period relevant to this Complaint, Defendant Pamela Salkovitz was the Chief Executive Officer of CTS.

15.     During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz were the two highest ranking officers of CTS.

16.     During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz indirectly owned 100% of the membership interests in CTS.

17.     During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz controlled the operations of CTS.

18.     During the time period relevant to this Complaint, Defendants Marc Salkovitz and Pamela Salkovitz had, and exercised, the authority to make the employment decisions that resulted in the employment terminations at CTS that resulted in the violations of the NJ WARN Act that are the subject of this Complaint.

### FACTUAL ALLEGATIONS AS TO ALL COUNTS

### Background

19.     On May 5, 2023 ("**Petition Date**"), CTS and its affiliated debtors (collectively, the "**Debtors**") each filed voluntary petitions for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

20.     As of the date of this filing, neither Mark Salkovitz nor Pamela Salkovitz is a debtor in bankruptcy.

21.     From the Petition Date until August 16, 2023, the Debtors operated their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

22.     By Order dated August 16, 2023, the Bankruptcy Court converted the Debtors' cases to cases administered under chapter 7 of the Bankruptcy Code.

23.     Defendants Marc Salkovitz and Pamela Salkovitz own 100% of the membership interests in Handil, LLC, a Delaware limited liability company ("**Handil**"), which in turn owns 100% of the membership interests in the Salkovitz Family Trust 2, LLC, a Massachusetts limited liability company ("**Salkovitz Trust**"), and Handil Holdings, LLC, a Delaware limited liability company ("**Handil Holdings**").

24.     Each of Handil, Salkovitz Trust and Handil Holdings are debtors in the jointly administered CTS chapter 7 bankruptcy cases.

25.     Neither Handil, Salkovitz Trust nor Handil Holdings are named defendants in this action.

26.     In November 2020, Handil Holdings purchased Bed Bath & Beyond, Inc.'s 100% interest in CTS for the assumption of CTS's then indebtedness and obligations and additional consideration of approximately $137 million.

27.     Handil's acquisition of CTS included the acquisition of Bed Bath & Beyond's lease for CTS' corporate HQ (as defined below) in Union, New Jersey.

28.     CTS operated a chain of brick-and-mortar home goods retail stores that specialized in year-round seasonal goods at discount pricing.  CTS stores offered a variety of products including home decor, bed and bath products, kitchen and dining products, furniture, food and seasonal products.

29.     CTS operated ten (10) retail locations in New Jersey.  The retail stores were located in Brick, Bridgewater, Cherry Hill, Deptford, Freehold, Mays Landing, Paramus, Rockaway, Springfield, and Woodland Park, New Jersey (collectively, the "**NJ Stores**").

30.     As of June 30, 2023, CTS employed approximately 3,600 full and part-time employees, approximately 531 of whom were based in New Jersey.

31.     As of June 30, 2023, CTS operated (i) a distribution center in Middleborough, Massachusetts (the "**DC**"), (ii) its corporate headquarters in Union, New Jersey, which was relocated to Springfield, New Jersey in June 2023 (the "**HQ**"), as well as (iii) 82 CTS stores in 20 states, including the NJ Stores.

32.     Following Defendants' indirect acquisition of CTS in late 2020, Defendants regularly attended corporate meetings conducted at the Union, New Jersey HQ.

33.     Defendants Marc Salkovitz and Pamela Salkovitz also attended quarterly in-person meetings with CTS buyers in the Union, New Jersey HQ.

34.     The CTS leadership team also had periodic in-person meetings with Defendants Marc Salkovitz and Pamela Salkovitz in the Union, New Jersey HQ.

35.     On or about June 26, 2023, more than seven (7) weeks after the Petition Date, Marc Salkovitz advised senior management by telephone in New Jersey that they would need to begin terminating employees and directed them to prepare and issue WARN Act Notices.

36.     Upon information and belief, Pamela Salkovitz, in her capacity as Chief Executive Officer of CTS, participated in the decision to commence the employment terminations at CTS.

37.     In an e-mail dated June 29, 2023 from Laura Britton, the CTS Head of People and Culture, to CTS senior management, Ms. Britton made clear that a 90-day WARN notice is required for all of New Jersey "as there could be 50 or more impacted individuals across the state (includes PT with no tenure stipulation) – Also, NJ has a severance requirement of 1 week of pay for each full yr of svc."

38.     Notwithstanding the clear financial distress that precipitated the May 5, 2023, bankruptcy Petition Date, CTS, by and through defendants Marc Salkovitz and Pamela Salkovitz, made the decision to delay issuing the WARN Act notices to employees until after the close of business on Friday, June 30, 2023 (the "**WARN Act Notice**"), a copy of which is attached hereto as **EXHIBIT C**.

39.     The WARN Act Notice was delivered via e-mail to all CTS employees in New Jersey.

40.     The WARN Act Notice received by New Jersey-based employees stated, among other things, that CTS employed in excess of 143 employees at HQ and employed 388 employees in the NJ Stores as of June 30, 2023.

41.     The WARN Act Notice advised that the "first employee separations would be expected to take place during the 14-day period commencing on July 7, 2023 …"

42.     Until July 7, 2023, or thereafter, Plaintiff and all similarly situated employees remained employed by CTS and worked at (or reported to) the HQ or the NJ Stores.

43.     On or about July 3, 2023, CTS issued to its employees a "*Team Member Separation Toolkit*" (the "**Separation Toolkit**").  In the Separation Toolkit, CTS stated to its employees that "CTS was required to provide WARN notice to employees in Middleborough [Massachusetts], Springfield ([then] serving as the home location of most NJ corporate workers as well as store team members), and across the state of NJ."

44.     Shortly thereafter, Plaintiff and all similarly situated employees were terminated without cause.

45.     On July 19, 2023, Plaintiff filed a class action complaint in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") against CTS on behalf of herself and all other similarly situated former CTS employees, thereby commencing an adversary proceeding captioned *Vorel v. Christmas Tree Shops, LLC*, Adv. Proc. No. 23-50446 (TMH) (Bankr. D. Del.) (hereafter, the "**Adversary Proceeding**").  CTS is the only defendant named in the Adversary Proceeding.

46.     The Adversary Proceeding is currently subject to a standstill agreement between Plaintiff and the chapter 7 trustee.

### New Jersey Warn Act Class Allegations

47.     Plaintiff brings this Claim for Relief for violations of the NJ WARN Act on behalf of herself and a class of similarly situated persons pursuant to N.J.S.A. § 34:21-1 *et seq*. and Federal Rules of Civil Procedure 23(a) and (b) who worked at or reported to CTS's New Jersey employment sites (HQ and NJ Stores) and who were terminated without the legally

required severance pay or the required four weeks' pay due to CTS's failure to provide the 90 days' notice that is also required by the NJ WARN Act. (the "**NJ WARN Class**").

48.     Beginning on or about July 7, 2023, CTS terminated Plaintiff and in excess of one hundred (100) similarly situated New Jersey-based employees.

49.     The terminations were subject to the mandatory severance and the 90-day notice required by the NJ WARN Act, N.J.S.A. § 34:21-2(a) and (b).

50.     CTS terminated Plaintiff and the similarly situated New Jersey-based employees without having provided either the mandatory severance pay or the ninety (90) days' notice required by the NJ WARN Act, and thus violated that statute.

51.     At the time of these employee terminations, Defendants Marc Salkovitz and Pamela Salkovitz were each an "employer" within the meaning of N.J.S.A. § 34:21-2(d).

52.     The persons in the NJ WARN Class identified above ("**NJ WARN Class Members**") are so numerous that joinder of all members is impracticable.

53.     Upon information and belief, the NJ WARN Class consists of at least 500 former CTS employees.

54.     Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently contained within the books and records of CTS and are thus within the sole control of the chapter 7 trustee, George L. Miller, a non-party to this action.

55.     On information and belief, the identity of the members of the NJ WARN Class and the recent residential address of each of the NJ WARN Class Members is contained in the books and records of CTS.

56. On information and belief, the rate of pay and benefits that were being paid by CTS to each NJ WARN Class Member at the time of his/her termination is contained in the books and records of CTS.

57. Each of the NJ WARN Class Members was affected by the Defendants' violation of the provisions NJ WARN Act as alleged herein.

58. Common questions of law and fact exist as to members of the NJ WARN Class, including, but not limited to, the following:

    a. whether the members of the NJ WARN Class were employees of CTS who worked at a covered employment site of CTS;

    b. whether CTS unlawfully terminated the employment of the NJ WARN Class Members without cause on their part and without giving them 90 days' advance written notice in violation of the NJ WARN Act; and

    c. whether CTS has unlawfully failed to pay the NJ WARN Class Members severance pay, additional four weeks' pay, and benefits as required by the NJ WARN Act.

59. Plaintiff's claims are typical of those of the NJ WARN Class. Plaintiff, like other NJ WARN Class Members, worked at or reported to one of CTS's New Jersey employment sites and was terminated as part of the mass layoffs/termination of business operations implemented by CTS at the direction of Defendants, who operated and indirectly own CTS.

60. Plaintiff will fairly and adequately protect the interests of the NJ WARN Class. Plaintiff has retained Gibbons P.C. as counsel competent and experienced in complex class actions and employment litigation.

61. Class certification of these claims is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the NJ WARN Class predominate over any

questions affecting only individual members of the NJ WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation — particularly in the context of NJ WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court, and damages suffered by individual members of the NJ WARN Class are small compared to the expense and burden of individual prosecution of this litigation.

62.     Concentrating all the potential litigation against Defendants Marc Salkovitz and Pamela Salkovitz concerning the NJ WARN Act rights of the members of the NJ WARN Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments and will conserve judicial and the parties' resources.  Accordingly, class certification is the most efficient means of resolving the NJ WARN Act rights of all the members of the NJ WARN Class.

63.     Plaintiff intends to send notice to all NJ WARN Class Members to the extent required by Rule 23.

### CLAIMS FOR RELIEF

### COUNT I:

**Failure to Pay Severance in Violation of the New Jersey WARN Act**

64.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the proceeding paragraphs of the Complaint as if fully set forth herein.

65.     Plaintiff and similarly situated NJ WARN Class Members who worked at or reported to CTS's employment sites in New Jersey were "employees" of CTS as defined in the NJ WARN Act.

66. CTS terminated the employment of Plaintiff and each of the NJ WARN Class Members pursuant to a "mass layoff" and/or "termination of operations" as defined in the NJ WARN Act.

67. At all relevant times, Defendants, directly or indirectly, owned, operated and controlled CTS and/or made the decisions with respect to the employment actions that required severance to be paid to Plaintiff and each of the NJ WARN Class Members under the NJ WARN Act.

68. At all relevant times, Defendants were "employer(s)" as defined in the NJ WARN Act, N.J.S.A. § 34:21-2(d).

69. Defendants violated the NJ WARN Act by implementing the mass layoff and/or termination of operations at CTS employment sites in New Jersey without providing the severance pay required by the NJ WARN Act.

70. As a result of Defendants' violations of the NJ WARN Act, Plaintiff and each of the NJ WARN Class Members are entitled to damages equal to (i) one week of pay for each full year of employment with CTS, with the rate of pay calculated at the average regular rate of compensation received by the employee during the last three (3) years of employment, or the final regular rate of compensation paid to the employee, whichever rate is higher.  N.J.S.A. § 34:21-2.

71. Plaintiff and each of the NJ WARN Class Members are also entitled to the costs of the action, including reasonable attorneys' fees; and compensatory damages, including lost wages, benefits and other remuneration pursuant to N.J.S.A. § 34:21-6.

## COUNT II:

### Failure to Pay Additional Four (4) Weeks' Pay Due to Failure to
### Provide Notice in Violation of the New Jersey WARN Act

72.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the proceeding paragraphs of the Complaint as if fully set forth herein.

73.     At all relevant times, Defendants were "employer(s)" as defined in the NJ WARN Act, N.J.S.A. § 34:21-2(d).

74.     Defendants violated the NJ WARN Act by implementing the mass layoff and/or termination of operations at CTS employment sites in New Jersey without providing the requisite written notice at least 90 days before the terminations were implemented to:  (1) each affected employee; (2) the New Jersey Commissioner of Labor and Workforce Development; and (3) the chief elected official of each municipality within which the termination occurred.

75.     As a result of Defendants' violations of the NJ WARN Act, Plaintiff and each of the NJ WARN Class Members are also entitled to four (4) weeks of pay in addition to mandatory severance pay as alleged above, as required by N.J.S.A. § 34:21-2.

76.     Plaintiff and each of the NJ WARN Class Members are also entitled to the costs of the action, including reasonable attorneys' fees; and compensatory damages, including lost wages, benefits and other remuneration pursuant to N.J.S.A. § 34:21-6.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ainslie H. Vorel, individually and on behalf of all other similarly situated persons, prays for the following relief against Defendants Marc Salkovitz and Pamela Salkovitz:

1. Certification that, pursuant to FED. R. CIV. P. 23 (a) and (b), Plaintiff and other similarly situated former employees constitute a class for purposes of the NJ WARN Act;

2. Designation of Plaintiff as class representatives for the NJ WARN Class;

3. Appointment of the undersigned counsel as Class Counsel for the NJ WARN Class;

4. Judgment in favor of Plaintiff and each NJ WARN Class Member, and against Defendants, jointly and severally, for severance pay equivalent to one week of pay (calculated at their average rate of compensation during the last three (3) years of employment or the final regular rate of compensation, whichever is higher), plus an additional four (4) weeks of pay pursuant to N.J.S.A. § 34:21.2(b), as well as costs of the action, including reasonable attorneys' fees; and compensatory damages, including lost wages, benefits and other remuneration pursuant to N.J.S.A. § 34:21-6; and

5. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to FED. R. CIV. P. 38.

**GIBBONS P.C.**

Dated: May 16, 2024
Newark, New Jersey

*s/ Robert K. Malone*
Robert K. Malone, Esq.
Mark B. Conlan, Esq.
Christopher P. Anton, Esq.
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
Email: rmalone@gibbonslaw.com
mconlan@gibbonslaw.com
canton@gibbonslaw.com

*Attorneys for Plaintiff Ainslie H. Vorel,*
*Individually and as Proposed Class Representative*

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CORBIN and RICH SERONICK, Individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:23-cv-12807-IT |
| v. | ) ) | |
| MARC SALKOVITZ, PAM SALKOVITZ, and HILCO MERCHANT RESOURCES, LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF MARC SALKOVITZ**

I, Marc Salkovitz, do hereby depose and state the following:

1.     I am a party to the above captioned civil action with personal knowledge of the facts and circumstances set forth herein.  In that capacity, and based on that personal knowledge, I am familiar with, and, if called upon to do so, would be competent to testify to the facts and circumstances set forth herein.

2.     Beginning in November 2020 and ending on July 7, 2023, I functioned as the Executive Chairman of Christmas Tree Shops, LLC.

3.     I, and my wife Pam Salkovitz ("Pam") owned a home at 11 Twillingate Lane, Sudbury, Massachusetts, which was our principal residence until July 2023, when we sold that property based on market considerations.

4.     We moved temporarily to our second home in California, while we have searched for a new home in Massachusetts.

5.      Despite temporarily relocating to California, I have kept my Massachusetts driver's license due to my intention to return to Massachusetts as principal place of residence.

6.      I, and my wife Pam, are returning to Massachusetts, where we will reside at 18 Summer Street, Unit 2 Andover, Massachusetts as our principle place of residence.

7.      Despite temporarily relocating to California, I continue to be a registered voter in Massachusetts due to my intention to return to Massachusetts as principal place of residence. My driver's license and voter registration each reflect our residential address at 18 Summer Street, Unit 2 Andover, Massachusetts, where I will vote in the next election.

8.      I, and my wife Pam, also own other real property located in Saugus and Wareham, Massachusetts.

9.      I, and my wife Pam, own two motor vehicles, which are registered with the Massachusetts Division of Motor Vehicles and reflect our residential address at 18 Summer Street, Unit 2 Andover, Massachusetts.

10.     I, and my wife Pam, pay taxes in and to the Commonwealth of Massachusetts, including state income tax, state excise tax for our motor vehicles, sales tax for various purchases, and local real property taxes for the real estate we own in Massachusetts.

11.     I, and my wife Pam, also maintain deposit accounts and other financial relationships with institutions and firms located in Massachusetts.

12.     As of September 25, 2023, it was and has always been my intention to return to Massachusetts as my principal place of residence, and to continue my domicile and principle place of residency in Massachusetts.

13.     I have never given up or changed my domicile in Massachusetts.

I hereby declare under the pains and penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

_____
Marc Salkovitz

Dated: December 14, 2023

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER CORBIN and RICH SERONICK, Individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MARC SALKOVITZ, PAM SALKOVITZ, and HILCO MERCHANT RESOURCES, LLC,<br><br>    Defendants. | Civil Action<br>No. 1:23-cv-12807-IT |

## DECLARATION OF PAM SALKOVITZ

I, Pam Salkovitz, do hereby depose and state the following:

1.     I am a party to the above captioned civil action with personal knowledge of the facts and circumstances set forth herein.  In that capacity, and based on that personal knowledge, I am familiar with, and, if called upon to do so, would be competent to testify to the facts and circumstances set forth herein.

2.     Beginning in November 2020 and ending on July 7, 2023, I functioned as the Chief Executive Officer of Christmas Tree Shops, LLC.

3.     I, and my husband Marc Salkovitz ("Marc") owned a home at 11 Twillingate Lane, Sudbury, Massachusetts, which was our principal residence until July 2023, when we sold that property based on market considerations.

4.     We moved temporarily to our second home in California, while we have searched for a new home in Massachusetts.

5.      Despite temporarily relocating to California, I have kept my Massachusetts driver's license due to my intention to return to Massachusetts as principal place of residence.

6.      I, and my husband Marc, are returning to Massachusetts, where we will reside at 18 Summer Street, Unit 2 Andover, Massachusetts as our principle place of residence.

7.      Despite temporarily relocating to California, I continue to be a registered voter in Massachusetts due to my intention to return to Massachusetts as principal place of residence. My driver's license and voter registration each reflect our residential address at 18 Summer Street, Unit 2 Andover, Massachusetts, where I will vote in the next election.

8.      I, and my husband Marc, also own other real property located in Saugus and Wareham, Massachusetts.

9.      I, and my husband Marc, own two motor vehicles, which are registered with the Massachusetts Division of Motor Vehicles and reflect our residential address at 18 Summer Street, Unit 2 Andover, Massachusetts.

10.     I, and my husband Marc, pay taxes in and to the Commonwealth of Massachusetts, including state income tax, state excise tax for our motor vehicles, sales tax for various purchases, and local real property taxes for the real estate we own in Massachusetts.

11.     I, and my husband Marc, also maintain deposit accounts and other financial relationships with institutions and firms located in Massachusetts.

12.     Despite temporarily relocating to California, I continue to be an active committee member with the Combined Jewish Philanthropies of Greater Boston.

13.     As of September 25, 2023, it was and has always been my intention to return to Massachusetts as my principal place of residence, and to continue my domicile and principle place of residency in Massachusetts.

14.    I have never given up or changed my domicile in Massachusetts.


I hereby declare under the pains and penalties of perjury that the foregoing is true and

accurate to the best of my knowledge and belief.


Pam Salkovitz


Dated: December 14, 2023

# EXHIBIT C

| From: | CTSPress |
|---|---|
| Sent: | Friday, June 30, 2023 7:14 PM |
| To: | Ainslie Vorel |
| Subject: | Christmas Tree Shops WARN Notice |
| Importance: | High |



**June 30, 2023**

**VIA EMAIL**

Ainslie Vorel
ainslie.vorel@Christmastreeshops.com

**Re: Employee Separations of CTS's Corporate Team and Store Locations**

Dear Ainslie Vorel:

As you may be aware, on May 5, 2023, Christmas Tree Shops, LLC and certain of its affiliates (collectively, "CTS") filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware to restructure certain of CTS's obligations and to reorganize CTS's business.

Consistent with those goals, earlier this month CTS filed a Chapter 11 plan of reorganization which provided for payments to creditors from the continued operation of CTS's approximately 72 retail locations. The Bankruptcy Court scheduled a hearing for July 7, 2023, to approve solicitation procedures in connection with the Chapter 11 plan and a hearing for August 16, 2023, to approve the Chapter 11 plan.

In connection with the Chapter 11 plan, CTS retained SSG Advisors, LLC as an investment banker to assist CTS in funding the Chapter 11 plan or a sale of CTS's business as a going concern. Thereafter, with the assistance of SSG, CTS has since been actively engaged in a marketing process with multiple potential strategic and financial buyers regarding either a capital infusion or sale. CTS prioritized the retention and continued employment of its workforce to ensure the success of the Chapter 11 plan or a going-concern sale and it was anticipated that CTS's workforce would be retained if the Chapter 11 plan was approved or a going-concern sale was consummated.

Unfortunately, late last week, CTS's lenders delivered to CTS a notice of default and trigger notice. Based upon the default, CTS's lenders were no longer obligated to provide any financial accommodations to CTS. CTS was not able to remedy the default and is not able to operate its business without this necessary funding.

CTS's lenders have informed CTS that they are willing to continue funding for CTS to pursue a going concern sale of its business only through July 5, 2023. While CTS is hopeful that it may be able to consummate a going concern sale, if it is not able to enter into an asset purchase agreement on or before July 5, 2023, CTS will be forced to engage in an orderly liquidation of its assets.

Case 1:25-cv-03986-MN-TMH   Document 518   Filed 05/08/24   Page 26 of 32 PageID #: 53
Case 23-10576-TMH   Doc 918   Filed 08/22/25   Page 26 of 32

Case 2:24-cv-05933   Document 1-1   Filed 05/08/24   Page 3 of 9 PageID: 17

Should a liquidation occur, CTS anticipates that its corporate office and store located at 350 Route 22 West, Springfield, NJ 07081 will close permanently and in its entirety. Though Federal WARN requirements do not call for acknowledging locations that do not meet the Federal threshold for WARN notifications, we are sending this notification to all Team Members in New Jersey who are similarly impacted. The first employee separations would be expected to take place during the 14-day period commencing on July 7, 2023 and your employment will end during the 14-day period commencing on 7/7/2023. There will be no bumping rights.

We apologize that more advance notice of this possible action could not be provided. Please know that had CTS provided any earlier notice to you of the possible liquidation and cessation of our business, such an announcement would have had a chilling effect on CTS's ability to secure the necessary investors, purchasers, and/or funds that would have allowed CTS to avoid or postpone these employee separations. CTS continues to be in discussions with potential investors and acquirers in order to avoid liquidation.

If you require additional information, please contact Laura Britton, Head of People and Culture, Christmas Tree Shops at 508-923-0333 ext 3014. You can also email inquiries to totalrewards@christmastreeshops.com

Sincerely,

Laura Britton
Head of People and Culture
Christmas Tree Shops

---

**June 30, 2023**

**VIA EMAIL (Howard.Miller@dol.nj.gov) AND OVERNIGHT DELIVERY:**

Howard K. Miller Jr.
Chief of Business Services
New Jersey Department of Labor & Workforce Development
1 John Fitch Plaza
Trenton, NJ 08625

Re: Employee Separations at CTS's Springfield, NJ and Other New Jersey Locations

Dear Mr. Miller:

We are writing to inform you about possible employee separations at Christmas Tree Shops, LLC's location at 350 Route 22 West, Springfield, New Jersey 07081. Additionally, while we are not required to provide information to you regarding other store locations in New Jersey, we are providing information about those locations since they similarly may be impacted.

As you may be aware, Christmas Tree Shops, LLC and certain of its affiliates (collectively, "CTS") filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware to restructure certain of CTS's obligations and to reorganize CTS's business.

Consistent with those goals, earlier this month CTS filed a Chapter 11 plan of reorganization which provided for payments to creditors from the continued operation of CTS's approximately 72 retail locations. The Bankruptcy Court scheduled a hearing for July 7, 2023, to approve solicitation procedures in connection with the Chapter 11 plan and a hearing for August 16, 2023, to approve the Chapter 11 plan.

In connection with the Chapter 11 plan, CTS retained SSG Advisors, LLC as an investment banker to assist CTS in funding the Chapter 11 plan or a sale of CTS's business as a going concern.  Thereafter, with the assistance of SSG, CTS has since been actively engaged in a marketing process with multiple potential strategic and financial buyers regarding either a capital infusion or sale.  CTS prioritized the retention and continued employment of its workforce to ensure the success of the Chapter 11 plan or a going-concern sale and it was anticipated that CTS's workforce would be retained if the Chapter 11 plan was approved or a going-concern sale was consummated.

Unfortunately, late last week, CTS's lenders delivered to CTS a notice of default and trigger notice.  Based upon the default, CTS's lenders were no longer obligated to provide any financial accommodations to CTS.  CTS was not able to remedy the default and is not able to operate its business without this necessary funding.

CTS's lenders have informed CTS that they are willing to continue funding for CTS to pursue a going concern sale of its business only through July 5, 2023.  While CTS is hopeful that it may be able to consummate a going concern sale, if it is not able to enter into an asset purchase agreement on or before July 5, 2023, CTS will be forced to engage in an orderly liquidation of its assets.

Should a liquidation occur, CTS anticipates that its Springfield location referenced above will close permanently and in its entirety. The total number of affected employees in our Springfield location is 143. Should employee separations occur, they are expected to commence during the 14-day period beginning on July 7, 2023. Please also see the enclosed list which shows the work location addresses and number of affected employees in all New Jersey locations.

There will be no bumping rights.  Affected employees are not represented by a union.

We apologize that more advance notice of this possible action could not be provided.  Please know that had CTS provided any earlier notice of the possible liquidation and cessation of our business, such an announcement would have had a chilling effect on CTS's ability to secure the necessary investors, purchasers, and/or funds that would have allowed CTS to avoid or postpone these employee separations.  CTS continues to be in discussions with potential investors and acquirers to avoid liquidation.

If you require additional information, please contact Laura Britton, Head of People and Culture at 508-923-0333 ext 3014

Sincerely,

Laura Britton
Head of People and Culture
Christmas Tree Shops, LLC


Enclosure

cc (w/encs):

Mayor Chris Capodice (via email and overnight mail)
100 Mountain Ave.
Springfield, NJ 07081
Email: Chris.capodice@springfield-nj.us

Union County Commissioner Chairman Sergio Granados (via email and overnight mail)
10 Elizabethtown Plaza
Elizabeth, NJ 07202
Email: sgranados@ucnj.org

| Location | Headcount | Local Officials |
| --- | --- | --- |

| | | |
|---|---|---|
| Springfield 706350 Route 22 West Springfield, NJ 07081 | 143 | Mayor Chris Capodice<br>100 Mountain Ave, Springfield, NJ 07081<br>Chris.capodice@springfield-nj.us<br>908-868-7045<br>Union County Commissioner Chairman Sergio Granados<br>10 Elizabethtown Plaza, Elizabeth, NJ 07202<br>sgranados@ucnj.org<br>908-527-4112 |
| Brick 7037 479 Route 70 Brick, NJ 08723 | 61 | Mayor Lisa Crate<br>401 Chambers Bridge Rd, Brick, NJ 08723<br>mayor@twp.brick.nj.us<br>732-262-1240<br>Ocean County Commissioner Director Joseph H. Vicari<br>101 Hooper Ave., Toms River, NJ 08753<br>commissionervicari@co.ocean.nj.us<br>732-932-2002 |
| Bridgewater 7060365 Us Hwy 202/206 @ Rt 28 Bridgewater, NJ 08807 | 40 | Mayor Matthew Moench<br>100 Commons Way, Bridgewater, NJ 08807<br>mayor@bridgewaternj.gov<br>908-725-6300, ext. 5000<br>Somerset County Commissioner Director Shanel Y. Robinson<br>20 Grove St., P.O. Box 3000, Somerville, NJ 08876-1262<br>robinson@co.somerset.nj.us<br>908-231-7030 |
| Cherry Hill 7031 2130 Rte 70 West Suite C Cherry Hill, NJ 08002 | 37 | Mayor Susan Shin Angulo<br>820 Mercer Street, Suite 105, Cherry Hill, NJ 08002<br>mayor@chnj.gov<br>856-488-7878<br>Camden County Commissioner Director Louis Cappelli, Jr.<br>520 Market Street, 8th Floor, Camden, NJ 08102<br>Lou.cappelli@camdencounty.com<br>856-225-5451 |
| Deptford 7080 1775 Deptford Center Rd Deptford, NJ 08096 | 33 | Mayor Paul Medany<br>1011 Cooper St., Deptford, NJ 08096<br>mayor@deptford-nj.org<br>856-845-5300<br>Gloucester County Commissioner Director Frank J. DiMarco<br>P.O. Box 337, Woodbury, NJ 08096<br>fdimarco@co.gloucester.nj.us<br>856-853-3386 |
| Freehold 7032 100 Trotters Way Freehold, NJ 07729 | 51 | Mayor Alan Walker<br>1 Municipal Plaza, Freehold, NJ 07728-3099<br>awalker@twp.freehold.nj.us<br>732-294-2001<br>Monmouth County Commissioner Director Thomas A. Arnone<br>Monmouth County Hall of Records, One East Main Street, P.O. Box 1255, Freehold, NJ 07728<br>732-431-7396<br>Email not publicly available |
| Mays Landing 7059 230 Consumer Square Mays Landing, NJ 08330 | 20 | Mayor Carl Pitale<br>6101 Thirteenth Street, Mays Landing, NJ 08330<br>mayor@hamiltonatlnj.gov |

Case 1:25-cv-03980-TMH-Document 5-18 Filed 05/03/24 Page 6 of 9 PageID #: 56
Case 23-10576-TMH Doc 918 Filed 08/22/25 Page 29 of 32

Case 2:24-cv-05933 Document 1-1 Filed 05/08/24 Page 6 of 9 PageID: 20

| | | 609-625-4762<br>Atlantic County County Executive Dennis Levinson<br>1333 Atlantic Ave., Atlantic City, NJ 08401<br>609-343-2201<br>Email not publicly available |
|---|---|---|
| Paramus 7029<br>300 Ikea Drive<br>Paramus, NJ 07652 | 48 | Mayor Christopher DiPiazza<br>1 West Jockish Square, Upper Level, Paramus, NJ 07652<br>cdipiazza@paramusborough.org<br>201-265-2100, ext. 2213<br>Bergen County Executive James Tedesco III<br>One Bergen County Plaza, 5th Floor, Rm 580, Hackensack, NJ 07601-7076<br>countyexecutive@co.bergen.nj.us<br>201-336-7300 |
| Rockaway 7061<br>327 Mount Hope Ave.<br>Rockaway, NJ    07866 | 40 | Mayor Joe Jackson<br>65 Mount Hope Road, Rockaway, NJ 07866<br>rockadm@rockawaytownship.org<br>973-983-2088<br>Morris County Commissioner Director John Krickus<br>Morris County Board of County Commissioners, Morris County Administration & Records Building, P.O. Box 900, Morristown, NJ 07963-900<br>973-285-6010<br>Email not publicly available |
| Woodland Park 7087<br>1728 Us Route 46<br>Woodland Park, NJ 07424 | 58 | Mayor Keith Kazmark<br>Municipal Building, 5 Brophy Lane, 2nd Floor, Woodland Park, NJ 07424<br>kkazmark@wpnj.us<br>973-345-8100, ext. 210<br>Passaic County Commissioner Director Pat Lepore<br>Board of County Commissioners, 401 Grand Street, Room 223, Paterson, NJ 07505<br>plepore@passaiccountynj.org<br>973-881-4536 |

**Notification Form**
*under the*
**Millville Dallas Airmotive Plant Job Loss Notification Act**
N.J.S.A. 34:21-1, et seq.

Any restatement or summary of the law, which is contained in this document is intended for informational purposes only. The Department of Labor and Workforce Development has neither enforcement authority, nor rulemaking authority under the Millville Dallas Airmotive Plan Job Loss Notification Act, N.J.S.A. 34:21-1, et seq. (the Act). The role of the Department of Labor and Workforce Development under the Act is limited to: (1) dispatching the rapid response team to, among other things, provide appropriate information, referral and counseling to workers who are subject to plant closings or mass layoffs and (2) making available to employers the form upon which notification shall be provided under the Act.

Under the Act, prenotification of certain plant closings, transfers, and mass layoffs is required by way of completion of this Notification Form.

**The entire law can be viewed at:** *nj.gov/labor/employer-services/warn*

If you are an individual or private business entity that employs the workforce at a place of employment which has been in operation for a period longer than three years, and you employ 100 or more employees, you must comply with the requirements of the Act if you anticipate any of the following events. The following definitions and those included elsewhere within this notification form are taken directly from the Act.

| | |
|---|---|
| **Mass Layoff** | **"Mass layoff"** means a reduction in force which is not the result of a transfer or termination of operations and which results in the termination of employment at an establishment during any 30-day period for 50 or more of the employees at or reporting to the establishment. |
| **Termination of Operations** | **"Termination of operations"** means the permanent or temporary shutdown of a single establishment, or of one or more facilities or operating units within a single establishment, except that "termination of operations" shall not include a termination of operations made necessary because of a fire, flood, natural disaster, national emergency, act of war, civil disorder or industrial sabotage, decertification from participation in the Medicare and Medicaid programs as provided under Titles XVIII and XIX of the federal "Social Security Act," Pub.L.74-271 (42 U.S.C. s.1395 et seq.) or license revocation pursuant to P.L.1971, c.136 (C.26:2H-1 et al.). |
| **Transfer of Operations** | **"Transfer of operations"** means the permanent or temporary transfer of a single establishment, or one or more facilities or operating units within a single establishment, to another location, inside or outside of this State. |

**Type or Print All Applicable Information**

| Company Information | | | Union Information (if applicable) | | |
|---|---|---|---|---|---|
| **Company Name**<br>Christmas Tree Shops | | | **Union Name** | | **Local Number** |
| **Address**<br>64 Leona Drive | | | **Address** | | |
| **City**<br>Middleborough | **State**<br>MA | **ZIP Code**<br>02346 | **City** | **State** | **ZIP Code** |
| **County**<br>Plymouth | | | **Contact Person** | | |
| **Contact Person**<br>Laura Britton | | | **Telephone number** | | **Ext.** |
| **Telephone number**<br>(508) 923-0333 | | **Ext.**<br>3014 | **Fax** | | |
| **Fax** | | | **Email** | | |
| **Email**<br>laura.britton@christmastreeshops.com | | | | | |

NJES-997 (4/23)

6

Case 1:25-cv-03986-MN-TMH   Document 5-18   Filed 05/22/25   Page 31 of 32 PageID #: 58
Case 23-10576-TMH   Doc 918   Filed 03/22/25   Page 31 of 32

Case 2:24-cv-05933   Document 1-1   Filed 05/08/24   Page 8 of 9 PageID: 22

"**Termination of employment**" means the layoff of an employee without a commitment to reinstate the employee to his previous employment within six months of the layoff, except that "termination of employment" shall not mean a voluntary departure or retirement or a discharge or suspension for misconduct of the employee connected with the employment or any layoff of a seasonal employee or refer to any situation in which an employer offers to an employee, at a location inside the State and not more than 50 miles from the previous place of employment, the same employment or a position with equivalent status, benefits, pay and other terms and conditions of employment, and, except that a layoff of more than six months which, at its outset, was announced to be a layoff of six months or less, shall not be treated as a termination of employment under N.J.S.A. 34:21-1 et seq., if the extension beyond six months is caused by business circumstances not reasonably foreseeable at the time of the initial layoff, and notice is given at the time it becomes reasonably foreseeable that the extension beyond six months will be required.

## Termination Information—C.34:21-3

**a.** Number of employees to be terminated: 531

Date(s) on which each termination of employment will occur:
Should they occur, employee separations are expected to commence during the 14 day period beginning on 7/7/23 and continuing. See attachments.

Date(s) on which mass layoff or transfer or termination of operations of the establishment will occur:
Same as above.

**b.** Reason for termination: ☐ Mass Layoff   ☐ Transfer of Operations   ☑ Termination of Operations
Explain the reason(s) for mass layoff or transfer or termination of operations:

**c.** Is any employment being offered to terminated employees at any other establishment operated by the employer?   ☐ Yes  ☑ No
If yes, provide detailed information regarding the benefits, pay, and other terms and conditions of that employment and the location of the other establishment:

**d.** Please state any employee rights with respect to wages, severance pay, benefits, pension or other terms of employment as they relate to the termination, including, but not limited to, any rights based on a collective bargaining agreement or other existing employer policy.

**d1.** Rights to wages?  ☑ Yes  ☐ No   If yes, please explain.
Employees will be paid their regular wages and salary through their termination of employment.

**d2.** Rights to severance pay?  ☐ Yes  ☑ No   If yes, please explain.

**d3.** Rights to pension?  ☑ Yes  ☐ No   If yes, please explain.
CTS does not have a pension program, however all eligible 401k participants will retain their rights subject to the terms and conditions of the plan.

**d4.** Rights to benefits?  ☑ Yes  ☐ No   If yes, please explain.
The company maintains several benefit plans. Participation in those plans for eligible employees are governed by the plans. The extent to which benefits are provided will be subject to bankruptcy court approval.

**d5.** Rights to other terms of employment?  ☐ Yes  ☑ No   If yes, please explain.

7

Case 1:25-cv-00986-MN-TMH   Document 5-18   Filed 05/08/25   Page 32 of 32 PageID #: 59
Case 23-10576-TMH   Doc 918   Filed 03/22/25   Page 32 of 32

Case 2:24-cv-05933   Document 1-1   Filed 05/08/24   Page 9 of 9 PageID: 23

**Severance pay**, which is payable under the Act to each employee whose employment is terminated: The employer who operates the establishment or conducts the mass layoff, in the case of the employer who employs 100 or more employees, shall provide to each employee whose employment is terminated severance pay equal to one week of pay for each full year of employment. If the employer provides any employee with less than 90 days notification before the first termination of employment occurs in connection with the termination or transfer of operations, or mass layoff, the employer shall provide that employee with an additional four weeks of severance pay. The rate of severance pay provided by the employer shall be the average regular rate of compensation received during the employee's last three years of employment with the employer or the final regular rate of compensation paid to the employee, whichever rate is higher. Severance pay under the Act shall be regarded as compensation due to an employee for back pay and losses associated with the termination of the employment relationship, notwithstanding the calculation of the amount of the payment with reference to the employee's length of service. An employer shall provide an employee the severance pay required under the Act or any severance pay provided by the employer pursuant to a collective bargaining agreement or for any other reason, whichever is greater. Any back pay provided by the employer to the employee pursuant to section 5 of the "Worker Adjustment and Retraining Notification Act, " Pub.L.100-379 (29 U.S.C. s.2104), because of a violation of section 3 of that act (29 U.S.C. s.2101) shall be credited toward meeting the severance pay requirements of the Millville Dallas Airmotive Job Loss Notification Act.

**Response Team Services**:
In accordance with the Act, there is established within the Department of Labor and Workforce Development a response team, the purpose of which is to provide appropriate information, referral and counseling to workers who are subject to plant closings or mass layoffs. The information, referral and counseling provided by the response team will address available public programs which make it possible to delay or prevent the transfer or termination of operations, including economic development incentive and workforce development programs, public programs or benefits which may be available to assist the employees, including but not limited to, unemployment compensation benefits, job training or retraining programs, and job search assistance; and employee rights based on the Act, or any other law which applies to the employees with respect to wages, severance pay, benefits, pensions or other terms of employment as they relate to the termination of employment.

Employers covered by the Act are required to provide the response team with the amount of on-site work-time access to the employees of the establishment that the response team determines is necessary for the response team to carry out its responsibilities under the law.

### Please provide the completed Notification Form to:

⇨ **The Commissioner of Labor and Workforce Development**

> Robert Asaro-Angelo, Commissioner
> Attention: Rapid Response Team
> Department of Labor and Workforce Development
> PO Box 933
> Trenton, New Jersey 08625-0933
>
> Phone: 1-800-343-3919
> Fax: 609-777-3020
> Email: *RapidResponse@dol.nj.gov*

⇨ **The Chief Elected Official of the municipality where the establishment is located**

⇨ **Each employee whose employment is to be terminated**

⇨ **Any collective bargaining units of employees at the establishment**